UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
DAVID T. SILVA,
GERROD T. SMITH, and
JONATHAN K. SMITH,
Members of the Shinnecock Indian Nation,

                Plaintiffs,                Case No.: 18-cv-3648   (   ) (   )

  - against -                              **PLAINTIFFS' MEMORANDUM**
                                                 **OF LAW IN SUPPORT OF**
BRIAN FARRISH,                            **PLAINTIFFS' MOTION FOR**
JAMIE GREENWOOD,                    **PRELIMINARY INJUNCTION**
EVAN LACZI,
BASIL SEGGOS,
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
and SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE,

                Defendants.
------------------------------------------------------x

Scott M. Moore, Esq.
MOORE INTERNATIONAL LAW PLLC
45 Rockefeller Plaza, 20th Floor,
New York, NY 10111
(212) 332-3474
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF ISSUES ........................................................................................1

STATEMENT OF FACTS .........................................................................................2

    A.  The Plaintiffs are on-Reservation Shinnecock Indians and have been ticketed
    prosecuted, and had their fish and equipment seized over the last decade
    for fishing in the waters adjacent to the lands of the Shinnecock Indian
    Reservation, Shinnecock Bay and its estuary waters.............................................2

    B.  Shinnecock Bay and its estuary waters are clearly in an area of
    un-relinquished aboriginal fishing since time immemorial and retained
    fishing rights in ceded territory..............................................................................4

STANDARD OF REVIEW ........................................................................................6

ARGUMENT ..............................................................................................................7

    A.  Applicable Law ..................................................................................................7

    B.  Plaintiffs' right to fish is protected under Federal Law as an un-relinquished
    aboriginal usufructuary right and secured on ceded territory, and application
    of New York State fishing regulations by the Defendants violates the
    Supremacy Clause...............................................................................................10

CONCLUSION      ....................................................................................................11

RELIEF REQUESTED..............................................................................................12

## **TABLE OF AUTHORITIES**

### **Cases**

*Antoine v. Washington*,
    420 U.S. 194 (1975)..................................................................................................11

*Douglas v. Seacoast Products, Inc.*,
    431 U.S. 265, 97 S. Ct. 1740, 52 L. Ed. 2d 304 (1977).........................................10

*Fairfax's Devisee v. Hunter's Lessee*,
    7 Cranch 603 (1813) ................................................................................................8

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007).......................................................................................7

*Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979).......................................................................................7

*Lac Courte Oreilles Band v. Voigt*,
    700 F. 2d 341 (7th Cir. 1983) ................................................................................10

*Menominee Tribe v. United States*,
    391 U.S. 404, 88 S. Ct. 1705, 20 L. Ed. 2d 697 (1968)...............................9, 10, 11

*Mitchell v. Cuomo*,
    718 F.2d 804 (2d Cir. 1984).....................................................................................7

*Monserrate v. New York State Senate*,
    599 F.3d 148 (2d Cir. 2010).....................................................................................6

*Muckleshoot Indian Tribe v. Hall*,
    698 F. Supp. 1504 (W.D. Wash. 1988)....................................................................7

*Squire v. Capoeman*,
    351 U.S. 1 (1956).....................................................................................................7

*The Trustees of Dartmouth College v. Woodward*,
    17 U.S. 518 (1819)...................................................................................................8

*U.S. v. State of Michigan*,
    471 F. Supp. 192 (W.D. Mich. 1979),
    *aff'd as modified*, 653 F. 2d 277 (6th Cir. 1981) ......................................................9

*U.S. v. State of Michigan*,
    653 F. 2d 278 (6th Cir. 1981) ..................................................................................9

*U.S. v. Washington*,
    384 F. Supp. 312 (W.D. Wash. 1974)......................................................................9

*U.S. v. Winans*,
    198 U.S. 371 (1905)................................................................................................10

*United States v. 43 Gallons of Whiskey,*
    108 U.S. 491, 2 S. Ct. 906, 27 L. Ed. 803 (1883).....................................................10

*United States v. 43 Gallons of Whiskey [U. S. v. Lariviere],*
    3 Otto 188, 93 U.S. 188, 23 L. Ed. 2d 846 (1876)...................................................10

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).................................................6

*Wyoming v. U.S. Dep't. of the Interior*,
    No. 2:15-cv-043-SWS, __F. Supp. 3d __,
    2015 WL 5845145 (D. Wyo. Sept. 30, 2015)..........................................................7

## State Statutes

6 NYCRR 40-1(b)(ii).............................................................................................................4
6 NYCRR 40-1(b)(iii)............................................................................................................4
ECL 13-0355.........................................................................................................................4

## Rules

Fed. R. Civ. P. 65(a) .......................................................................................................1, 6

## Colonial Documents

Department of State Book of Deeds,
Unpublished documents, Office of the Secretary of State, Albany,
New York (New York State Archives. Series 453, vols. 1-9) ...........................................6

Gardiner, David Lion, 1873 [1840] *Chronicles of East Hampton,*
Sag Harbor, N.Y.: Isabel Gardiner Mairs ..........................................................................6

*Documents Relative to the Colonial History of the State of New York,*
ed. Edmund Bailey O'Callaghan and Berthold Fernow. 15 vols.
Albany, N.Y.: Weed, Parsons, 1856-87 ................................................................................6

*Records of the Town of East Hampton,*
ed. Joseph Osborne, 5 vols. Sag Harbor, N.Y. 1887............................................................6

*Records of the Town of Southampton*,
ed. William Pelletreau. 8 vols. Sag Harbor, N.Y. 1874-77..................................................6

### **State Constitution**

Constitution of the State of New York, Sec. 14............................................................8, 10

### **Federal Constitution**

U.S. Const., Art. VI, Cl.2 ...................................................................................................9

# I. PRELIMINARY STATEMENT

Plaintiffs, David T. Silva, Gerrod T. Smith, and Jonathan K. Smith, all on-Reservation Shinnecock Indians, have filed a complaint seeking, among other things, a declaratory judgment and a request pursuant to Fed. R. Civ. P. 65(a) for preliminary injunctive relief in favor of Plaintiffs and against the Defendants, enjoining the Defendants from enforcing the laws of the State of New York against Plaintiff Silva in Southampton Town Justice Court in Case No. 17-7008, and from otherwise interfering with Plaintiffs' use of the waters, fishing, taking fish, and holding fish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters. (Compl., Prayer for Relief, ¶ 1)[1]

# II. STATEMENT OF ISSUE

WHETHER THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF ENJOINING THE DEFENDANTS FROM ENFORCING THE LAWS OF THE STATE OF NEW YORK AGAINST PLAINTIFF SILVA IN SOUTHAMPTON TOWN JUSTICE COURT IN CASE NO. 17-7008, AND FROM OTHERWISE INTERFERING WITH PLAINTIFFS' USE OF THE WATERS, FISHING, TAKING FISH, AND HOLDING FISH IN SHINNECOCK BAY AND ITS ESTUARY AND OTHER USUAL AND CUSTOMARY SHINNECOCK FISHING WATERS?

PLAINTIFFS ANSWER:    "YES"

DEFENDANTS ANSWER:  "NO"

---

[1] Plaintiffs' complaint will be referred to as "Compl., ¶ __".

### III. STATEMENT OF FACTS

**A. The Plaintiffs are on-Reservation Shinnecock Indians and have been ticketed prosecuted, and had their fish and equipment seized over the last decade for fishing in the waters adjacent to the lands of the Shinnecock Indian Reservation, Shinnecock Bay and its estuary waters.**

Plaintiffs, David T. Silva, ("Silva"), Gerrod T. Smith, ("Gerrod Smith"), and Jonathan K. Smith, ("Jonathan Smith"), are all on-Reservation members of the Shinnecock Indian Nation, a federally recognized Indian Tribe. Silva's Shinnecock Indian Nation verification letter, and, Gerrod Smith and Jonathan Smith's U.S. Bureau of Indian Affairs Identification Cards are annexed hereto. (Pls. Exh., 1, 2, and 3, respectively)

On April 20, 2017, Silva was stopped by two DEC Officers, Laczi and Farrish, while Silva was fishing for elver eels in Shinnecock Bay. Silva's eels, net, and other fishing equipment were seized, and Silva was issued a criminal appearance ticket alleging possession of undersized eels in violation of New York State law, 6 NYCRR 40-1(b)(ii). Silva was later charged with two additional criminal offenses, ECL 13-0355 (no fish license), and 6 NYCRR 40-1(b)(iii) (possession of eels over limit). This case is presently lodged and pending in the Southampton Town Justice Court as Case No. 17-7008 and is being prosecuted by Greenwood. Annexed hereto are Southampton Justice Court charging documents and a DEC list of seized property from Silva. (Pls. Exh. 4) On January 9, 2018, the Southampton Justice Court denied Silva's motion to dismiss. The order is annexed hereto. (Pls. Exh. 5)[2] The lands of the Shinnecock Indian Reservation is visible in the DEC supposed crime scene photo of Silva's fishing net, annexed hereto. (Pls. Exh. 6) Over Silva's objection and Greenwood's urging, the Southampton

---

[2] Although Silva's motion included lack of jurisdiction, the Justice Court only addressed the effect of collateral estoppel arising from prior dismissals of prior non-Silva prosecutions.

2

Justice Court prosecution against Silva is presently scheduled for trial on August 30, 2018 at 9:00 am.

Prior to the pending case against Silva, On June 17, 2010, in *People v. Jonathan K. Smith*, Case No. 09-031419, Southampton Justice Court, Southampton, New York, after removal to this federal court and known as Case No. 09-0571 in the United States District Court for the Eastern District of New York, (Wexler, J.), a judgment of dismissal of criminal possession by Plaintiff Jonathan Smith of a shellfish farm in Shinnecock Bay without a license was entered for failure of the defendants to prosecute, annexed hereto, and the Southampton Justice Court recognized the dismissal. The NYED judgment of dismissal and the Southampton Justice Court recognition letter annexed hereto. (Pls. Exh. 7)

On October 14, 2009, in *People v Gerrod T. Smith*, Case No. 08-101351, Southampton Justice Court, Southampton, New York, after removal to this federal court, three criminal counts of possession by Plaintiff Gerrod Smith of undersized flounder, blackfish, and porgy in Shinnecock Bay, were dismissed in the Justice Court. Southampton Justice Court certificate of dismissal annexed hereto. (Pls. Exh. 8)

On January 28, 2009, in *People of the State of New York v. Salvatore J. Ruggiero*, Case No. 08-101350, Southampton Justice Court, Southampton, New York, after a bench trial, which included prosecution testimony by Farrish, that court found the Ruggiero, a non-Indian who was fishing with Gerrod Smith, not guilty of possession of undersized flounder, undersized blackfish, and undersized porgy, for the reason that Farrish and other DEC staff and the DA failed to prove jurisdiction. The Ruggiero decision is annexed hereto.[3] (Pls. Exh. 9)

---

[3] On August 11, 2017, upon application, the Southampton Justice Court entered a written order that "the entire record possessed by the Southampton Justice Court pertaining to Salvatore J. Ruggerio, Docket # 08-101530 be unsealed and open to the public …."

3

**B. Shinnecock Bay and its estuary waters are clearly in an area of un-relinquished aboriginal fishing since time immemorial and retained fishing rights in ceded territory.**

Dr. John A. Strong, professor emeritus at Long Island University, clearly shows in a report prepared for Plaintiffs that "The above documents [shown below] clearly support the rights of the Shinnecock and the other native peoples of eastern Long Island to fish in the waters adjacent to their communities "without let or hindrance" and to dispose of their catches, 'as they think good' " Strong Report, p. 3. The Report by John A. Strong is annexed hereto. (Pls. Exh. 10)

The Strong Report is reproduced below.

> The Shinnecock Nation and other coastal Algonquian peoples on Long Island have depended from time immemorial on the bounty from their maritime environment. The English acknowledged this relationship in a series of nation to nation agreements beginning in the spring of 1648 when Nowedonah, the Shinnecock sachem, joined with the sachems from the Montauketts, Manhansetts, and Corchaugs to negotiate with the governors of New Haven and Connecticut for the purchase of thirty thousand acres of land in what is now the town of East Hampton (RTEH 1: 2-3). The sachems retained the "…liberty, freely to fish in any or all of the cricks and ponds and to hunt up and down on the woods without molestation…likewise they are to have the tails and fins of allsuch whales as shall be cast up… Allsoe they reserve the liberty to fish in all convenient places, for shells to make wampum. Allsoe, if the Indians, hunting any deere, they should chase them into the water, and the English should kill them, the English shall have the body and the sachem the skin." (The fins and tails were sacrificed to the spirits of the deep water in a ceremony described by David Gardiner in his *Chronicles of East Hampton* 1871, 3).
>
> On June 10, 1658 Sachem Wyandanch met with Lion Gardiner, one of the first English settlers on Long Island, to negotiate a nation to nation agreement concerning access to beaches adjacent to the Shinnecock lands in Southampton. In the negotiations Sachem Wyandanch agreed to grant Gardiner access to beach meadows for livestock grazing but refused to allow the English access to the bodies of drift whales, a lucrative source of whale oil. He stated that his claim to the bodies of the whales was based on an ancient tradition. "…the whales that shall be cast upon this beach, "he insisted," shall belong to me and the rest of the Indians in their bounds as they have been anciently granted to them formerly by my forefathers…"(RTEH 1: 170-171). Gardiner accepted those terms.

4

A year later on May 12th Wyandanch and his son, Wyancombone, sold a tract of beach land west of the Shinnecock Canal to John Ogden with the stipulation that the Shinnecock retain " our privileges of fishing and fowling, hunting or gathering of berries or any other thing for our use…"(RTSH 1: 162; 2: 354-55). On June 8th , a month after the sale to Ogden, Wyandanch sold another tract of beach meadows to Lion Gardiner, again "reserving to ourselves and the Indians all the fins and tails..." (DSBD 2: 85-86).

Three years later, in 1662, this tradition of reserved rights to products from the coastal waters was reaffirmed by Weany, the Shinnecock sunksquaw when she sold a tract of land to Thomas Topping of Southampton. The Shinnecock retained half of the profits and benefits from the drift whales and, "all the herbage or feed growing thereon" (RTSH 1: 167-68).

The above agreements were made while the towns of Southampton, East Hampton and Brookhaven were under the jurisdiction of Connecticut colony. The issue of Native American fishing rights was addressed again after the establishment of the colony of New York in 1664. Questions about Indian access to drift whales came before Governor Edmund Andros in January 1675.

The governor ruled that Indians who discover the bodies of drift whales on their beaches "…shall have such reasonable satisfaction as hath been usual" (NYCD 14: 686). Andros ordered his secretary of state, Mattias Nicolls, to invite "the sachems on the south side of Long Island" to consult with him. These negotiations, unfortunately, were interrupted by King Philip's War in New England (1675-76). There were rumors that some Long Island Indians might give support to Philip. Andros declared a war alert and ordered the Long Island nations to disarm (NYCD 14: 692, 695).

In May 1676, as the tide turned against King Philip, a delegation from the Unkechaug, a closely related neighbor to the Shinnecock on the west, met with Andros to restore peacetime relations. They presented him with a gift of wampum, but then voiced a complaint (NYCD 14: 718). The Unkechaug complained that some English settlers had taken fish away from them on their beaches. Their representatives identified themselves as …"being free borne on Long Island," they told the governor that they wanted the freedom,  "….to fish and dispose of what they shall take in to whom they like best" (NYCD 14: 720). After consideration the governor's council ruled that the Indians were "…at liberty and may freely whale and fish … and dispose of their effects as they think good…" The local magistrates were ordered to "take notice and suffer the said Indians so to doe without any manner of lett hindrance or molestation they comporting themselves civilly as they ought" (Ibid.) The council's action made it clear that the colony of New York continued to recognize the fishing rights established by the first English settlers in 1648.

Conclusion

      The above documents clearly support the rights of the Shinnecock and the other native peoples of eastern Long Island to fish in the waters adjacent to their communities "without let or hindrance" and to dispose of their catches, "as they think good"

SOURCES

DSBD=Department of State Book of Deeds, Unpublished documents, Office of the Secretary of State, Albany, New York (New York State Archives. Series 453, vols. 1-9)

Gardiner, David Lion, 1873 [1840] *Chronicles of East Hampton,* Sag Harbor, N.Y.: Isabel Gardiner Mairs.

NYCD=*Documents Relative to the Colonial History of the State of New York,* ed. Edmund Bailey O'Callaghan and Berthold Fernow. 15 vols. Albany, N.Y.: Weed, Parsons, 1856-87.

RTEH=*Records of the Town of East Hampton,* ed. Joseph Osborne, 5 vols. Sag Harbor, N.Y. 1887.

RTSH=*Records of the Town of Southampton*, ed. William Pelletreau. 8 vols. Sag Harbor, N.Y. 1874-77.

### IV.    STANDARD OF REVIEW

The moving party seeking injunctive relief under Fed. R. Civ. P. 65(a) must generally show 1) irreparable harm, and 2) either (a) a likelihood of success on the merits or b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010). However when the relief sought is enjoining a government statute or regulation, the party must show irreparable harm and a likelihood of success on the merits. *Id.* The moving party must also show the relief sought is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

6

Irreparable harm is a harm for which "a monetary award cannot be adequate." *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). The movant must show the injury to be "actual and imminent" and not "remote or speculative." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). "When an alleged deprivation of a constitutional right is involved, … no further showing of irreparable injury is necessary." *Mitchell v. Cuomo*, 718 F.2d 804 (2d Cir. 1984).

In the context of Indian Tribes, preliminary injunctions have been issued to protect against the irreparable harm involved in loss of fishing rights.[4] "The treaty fishing right is a property right protected under the fifth amendment, and the harm to this right cannot be measured solely in terms of the amount of lost income the Tribes might suffer." *Muckleshoot Indian Tribe v. Hall*, 698 F. Supp. 1504, 1516 (W.D. Wash. 1988) Federal environmental rules involving hydraulic fracking affecting an Indian Tribe without following federal consultation rules have been preliminarily enjoined. "…[F]ailure to comply with departmental policies and procedures is arbitrary and capricious action." *Wyoming v. U.S. Dep't. of the Interior*, No. 2:15-cv-043-SWS, __F. Supp. 3d __, 2015 WL 5845145 (D. Wyo. Sept. 30, 2015, p 39)

## V.    ARGUMENT

### A.  Applicable Law

The wording in the colonial documents relating to reserved fishing rights must not be construed to the detriment to the Plaintiffs. "The language used in treaties with the Indians should never be construed to their prejudice." *Squire v. Capoeman*, 351 U.S. 1, 7 (1956)

---

[4] For a broad background on West Coast Indian fishing rights litigation including Supreme Court citations, see "Indian Treaty Fishing Rights and Habitat Protection: The Martinez Decision Supplies a Resounding Judicial Reaffirmation," 49 *Nat Resources J*. 3 (Summer-Fall 2009)

7

The colonial documents cited by Dr. Strong in his report in which the Shinnecock ceded land and negotiated retained fishing rights are legally enforceable today under state and federal law.

Section 14 of the Constitution of the State of New York guarantees the present validity of the body of colonial laws prior to the revolution. Section 14 provides:

> Such parts of the common law, and of the acts of the legislature of the colony of New York, as together did form the law of said colony, on the nineteenth day of April, one thousand seven hundred seventy-five, and the resolutions of the congress of said colony, and of the convention of the State of New York, in force on the twentieth day of April, one thousand seven hundred seventy-seven, which have not since expired, or been repealed or altered; and such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same. But all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this constitution, are hereby abrogated.

The colonial documents are legally enforceable today under federal law as well. Virginia's property confiscation laws enacted prior to the present federal constitution as a Commonwealth during and after the revolution was ruled unconstitutional. *Fairfax's Devisee v. Hunter's Lessee*, 7 Cranch 603 (1813). Dartmouth College's Crown Charter was ruled not affected by the war of independence. *The Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 644-650 (1819) (Dartmouth's 1769 charter, although granted by the Crown under the seal of the Province of New Hampshire, was nonetheless binding upon the State of New Hampshire as successor, and is a contract, the obligation of which cannot be impaired by the state without violating the contract clause of the federal constitution.).

> It is too clear to require the support of argument, that all contracts, and rights respecting property, remained unchanged by the revolution. The obligations then, which were created by the charter to Dartmouth College, were the same in the new, that they had been in the old government.
>
> *Dartmouth College*, 17 U.S., at 651 (Marshall, C.J.)

State regulation of Indian fishing rights secured by treaty has been held preempted by the Supremacy Clause, Art. VI, Cl. 2. "Under the Supremacy Clause of the United States Constitution, state regulation of Indian fishing rights secured by the treaties here in question, and implemented by Federal and tribal regulations, has been held preempted. Any regulation must be by Congress or Congressional authorization." *U.S. v. State of Michigan*, 471 F. Supp. 192, 274 (W.D. Mich. 1979)(Fox, CJ), *aff'd as modified*, 653 F. 2d 277 (6th Cir. 1981)

"The treaty-guaranteed fishing rights preserved to the Indians in the 1836 Treaty, including the aboriginal rights to engage in gill net fishing, continue to the present day as federally created and federally protected rights. The protection of those rights is the solemn obligation of the federal government, and no principle of federalism requires the federal government to defer to the states in connection with the protection of those rights. The responsibility of the federal government to protect Indian treaty rights from encroachment by state and local governments is an ancient and well-established responsibility of the national government." *U.S. v. State of Michigan*, 653 F. 2d 278, 279 (6th Cir. 1981) The right to fish is one of the aboriginal usufructuary rights included within the totality of use and occupancy rights which Indian tribes might possess. *Menominee Tribe v. United States,* 391 U.S. 404, 88 S. Ct. 1705, 20 L. Ed. 2d 697 (1968) "If any person shows identification, as provided in the Decision of the Court, that he is exercising the fishing rights of a Treaty Tribe and if he is fishing in a usual and accustomed place, he is protected under federal law against any State action which affects the time, place, manner, purpose or volume of his harvest of anadromous fish, unless the State has previously established that such action is an appropriate exercise of its power." *U.S. v. Washington*, 384 F. Supp. 312, 408 (W.D. Wash. 1974)(Boldt, J.) "Treaty-recognized rights

9

cannot, however, be abrogated by implication. The LCO's rights to use the ceded lands remain in force." *Lac Courte Oreilles Band v. Voigt*, 700 F. 2d 341, 365 (7th Cir. 1983).

The Supremacy Clause of the United States Constitution (Article VI, clause 2) provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Supremacy Clause is applicable to international treaties and Indian treaties alike. *See United States v. 43 Gallons of Whiskey,* 108 U.S. 491, 2 S. Ct. 906, 27 L. Ed. 803 (1883); *United States v. 43 Gallons of Whiskey [U. S. v. Lariviere],* 3 Otto 188, 93 U.S. 188, 23 L. Ed. 2d 846 (1876). It is equally well established that a matter generally within the exclusive power of a state, such as fish and game management, is preempted by the federal government when a federal purpose, as evidenced by a treaty or statute, is dominant and would otherwise be frustrated. *See Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 97 S. Ct. 1740, 52 L. Ed. 2d 304 (1977).

### B.  Plaintiffs' right to fish is protected under Federal Law as an un-relinquished aboriginal usufructuary right and secured on ceded territory, and application of New York State fishing regulations by the Defendants violates the Supremacy Clause.

As Dr. Strong's Report shows, the waters of Shinnecock Bay and its estuary, being adjacent to the lands of the Shinnecock Indian Reservation, are clearly within the aboriginal area fished by the Plaintiffs' ancestors since time immemorial, and the right to fish on ceded territory was secured and documented by Plaintiffs' ancestors. This unequivocally establishes the right to fish, one of the aboriginal usufructuary rights included within the totality of use and occupancy rights which Indian tribes might possess. *Menominee Tribe; U.S. v. Winans*, 198 U.S. 371, 381 (1905) ("the treaty was not a grant of rights to the Indians, but a grant of right from them -- a reservation of those not granted."). Treaties and laws must be construed in favor of Indians, and

10

the Supremacy Clause precludes application of state game laws to a tribe on ceded territory. *Antoine v. Washington*, 420 U.S. 194, 199 (1975)("The canon of construction applied over a century and a half by this Court is that the wording of treaties and statutes ratifying agreements with the Indians is not to be construed to their prejudice."). Indians' historical hunting and fishing rights are kept absent an express abrogation of such rights by Congress. *Menominee Tribe,* 391 U.S. at 412 ("We decline to construe the Termination Act as a backhanded way of abrogating the hunting and fishing rights of these Indians.")

As such, the Defendants' application of New York State fishing regulations against the Plaintiffs when fishing in the adjacent waters of Shinnecock Bay and its estuary violates the Supremacy Clause and is void.

## VI.     CONCLUSION

Shinnecock Bay and its estuary, being adjacent to the lands of the Shinnecock Indian Reservation, are clearly shown by Plaintiffs' expert, Dr. John A. Strong to be within the area fished by Plaintiffs' ancestors since time immemorial and the right to fish has not only been un-relinquished, but specifically retained and documented by their ancestors in colonial documents. The aboriginal right to fish in un-relinquished aboriginal territory and the related retained right to fish in ceded territory is a protected federal right under the Supremacy Clause. The Defendants' continuing interference, seizure of fish and fishing equipment, and criminal prosecution of the Plaintiffs by application of New York State fishing regulations, is void under the Supremacy Clause, and must be enjoined.

## VII. RELIEF REQUESTD

**WHEREFORE**, the Plaintiffs respectfully request an order pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, granting:

1) Preliminary injunctive relief in favor of Plaintiffs and against the Defendants enjoining the Defendants from enforcing the laws of the State of New York against Plaintiff Silva in Southampton Town Justice Court in Case No. 17-7008, and from otherwise interfering with Plaintiffs' use of the waters, fishing, taking fish, and holding fish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters;

2) Any other and further relief to which Plaintiffs may be entitled, including but not limited to, court costs, and reasonable attorney fees.

Dated: June 22, 2018
New York, New York

Respectfully submitted,

MOORE INTERNATIONAL LAW PLLC.

By: /s/ Scott M. Moore
_____
Scott Michael Moore, Esq.
*Attorneys for Plaintiffs*
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
T. (212) 332-3474
F. (212) 332-3475
E. smm@milopc.com

12