# Exhibit D

JUSTICE COURT:  TOWN OF SOUTHAMPTON
COUNTY OF SUFFOLK:  STATE OF NEW YORK
----------------------------------------------------------------------X
THE PEOPLE THE STATE OF NEW YORK                    MEMORANDUM DECISION

-against-                                           BY:  GARY J. WEBER, T. J.

DAVID T. SILVA,                                     DATE:  June 5, 2019
                              DEFENDANT
----------------------------------------------------------------------X     DOCKET # S17-060545

TIMOTHY SINI, ESQ., DISTRICT ATTORNEY               SCOTT M. MOORE, ESQ.
BY:  JAMIE GREENWOOD, ESQ.                           Attorney for the Defendant
Suffolk County District Attorney's Office           Moore International Law, PLLC
East End Bureau                                     45 Rockefeller Plaza, 20th Floor
32 Jackson Avenue                                   New York, NY  10111
Hampton Bays, NY  11946

## FINDINGS OF FACT

### The Prosecution Witnesses

The Prosecution called Southampton Town Bay Constable, Richard Franks to testify.

Constable Franks testified that he has been employed by the Town of Southampton as a Bay Constable for 11 ½ years and that his duties pertained to enforcement of the Southampton Code especially as it relates to the Southampton Town Trustees who, among other things, regulate the use of the bay bottoms within Southampton Town waters, including the right to attach anything to the bay bottom within their jurisdiction.

Franks also testified that he was familiar with the boundaries of the Shinnecock Indian Reservation in as much as the Reservation land extends landward from the mean high water mark.

On April 17, 2017 Constable Franks received a telephone call from a Trustee indicating that the Trustee had been out bait fishing and he advised Franks that "there was a possible illegal net that was installed in Taylor Creek".

The following day (April 18, 2017) Officer Franks went to the place described to him by the Trustee and located the net in question.

Franks called the State Department of Environmental Conservation (hereinafter "D.E.C."), an agency with which he had cooperated in the past, "to see if somehow we could find out who the net belongs to."

Franks further testified that his phone call to the D.E.C was prompted by the fact that "he felt that the net was installed didn't have a permit" from the trustees, as is required, by Southampton Town Code.

As a result of the telephone call, the following day, April 19, 2019 Franks met with two officers of the D.E.C. at the southeast corner of Taylor Creek off Halsey Lane and Meadow Lane.

When Franks arrived the net was still there in the same location as it had earlier been observed by Franks. Constable Franks took three pictures of it (People's Exhibit #1, 2 & 3) which were marked into evidence over the objection of defense counsel.

Bay Constable Franks also identified People's Exhibit 4 & 5 which are maps showing the Shinnecock Reservation (Exhibit # 4) and the location of the net in question (Exhibit # 5).

The Prosecution called Lieutenant Sean Reilly of the D.E.C. to testify.

Lieutenant Reilly testified that he had been employed by the D.E.C. for 22 ½ years and is the supervisor of Nassau County and Marine Enforcement Unit for the field.

Lieutenant Reilly testified that on April 19, 2017 he had a meeting with D.E.C. Officers Bobsein and Taber in the D.E.C. Marine Office in Setauket.

Bobsein and Taber advised Reilly that they had received information from Constable Franks that there was a possibly illegal net set in the creek by Meadow and Halsey Neck Lane.

Lieutenant Reilly then directed Taber to drive to the location, verify if the net was still there and then to notify him.

Upon being notified that the net was in fact, at the location as described by Franks, Lieutenant Reilly assigned D.E.C. Officers Laczi and Farrish to take an unmarked vehicle to go down to that location at high tide to see if anyone came to pull the net.

The officers were to wear civilian clothes and to secrete themselves, so that anyone going to the net would not be scared off.

A little after six o'clock A.M. on April 20, 2017 Laczi notified Reilly that a vehicle had pulled up and that it appeared someone was approaching the net.

Reilly advised Laczi to stay out of sight and when "whoever it was returned back from that location to check them, what they had taken out of the net".

About a half an hour later Officer Laczi notified Lieutenant Reilly that they "had a subject that had a bucket with him that had glass eels in it."

Lieutenant then responded to the location on or about 9:00 AM .to supervise the collection and documentation of the evidence that was taken at that time.

Upon arrival at the scene, Lieutenant Reilly was shown a bucket which contained "glass eels"  by the two D.E.C. Officers, Laczi and Farrish.

With the aid of Officer Doroski, the net was pulled from the water.

The net, the buckets and the "glass eels" or elvers were collected and taken to the D.E.C. Facility at Ridge, New York.

Lieutenant Reilly testified that, once the net was taken to Ridge, New York, an outdoor facility of the D.E.C., it was measured and found to be a fyke net, approximately 40 feet long with wings that brought it to 78 feet.

The Prosecution called D.E.C. Officer Evan Laczi to testify

Officer Laczi testified that he and D.E.C. Officer Farrish, pursuant to the request of Lieutenant Reilly, met at the State Police Headquarters in Riverside, New York and took an unmarked Jeep Grand Cherokee to the location of the net on the tip of 450 Meadow Lane, Southampton.

Wearing civilian clothes, the two officers arrived at the Meadow Lane location at around 5:00 A.M. and waited "in hopes that someone would come to claim the net or fish the net".

Sometime between 6:00 and 6:30 A.M., a pickup truck pulled up to 450 Meadow Lane.

Soon, Officers Laczi and Farrish observed an individual walk down to the location of the net and "take something from the larger net with a small net".

According to Officer Laczi the following then took place:

"So we took videos and pictures of the person in the creek. The person that was standing in the creek began walking toward Officer Farrish and I. Officer Farrish and I, again, were in plain clothes. I had a conversation with the individual when he walked up to me with the bucket in his hand. I asked the individual what was in the bucket. He replied just some bait. I asked if I could see the bait and that individual replied "I am in a hurry, I have to go and proceeded to walk back to his pickup truck." (Transcript, Proceedings February 21, 2019, Page 22, Lines 6-18)

Officer Laczi further testified:

Q. What happened after you approached the individual and he indicated there were bait fish in the bucket?

A. That individual said he was in a hurry and began walking back to his vehicle.

[Deleted Material]

Officer Farrish and I followed the individual back to his pickup truck. He placed the contents of the bucket on the bed of the truck, at which point Officer Farrish and I identified ourselves as New York State Department of Environmental Conservation Police Officers and asked again what was in the bucket and the individual replied elvers. He unscrewed the bucket and when I looked in; I saw a large pile of small American eels.

"Q. You said elvers then small American eels, are those the same thing?

A. We refer to undersize, immature eels as elvers.

Q. Can you describe what the elvers look like?

A. Elvers are very small, little eels. They are slippery. They have long tails, almost like a snake or a tadpoles.

Q. You mentioned earlier that you were trained in identifying fish and wildlife?

A. That is correct.

Q. Are one of the species you're trained in the American eel?

A. Yes. We went through training in the academy on elvers as well as the American eels and we went through field training identifying them as well.

Q. Based on that training and your experience as an officer with the Department of Environmental Conservation, were you able to determine at that time what you were looking at?

A. I was.

Q. Approximately, what size were the eels you saw in the bucket?

A. They were very small. Approximately, two inches in length."

(Transcript Proceedings February 21, 2019, Pages 23, 24, 25, Lines 21-25, 1-15)

Officer Laczi testified that, subsequent to the initial encounter with the Defendant when he had declined to open his bucket, the Defendant "unscrewed the bucket and when I looked in, I saw a large pile of small American eels (elvers)".

According to his testimony, after the Defendant unscrewed his bucket, revealing the elver eels, Officer Laczi swore that he asked the Defendant for permission to search his vehicle (the pickup truck).

Upon doing so, Officer Laczi discovered fishing equipment and a large net which were, along with the two five gallon buckets collected and brought to the D.E.C. facility in Ridge for which a receipt was given to the Defendant.

After all of this had transpired, Officer Laczi testified that he obtained a "voluntary statement" from the Defendant (People's Exhibit 8).

Officer Laczi,, then, at the telephonic direction of Lieutenant Reilly, issued the Defendant an appearance ticket for possession of an undersized species.

After Officer Laczi returned with the evidence that he had to the Ridge headquarters of the D.E.C., Lieutenant Reilly and D.E.C. Officer Doroski arrived bringing with them the fyke net and 98 undersized eels (elvers) that had been retained in the net.

There were 247 eels (elvers) in the bucket(s) which Officer Laczi had already counted.

D.E.C. Officer Brian Farrish was called as a witness on behalf of the People and testified in pertinent part as follows:

"As he started approaching us, we asked what was in the buckets. He said some bait fish and then stated he had to get going. At that time, we continued the path back to his truck. We followed him. As he was putting his buckets on the tailgate, we identified ourselves as environmental police officers".

Q. Then what happened?

A. Then we asked him what he had in his buckets. He replied elvers.

Q. What are elvers?

A. Elvers are baby eels.

Q. What is significant about elvers?

A. They are glass eels, which are very tiny, small eels and there is a very big market for them to sell them.

Q. Is it legal to possess or fish for them in New York?

A. Eels less than nine inches are illegal to possess.

Q. So it is illegal?

A. Yes

Q. What happened after that individual told you he had elvers in the bucket?

A. We asked him to see what was in the bucket. He said sure. He opened the bucket. We saw some American Glass Eels swimming around the top. At that time, I asked him what he was going to do with the eels. He said he was going to take them back to the reservation and try and grow them.

Q. Did you have any further conversation with him at this time?

A. No

(Transcript February 21, 2019 Page 93, Page 94, Line 2-25, Line 1-12)

Following the revelation of the elvers in the Defendant's bucket, D.E.C. Officers Laczi and Farrish procured a "voluntary written statement" from the Defendant (People Exhibit 8) in which he admitted to seating the fyke net in the Taylor Creek, and to have taken baby eels or elvers from the net on several previous occasions in addition to the incident now at bar.

The People called Ms. Lisa Goree as a witness.

Ms. Goree testified to the effect that she is the Tax Assessor for the Town of Southampton (Coincidently, Ms. Goree is also a tribal member of the Shinnecock Nation).

Ms. Goree testified that the boundaries of the Shinnecock Nation are as shown on People's Exhibit 11 and that People Exhibit "4", which is an aerial photograph, marked with a red circle, shows a location outside the boundaries of the Shinnecock Nation.

Following the testimony of Ms. Goree, the People rested. The Defense moved to dismiss the charges against the Defendant for lack of jurisdiction.

The Court has treated this application as one for a Trial Order of Dismissal (C.P.L. §290.10). Decision on the Motion was reserved and the disposition of the same will be treated in the opinion which follows.

<u>The Defense Witnesses</u>

The defense called Mr. Bryan Polite to testify.

Essentially, Mr. Polite testified that he was a member of the Shinnecock Nation and had served in its government for a total of seven years in various tribal capacities.

In relevant part, Mr. Polite testified to the effect that "The official position of the Shinnecock Nation is [that] the Shinnecock Nation has never relinquished their rights to the bay".

Mr. Polite did testify as follows on cross examination; with respect to the subject location in question. (The fyke net)

"Q. You would agree that this area of Meadow Lane is Southampton Village?

A. Correct. Yes.

Q. You would agree that location is not on the Shinnecock Indian Reservation as boundaries stand?

A. Currently, yes".

(Transcript February 21, 2019, Page 139, Lines 4-10)

The Defendant called Dr. John A. Strong, Professor Emeritus in History and American Studies of Long Island University.

Professor Strong possessed strong credentials concerning the history and culture of the various indigenous Native American Tribes of Long Island, including the Shinnecock People in particular.

His testimony was both interesting and scholarly.

It was interesting to learn that Taylor Creek was known in the Shinnecock tradition as "Turtle Creek", not only because of the abundance of snapping turtles which populated it, and served as a major food source for the Shinnecock People prior to the Colonial Period and after, but also for the shape of the mouth of the creek which resembles a turtle head.

The defense rested after the testimony of Dr. Strong.

The Court finds the testimony of all of the witnesses to have been credible in all relevant respects.

## ANALYSIS

### Jurisdiction of the State of New York (D. E. C.)
### at the Fyke Net

The Fyke Net in question was placed out in Taylor Creek and there appears to be no dispute that the location shown by the red circle on People's Exhibit 4 where the net was placed, is outside of the boundaries of the Shinnecock Nation.

Indeed, Mr. Bryan Polite, a member of the Shinnecock Nation and a member of the Shinnecock Government for at least seven years, was called as a defense witness and testified when asked if he agreed that the location was "not on the Shinnecock Indian Reservation as the boundaries stand", replied "currently, yes".

In an earlier matter decided by Justice Kooperstein of this Court on January 28, 2009 in *People v Ruggerio* where Justice Kooperstein correctly pointed out that the People had failed to meet their burden of proof as to the location of an alleged fishing violation on Shinnecock Bay by a member of the Shinnecock Nation. The factual scenario present here is otherwise.

In *Ruggerio*, there was a failure to prove exactly where the alleged violation took place relative to the borders of the Shinnecock Nation.

Here, based upon the current and indisputed mapping of the area, the fyke net was most certainly placed on Taylor Creek outside of the established boundaries of the Shinnecock Nation.

The Court understands that tribal lore and tradition does not lend itself easily to the imposition of mapped boundaries, especially in dealing with the traditional Native American understanding of hunting and fishing rights, which from all accounts gave scant attention to the mapped boundaries that the European colonists relied on so heavily.

The world around us has changed and this court is without the power to alter the legally established boundaries of the Shinnecock Nation or of the State of New York. Even if the court had such authority, on this record at least, no other conclusion can be drawn except that the subject fyke net was, in fact, placed not on waters or land belonging to the Shinnecock Nation, but on territory within the jurisdiction of the State of New York, acting through its D. E. C.

For these reasons the application for a Trial Order of Dismissal is denied.

Further, the People have proven beyond a reasonable doubt that the subject fyke net was set, maintained, operated or used in an area (Taylor's Creek) subject to the jurisdiction of the State of New York acting through the D. E. C.

### THE VIOLATION COMPLAINT CHARGING THE DEFENDANT
### WITH A VIOLATION OF SECTION 11-1303/71-0923 OF THE E.C.L.

This complaint charges the Defendant with the possession of eels in excess of a 25 fish limit in that he possessed 222 eels in excess of 25 fish in his bucket. A total of 247 eels.

The bucket and the fishing equipment as well as the statement taken by the D.E.C. Officers from the Defendant resulted from what the prosecution urges was a consensual search of the Defendant's bucket(s), as earlier herein described.

Both D.E.C. Officers Laczi and Farrish testified to the effect that when they first approached the Defendant and asked to see what was in his bucket, the Defendant refused to show the contents of the bucket to them.

Each Officer testified that in as much time as it took to walk to the Defendant's truck after their first encounter with him, the Defendant consented to the search of his buckets and his truck and the giving of a "voluntary statement" containing damaging admissions.

In People v Gonzalez, 39 N.Y. 2d 122, 383 N.Y.S 2d 215, the New York Court of Appeals held among other things, "Consent to search is voluntary when it is a true act of will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle. As the Supreme Court stated in *Bumper v. North Carolina,* 391 U. S. 543 "Where there is coercion there cannot be consent." [As quoted in *Gonzalez*]

No one circumstance is determinative of the voluntariness of consent. Whether consent has been voluntarily given or is only a yielding to overbearing official pressure must be determined from the circumstances.

An important, although not dispositive, factor in determining the voluntariness of an apparent consent is whether the consenter is in custody or under arrest, and the circumstances surrounding the custody or arrest. True custody, or, more compellingly, the immediate events of an arrest, especially a resisted arrest, do, however, engender an atmosphere of authority ordinarily contradictory of a capacity to exercise a free and unconstrained will.

Submission to authority is not consent. ***

Another factor to be considered in determining the voluntariness of an apparent consent is the background of the consenter. ***

Another factor to be considered is whether the consenter has been previously to the giving of consents, or for that matter even later, evasive, or un-co-operative with the law enforcement authorities. ***

A final factor is whether a defendant was advised of his right to refuse to consent. Such advice is not mandatory. Failure to advise, however, may be considered in determining whether a consent was voluntary."

The record of these proceedings is bare of any showing as to how it was that the initial refusal to permit a search of his buckets by the Defendant was converted within a short period of time into his consent to opening the bucket(s) and a search of his truck, as well as the voluntary giving of a written statement against his penal interests.

The Court also observes that the fyke net in question was first reported to the D.E.C. on April 17, 2017 and that the Defendant was ticketed for violations on April 20, 2017 when the encounter above described took place. There was more than ample time from the discovery of the net to the confrontation with the Defendant by the D.E.C. Officers to obtain a search warrant relative to anyone who appeared on the scene to tend the net.

The United States Supreme Court has sanctioned such a procedure. Justice Scalia wrote in *United States v Grubbs,* 547 U.S. 90 (2006) "Thus, when an anticipatory warrant is issued, 'the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed.' *United States v Garcia,* 882 F. 2d 699, 702."

Accordingly, the Court has not considered the evidence adduced by the People relative to the buckets found to have contained the glass eels or the Defendant's statement given to Officers Laczi and Farrish.

### THE VIOLATION CHARGING THE DEFENDANT WITH A VIOLATION
### OF SECTION 13-0335/71-0923 OF THE E.C.L.

This section provides, when read in conjunction with its attendant regulations that it is prohibited to maintain, operate or use a fyke net greater than 40 feet in length without possessing a food fish license.

The fyke net in question was placed in open view in Taylor Creek on both Southampton Town Trustee controlled bottom land or private property; or both. Either way, it was open to the view and inspection of anyone who came to where it was placed in the creek.

As such, there could be no expectation of privacy with respect to the fyke net.

By approaching the net and extracting some content from it, the Defendant clearly was maintaining, operating or using the net and he was observed so doing by Officers Laczi and Farrish.

The People have proven the Defendant's violation of this section beyond a reasonable doubt.

However, the People have not proven beyond a reasonable doubt that the Defendant was guilty of possessing 98 eels (elver eels) from the fyke net.

This is so because these eels were found in the net <u>after</u> the Defendant had been ticketed and had left the scene.

There was no testimony as to how or when the eels entered the net and the only testimony as to the possession of the eels is that Lieutenant Reilly and Officer Doroski took the eels from the net after the Defendant, and Officers Laczi and Farrish had left the area.

### THE VIOLATION COMPLAINT CHARGING THE DEFENDANT WITH A SECOND VIOLATION OF SECTION 11-1303/71-0923 OF THE E.C.L.

This alleged violation pertains to the size of the 247 eels seized from the Defendants bucket(s).

This count suffers from the same deficiency as discussed with respect to the first alleged violation of E.C.L. Section 11-13031/71-0923 treated earlier herein. The search and seizure which yielded the evidence and the attendant statement was not proven to be constitutional.

### CONCLUSION

The Defendant is guilty of the violation of E.C.L. Section 13-0335/71-0923 dated June 6, 2017 relating to the lack of a marine commercial food fishing license and the use of a fyke net.

The Defendant is not guilty of the other two violations charged.

Let this Memorandum Decision also serve as the Order of the Court.

Hon. Gary J. Weber
T. J.

# Exhibit E

# RECORDS

—OF THE—

# TOWN OF EAST-HAMPTON,

LONG ISLAND, SUFFOLK CO., N. Y.,

—WITH OTHER—

# Ancient Documents of Historic Value.

## VOLUME I.

This volume includes the Records from 1639 to 1679-80 transcribed under direction of Committee appointed to reproduce the Records, by Town Meeting, April 3, 1883, with an Introduction by Hon. H. P. Hedges, published at the expense of the Town and by its authority.

> JONATHAN T. GARDINER,
> JONATHAN BAKER,
> JOSEPH S. OSBORNE,
>      Committee.

SAG-HARBOR :

JOHN H. HUNT, Printer.

1887.

# RECORDS

—OF THE—

## Town of East-Hampton, L. I.

——:o:——

BOOK 2, page 165.—Know all men whom this psent writinge may concerne yt I James ffarrett of Long Island gent. Deputy to the Right honorabell the Earle of Starlinge Secretary for the kingdome of Scottland do by these prsence in the name & behalfe of the sd Earle of Starlinge and in my owne name alsoe as his deputy as it doth or may concerne my selfe give & grant free leave & liberty to Lion Gardiner his heyeres executors & assignes to enioy that Island wch hee hath now in possession called by the Indians Manchonacke by the English Ile of wight I say to enioy both now & for ever, wch Iland hath bene purchased before my cominge from the ancient Inhabitants the Indians, nevrtheles though the sd Lion Gardiner had his possession first from the Indians before my cominge yet is he now contented to hould the tenor and title of the possession of the aforesd Iland from the Earle of Starlinge or his sucsessors whomsoever whoe hath a grant from the kinge of England under the great Seale of the aforesd kingdome : be it knowne therefore that I the sd James ffarrett doe give & hath given free liberty and power to the sd Lion Gardiner his heyers executors & assigne & their sucsessors for ever to enioy the possession of the abovesd Iland to build & plant there on as best liketh them & to dispose thereof as they

thinke fitt and alsoe to make execute or put in practice such
Lawes for church & Civill Govment as are accordinge to gods
the kings and the practice of the Country without giveing any
account there of to any whomsoever and the aforesd right &
title both of land & govrment to remayne wth & to them &
their suesessors for ever without any trouble or molestacon
from the sd Earle or any his suesessors for now & ever, and
for as much as it hath pleased our Royoll kinge to give the
patten of Long Iland to the aforesd Earle of Starlinge in con-
sideracon whereof it is agreed upon, that the trade wth the
Indians shall remayne wth the sd Earle & his suesessors to
dispose upon from tyme to tyme & at all tymes as best liketh
him : notwithstanding the sd Lion Gardiner to trade wth the
Indians for corne or any kind of victuals for the use of the
plantacon and noe further and if the sd Lion Gardiner shall
trade in wampun from the Indians he shall pay for every
fathom twenty shillings as alsoe the sd lion gardiner and his
suesessors shall pay to the sd Earle or his deputyes a yearely
acknowledgement beinge the sume of five pounds beinge law-
fully demanded of Lawfull money of England or such comodi-
tyes as at that tyme shall passe for money in the Country and
the first payment to begin the last of October 1643 the three
former years beinge advanced for the use of the sd James ffar-
rett in witness where of the sd party have put his hand &
seale the tenth day of March 1639.

                              JAMES FFARRETT.

Sealed & Delivred in the prsence of
    Ffoolke Davis, Benjamine Price.



Hedges Book, page 72.

                              April the 29th, 1648.
    This present writing testifieth an agreement between the
worship'll Theophilus Eaton, Esquire, Governour of the Colo-

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 14 of 75 PageID #: 1280

ny New Haven, And the worship'll Edward Hopkins, Esquire, governour of the Colony Connecticut, and their astoyats on the one parte, And Poggatacut, Sachem of Munhansett, Wayandanch, Sachem of Meuntacut, Momowetow, Sachem of Corchake, Nowedonah, Sachem of Shinecoke, and their asotyts, the other Part. The said Sachems having sould unto the foresaid Mr. Eaton and Mr. Hopkins, with their asotyats, all the Land lyinge from the bounds of the Inhabitants of Southampton, unto the East side of Napeak, next unto Meuntacut high Land, with the whole breadth from Sea to Sea, not Intrenching uppon any in length or breadth, which the Inhabitants of Southampton, have and do possess, as they by Lawfull right shall make appeare, for and in consideration of twentie Coates, twentie-four looking-glasses, twentie four hoes, twentie-four hatchets, twentie-four knives, One hundred muges, allready Received by us, the forenamed Sachems. for ourselves and asotyats ; and in consideration thereof, we doe give upp unto the said Purchasers, all our right and Interest in the said Land, to them and their heirs forever.

Allsoe doe bind ourselves, to secure their right from any claims of any others, whether Indians, or other Nation whatsoever, that doe, or may hereafter, challenge Interest therein. Allsoe, we, the said Sachems, have Covenanted to have Libertie, freely to fish in any or all the cricks and ponds, and hunt up and downe in the woods without Molestation, they giving the English Inhabitants noe just offence, or Iniurie to their goods and Chattells. Likewise, they are to have the fynns and tails of allsuch whales as shall be cast upp, to their proper right and desire they may bee dealt with in the other part. Allsoe, they reserve libertie to fish in all convenient places, for Shells to make wampum. Allsoe, if the Indyans, hunting of any deare, they should chase them into the water, and the English should kill them, the English shall have the body, and the Sachem the skin.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 15 of 75 PageID #: 1281

And in Testimony of our well performance hereof, we have sett to our hands, the Day and year above written.

Witnesses to this,
RICHARD WOODHULL
THO STANTON,
ROBERT BOND,
JOB SAYRE.

The marke of POGGATACUT, Munhansett Sachem.
The marke of WAYANDANCH, Meantacutt Sachem.
The marke of MOMOWETA, Corchake Sachem.
The marke of NOWEDONAH, Shinecok Sachem.

*Chectanoo, ⊁ his marke, theis Interpreter,*

The assignment to the Inhabitants of East Hampton is as follows:

Whereas, by direction from Theophilus Eaton, Esq., and me Edward Hopkins, a purchase was made by Thomas Stanton and others, of a part of the Esstern Part of Long Island, of the Indians Sachems, the true proprietors thereof, in the name of Theophilus Eaton, Esq., aforesaid, and myself, with our associates, as by the said agreement, dated the 29th of April, 1648, may more fully appear, which said purchase was paid by me, Edward Hopkins, and amounted to the Sum of Thirty pounds four shillings eightpence, as may appear by a Note of Particulars, under the hand of Thomas Stanton, to whom the said sum was paid, now delivered to Robert Bond, of East Hampton.    This writinge witnesseth that I have received the foremencioned sum of Thirty pounds four shillings eight pence, of the Inhabitants of East Hampton, and have delivered unto them the writings of the said purchase, and all the interest that thereby was purchased.    In witness whereof, I have herevnto subscribed, the 16th of Aprill, 1651.

I say received,                              £   S   D

                                             3S   4   8   per me
                                        EDWARD HOPKINS.

A true copy per me,
        THOMAS TALMAGE, Rec.


PAGE 18, Book A or page 1, Book B—Articles of agrement betwene Mr Daniell How of the one party and Thomas Backer

# Exhibit F

# THE FIRST



## Book of Records

OF THE

# Town of Southampton

WITH OTHER

## ANCIENT DOCUMENTS

### OF HISTORIC VALUE,

Including all the writings in the Town Clerk's office from 1639 to 1660 ; transcribed with Notes and an Introduction by Wm. S. Pelletreau, and compiled by the undersigned Committee, chosen at Town Meeting, April 1st, 1873, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.

John H. Hunt, Book and Job Printer,
Sag-Harbor, N. Y.

1874.

12         RECORDS: TOWN OF SOUTHAMPTON.

viz, the land within granted being a meere wilderness and the
natiues of the place pretending some Interest which the plant-
ers must purchase and they might haue had land enough gratis
(and as convenient) in the massachusets or other of the Collonies
with liberty to trade with the Indians (which they are debared
from) and for that they had possesed and improned this place
before any actuall claime made thereto by the Right honbbl.,
the Earle of Starling, or had any neede of his lordships patent,
and whereas his lordship (vpon consideration I suppose of the
promises) reqnired nothing of them but in way of acknowledge-
ment of his interest, I doe hero vpon conceive and doe accord-
ingly, (so farr as power is given me) order and sitt downe that
the Inhabitants of the tract of land within mentioned or the
plantation now called Southampton, vpon Long Island, and
their successors for ever shall pay yearely to the saide Earle of
Starling his heirs or assignes vpon the last day of 7 ber, att
Southampton aforesa'd toure bushells of the best Indian Corne
theire growing, or the value of so much in full satisfaction of all
rents and services services (the 5th part ot gold and silver oare
to the kings majesty reserved always excepted.)  In testimony
where of I have hereunto sett my hand, dated 20 (8) 1641.

                                JO. WINTHROP.

————————

## Indian Deed.

This indenture, made the 13th day of December, Anno Dom.
1640, betweene Pomatuck, Manduish, Mocomar to, Pathemanto,
Wybbenett, Wainmenowog, Heden, Watemexoted, Checke-
puehat, the natiue Inhabitants & true owners of the eastern pt.
of the Long Island, on the one part, and Mr. John Gosmer,
Edward Howell, Daniell How, Edward Needham, Thomas

Halsey, John Cooper, Thomas Sayre, Edward Harrington, Job
Sayre, George Welbee, Allen Breade, Will'm Harker, Henry
Walton, on the other part, witnesseth that the sayed Indians
for due consideration of sixteene coats already received, and
alsoe three score bushells of indian corne to bee payed vpon
lawfull demand the last of September, which shall bee in the
yeare 1641, & further in consideration that the above named
English shall defend vs the sayed Indians from the uniust vio-
lence of whatever Indians shall illegally assaile vs, doe ab-
solutely & for ever giue & grant & by these presents doe ac-
knowledge ourselues, to have ginen & granted to the partyes
above mentioned, without any frande, guile, mentall reserua-
tion or equivocation to them & theire heires & successors for
ever, all the lands, woods, waters, water conrses, easements,
proffits & emoluments thence arisinge what soeuer, from the
place comonly knowne by the place where the Indians hayle
over their cannooes out of the North bay to the south side of
the Island, from thence to possess all the lands lying eastward
between the forsaid bounds by water, to wit, all the lands lying
eastward between the foresaid bounds by water, to wit, all the
land pertaining to the parteyes aforesaid, as alsoe all the old
ground formerly planted lying eastward from the first creek at
the westemore end of Shinecock plaine, To have & to hold
toreuer without any claime or challenge of the least title, in-
terest or propriety whatsoever of vs the snyd Indians or our
heyres or successors or any others by onr leave, appointment
license counsel or authority whatsoever, all the land bounded
as is above said. In full testimonie of this our absolute bar
gaine, contract & grant indented & in full & complete satisfac-
tion & establishment of this our act & deed of passing over all
our title and interest in the premises, with all emoluments &
profits thereto appertaining or any wise belonging from sea or
land within our limitts above specified without all guile wee haue
set to our hands the day and yeare above snyd.

Memorand. Before the subscribing of this present writing it
is agreed that the Indians abone named shall haue libertie to

14          RECORDS: TOWN OF SOUTHAMPTON.

breake vp ground for theire vse to the westward of the creck
afore mentioned on the west side of Shinecock plaine.

MANATACUT, X his mark,
MANDUSH, X his mark,
WYBENET, X his mark,
HOWES, X his mark,
SECOMMECOCK, X,
MOCOMANTO, X,
these in tho name of the rest.

Witnesses of the deliverie
& subscribinge this writing.
ABRAHAM PIERSON,
EDWARD STEPHENSON,
ROBERT TERRY
JOSEPH HOWE,
THOMAS WHITEHONE,
JOSHUA GRIFFITHS,
WILLIAM HOWE.

----

### Confirmation of the Indian deed.

NOVEMBER THE 24th, 1686.

This day Apeared before me Llift. Collonll John Youngs Esq.,
one of his Majesties Iustices of the peace, eleven of the Cheife
of the Iudians of Shinecock, namely : Pungamo, Sachem, who
is son and heire to the within subscribed Mandush, and quaqua-
shawg, Iohn man, Cobil, asport, palameowet, wahambahaw,
wiack hance, Suretrust Saspan Ahickock, tive whereof being
old men, Did declare before me as followeth (viz) that the
aforesaid Mandush Sachem and true proprietor with those In-
dians with him subscribed to ye within written Deed, with ye
full consent of the Rest of the Indians of Shinecock & did ac-

# Exhibit G

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 22 of 75 PageID #: 1288

# THE FIRST



## Book of Records

OF THE

# Town of Southampton

WITH OTHER

## ANCIENT DOCUMENTS

OF HISTORIC VALUE,

Including all the writings in the Town Clerk's office from 1639 to 1660 ; transcribed with Notes and an Introduction by Wm. S. Pelletreau, and compiled by the under-signed Committee, chosen at Town Meeting, April 1st, 1873, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.



John H. Hunt, Book and Job Printer,
Sag-Harbor, N. Y.

1874.

## Indians' Agreement with Lion Gardiner.

Be it knowne unto all men by this present writing, that this
Indenture covenant or Agreement was made the tenth of Iune
in the years of our Lord 1658 between Wyandance Sachem of
Pawmanack with his son Wiacombone and their Asociates, that
in Sasagatuco, Checanon, & mamauet•, on ye other side Lion
Gardiner for himself his heirs executors and assigrs, that is to
say that the foresaid Sachem Wiandance hath sould for a con-
siderable sum of money and goods, a certaine tract of beach
land with all ye rest of ye grass that joynes to it not seperated
from it by water, which beach begins eastward at the west end
•f Southampton hounds, and westward where it is separated by
ye waters of ye sea coming in out of the ocean sea, being
bounded, Southwards with the great sea, Northwards with the
inland water, this land and the grass thereof for a range or run
for to feed horses or cattle on I say I have sold to the foresaid
Lion Gardiner his heirs executor and assigns for ever for the
sum aforesaid and a yearly rent of twenty five shillings a year
which yearly rent is to be paid to the foresaid Sachem his heirs
executors and assigns for ever, in the eighth month called October
tober then to be demanded, but the whales that shall be cast
vpon this beach shall belong to me, and the rest of the Indians
in their bounds as they have beene anciently granted to them
formerly by my forefathers,  And also liberty to cut in the sum-
mer time flags bullrushes and such things as they make their
mats of provided they doe noe hurt to the horses that is there-
on.   And that this writing is to be understood according to the
letter, without any reservation or further Interpretations on it
we have both of us Interchangeably set to our hands and seales

*Lion Gardener*

Autograph of Lion Gardiner.

Signed Sealed and  The SACHEM H mark

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 24 of 75 PageID #: 1290

delivered in the   The mark of X his sons WIACOMBONE
presence of us     SASAGATACO S mark
David Gardiner     CHECANOE A mark
Ieremiah Conkling  MAMANETE 8 mark

I Iohn Cooper do accept this writing and promise for myself
my heir executors and assigns to performe the payment which
is above specified.   Witness my hand this 23 day of December
1658.   In presence of ye underwritten witness

Thomas Osburne   Ieremiah Conkling.


At a court of Sessions held at Sessions held at Southold in
the East Riding of Yokshire upon Long Island the 7th day of
Iune. by his majesties Authority in the 17th year of ye reigne
of our Sovregue Lord Charles the second by the grace of God
of Great Brittain France and Ireland King defender of the faith
&c and in the yeare of our Lord God 1665.

Whereas Mr Ogden did sell a parcell of land to the Inhabi-
tants of the towne of Southampton which was given and grant-
ed to him by ye late Sachem Wyandanee & his son, with a res-
ervation of twenty five shillings a yeare to him and his heirs
after the expiration of some years which Thomas Halsey hath
or had therein, this court doth order that the said some of
twenty five shillings so reserved to be paid yearly as aforesaid
(when Thomas Halseys time shall be expired) shall be payed
unto the surk squaw daughter & heire to the said sachem, &
to her heires and assigns according to the Intrest of the grant
above mentioned by the persons in Possession of the said lands
who may claim their satisfaction for Mr Ogden who sold it to
them.                        By me

RICHARD TERRY,

Clark of the sessions.

# RECORDS..

## Town of Brookhaven,

UP TO

# 1800.

AS COMPILED BY THE TOWN CLERK.

PATCHOGUE:

PRINTED AT THE OFFICE OF THE "ADVANCE."

1880.

hereby ingage himself, for, and on the behalf of his Neighbours, to pay, or Cause to be paid, unto the foresaid Sachems, twenty Coats, twenty hoes, Twenty Hatchets, forty Needles, forty Muxes, ten pound of powder, ten pound of Lead, Six pair of Stockins, Six Shirts, one Trooper's Coat, made of Good Cloath; Twenty knives, one Gunn, for and in Consideration of the aforesaid goods, Wiandance, the Sachem of Mentauk, and Wenecoheage have Sold the Aforesaid Meadows, to be the aforesaid Mr. Richard Woodhull's and his Neighbours, and their Heirs forever, and do hereby promise and ingage themselves, to free and Defend the Said Meadows from all others, that may any ways make any Claim thereunto, and in Witness hereof, the aforesaid Sachems and Mr. Woodhull, have interchangably Set their hands this 20 July, 1657. This to be paid upon demand.

in presence of      RICHARD WOODHULL,
JOHN STICKLING,    this mark X Mentauk Sachem,
JONAH WOOD.     the mark weneco, X Sachem.

——o——

## WYANDANCE TO LION GARDENER.

### Deed of Beach.

BE it knowne unto all men, by this present writing, that this Indenture, covenant, or Agreement, was made the tenth of Iune, in the yeare of our Lord, 1658, between Wyandance, Sachem of Pawmanack, with his son Wiacombone, and their Asociates, that in Sasagataco, Checanon & mamaneto, on ye other side Lion Gardiner, for himself, his heirs, executors and assigns, that is to say, that the foresaid Sachem, Wiandance hath sould for a considerable sum of money and goods, a certaine tract of beach land, with all ye rest of ye grass that joynes to it, not seperated from it by water, which beach begins Eastward at the west end of Southampton bounds, and westward where it is separated by ye waters of ye sea, coming in out of the Ocean Sea, being bounded Southwards with the great sea, Northwards with the inland water; this land and the grass thereof for a range, or run, for to feed horses or cattle on, I say, I have sold to the aforesaid

Lion Gardiner, his heirs, executor and assigns forever, for the
sum aforesaid, and a yearly rent of twenty-five shillings a year,
which yearly rent is to be paid to the foresaid Sachem, his heirs,
executors and assigns for ever, in the eight month, called Octo-
ber, then to be demanded, but the whales that shall be cast upon
this beach shall belong to me, and the rest of the Indians in their
bounds, as they have beene anciently granted to them formerly
by my forefathers.

AND also liberty to cut, in the summer time, flags, bullrushes,
and such things as they make their mats of, provided they doe
noe hurt to the horses that is thereon.   And that this writing is
to be understood according to the letter, without any reservation
or further Interpretations on it, we have both of us, Inter-
changeably set to our hands and seales.

|                              |                              |
|------------------------------|------------------------------|
|                              | LION GARDENER                |
| Signed, Sealed and           | The Sachem X mark,           |
| delivered in the presence    | The mark of X his sons WIACOMBONE, |
| of us                        | SASAGATACO X mark,           |
|    DAVID GARDNER,            | CHECANOE X mark,             |
|    IEREMIAH CONKLING,       | MAMANETE X mark.             |

I, Iohn Cooper, do accept this writing and promise for
myself, my heir, excutors and assigns, to performe the payment
which is above specified.   Witness my hand, this 23 day of
December, 1658.   In presence of ye underwritten witness.

                                   THOMAS OSBURNE,
                                   JEREMIAH CONKLING.

———o———

## PUNCTUALITY AT TOWN AND TRUSTEE
## MEETINGS.

AT a town meting, held the first decem, 1659, It  was
ordered that whoever be Defective  in apeareance to the Towne
meetings, upon lawfull warning, thay shall forfeit 2 shillings 6
pence, for the Town's use, unles they can give a Reson, that
may Satisfy the maior pt. of the  towne.   In 1701, The Trustees
ordered that a member being one hour late, should be fined 3s,

# Exhibit H

# THE SECOND

# Book of Records

## OF THE

# Town of Southampton

## LONG ISLAND, N. Y.,

### WITH OTHER

## ANCIENT DOCUMENTS

### OF HISTORIC VALUE,

Including the Records from 1660 to 1717; transcribed with notes and an Introduction by Wm. S. Pelletreau, and compiled by the undersigned Committee, appointed at Town Meeting, April 4th, 1876, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.

SAG-HARBOR:
**JOHN H. HUNT, Printer.**

1877.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 30 of 75 PageID #: 1296

### Wyandanch's Deed to Iohn Ogden.

May 12 1659   Be it knowne unto all men that by this pres-
ent writing that I Wiandance Sachem of Paumanwcheon Long
Island have vpon deliberate consideration, and with  my sonne
Weeuyacomhoune, both of us together, given and granted unto
Mr Iohn Ogden and his heirs for ever, I say freely given a cer-
tain tract of land, beginning at the  westward end of South-
ampton bounds, which land  is  bounded, eastward with South-
ampton bounds, and with a small piece of meadow which I  gave
to Mr Iohn Gosmer, which  he is to enjoy, Northward to the
water of the hay and to the creek of Accaboneke, Westward to
the place called Peheeanmache, and  Southerly to Potuncke,
three miles landward in from the high water marke, and creeke
of accaboucke, and soe to the west,   But from this three miles
bredth of land southward all  the land and meadows towards
tho south sea the heach only excepted which  is sold to Iohn
Cooper, I say all the lands and meadows I have sold for a con-
siderable price unto Mr. Iohn Ogden tor himself his heirs exec-
ntors and assigns for ever upon conditions as followeth, first that
Thomas Halsey and his associates shall have the privilege of
the place of meadow called ququanantuck, the term of years
formerly granted to him or them, but the land lying betweene
quaquanantuck and three miles northward he shall or may pos-
sess and improve at present, but when the years of the afore-
said Thomas Halsey shall be expired, then shall the aforesaid
Mr Iohn Ogden or his assigns fully possess and improve all qua-
quanautnck meadow with the rest aforesaid, and then shall pay
or eause to be paid unto me Wyandance my heirs and assignes
the summe of twenty five shillings a yeare as a yearly acknowl-
edgement or rent for ever,   And it is also agreed that we shall
keepe our privilege of fishing, fowling, or gathering of berries
or any other thing for our use, and for tho full and firme con-
firmation hereof we have both parties set too our hands markes
and seals interchangably   The date and year above written

                                        IOHN  OGDEN    [L.S.]

   In the presence of us
DAVID GARDINER

Autograph of Lion Gardiner.

w^ch is the award of Mr Winthrop with Mr ffarrets memorandum, and another deed of Mr ffarrets with a coppy of the first of them, and the Articles of agreement with the Indians in ye yeare 1649.

Governor Niccolls his determination concerning the Towne Mr Topping and Iohn Ccoper, a coppy of it recorded, Capt. Toppings deed with his Assignement on ye back of it to the towne. The originall of the Indians deede assureing ye lands to the Towne w^ch they bought of Capt Topping, a copy of it recorded. Mr Scotts deede to the Towne for ye meadows & land to Peaconnet, the deed for the hearbidg of the beach, with Iohn Cooper's Assignement. The final conclusion with Southhold Comitties concerning the accabank meadows, ye order for paymt of ye Cuntrys rate in 67, ye coppy of the letter intended to bee sent to ye Governor in 69, more ye great book of records with a parchment cover, more the old book of records, with a large bundle con^t part of the blue book & many other writings, more 3 great roles of papers, and the two books of records of cattle & some time in ye hands of Mr Laughton. Memorand, with ye coppy of ye said deed signed as recorded (record was an error) and is delivered in amongst ye papers, with a coppy of ye Articles of Agreement with ye Indians recorded, wee say rec^d ye above mentioned writings and books, &c by vs with our copartners, witnes our hands the day & yeare above written.

|  |  |
|---|---|
| In presence of | IOSEPH RAYNOR |
| his | IONAS BOWER |
| IOHN ⅓ IESSUP | his |
| mark | ISAAC ⅓ HALSEY |
| IOHN LAUGHTON | mark |
|  | THOMAS COOPER. |

## D

May 12 1659. Be it knowne unto all men that by this present writing that I wiandance Sachem of Pawmanache or Long

Island, have upon deliberate consideration, and with my sone weeacacombone both of us together given and granted unto Mr Iohn Ogden and his heires forever, I say freely given, a certaine peece of land beginning at the westward end of South-ampton boundes, which land is bounded Eastwards with South-ampton bounds, and with a small peice of meadow which I gave to Mr Iohn Gosmer which he is to injoy, Northwards to the water of the bay and to the cricke of accabaucke Westwards to the place called Pehecannacke, and Southerly to Potuncke three miles landwards in from the highwater marke and creeke of accabaucke, and so along to the west. But from this three miles bredth of land Southward all the land and meadow to-wards the South sea the beach only excepted which is sold to Iohn Cooper. I say all the land and meadow I have sold for a considerable price unto Mr Iohn Ogden for himselfe his heires executors and assigns for ever, upon condition as followeth, first that Thomas Halsey and his Associates shall have the priv-ilidge of the peice of meadow called qaaucawnantuck the terme of yeares formerly granted to him or them but the land lying between quaucawnantuck and three miles northward he shall or may possess and improve at present, but when the yeares of the aforesayed Thomas Halsey shall be expired then shall the afore said Mr Iohn Ogden or his assigns fully possess and improve all quaucaunantucke meadow with the rest aforesayed and then shall pay or cause to be payed unto me wiandance my heires or assigns the summe of twenty five shillings a yeare as a yeare-ly acknowledgement or rent for ever. It is also agreed that wee shall keepe our privilidges of fishing fowling hunting or gathering of berrys or any other thing for our use, and for the full and firme confirmation hereof we have both partyes set too our hands markes and scales interchangeably, the date and yeare above written.

Signed sealed and            IOHN OGDEN.    [L. S.]
   delivered in the
   presence of us
     DAVID GARDINER,

*Lion Gardener*

# Exhibit I

June 8, 1659 Deed to Beach
(State Defendants' Transcription)

Be it knowne unto all men by this present writing, That I Wyandanch Sachem of Paumanuck on Long Island, and with my Sonn, Wecayaccombeoun, have sold unto Lyon Gardener, his heirs Executors and Assigns, I say I have sold all the Bodys and Bones of all the Whales that shall come upon the Land, or come a Shoare from the Western end of Southhampton Bounds, unto the place called Kitchaminchoke, yet reserving to ourselves and Indyons, all the Tails and fins for ourselves; The terme of Years from the date hereof, shall hold in force for this space of twenty and one years, and for the [gotten] continnuance of Love and Peace, between us, I say it shall bee, that if any Whale shall bee cast up in the bounds aforementioned, whether it bee found by English or Indyons, it shall bee judged by them both whether it bee a whole Whale or a halfe or otherwise. Now for every whole whale that shall come up, the aforesaid Lyon Gardener or his Assigns, shall pay or cause to be paid unto mee Wyandanch, the Sum of five pounds Sterling, or any good pay which wee shall accept of, but if it bee a halfe whale, a third part, or otherwise, they shall pay according to Proportion and this pay shall be within two Monethes after they have cut out and carryed the Whale home to their Houses but in case there shall not five whales come up, within the terme abovesaid, then shall the aforesaid Lyon Gardener, or his Assigns, have the next five Whales, that shall come up after the Terme, paying to mee, my heirs Executors or Assigns, the Sum above mentioned, and for the true performance of the promises. Wee have hereunto Sett our hands and Seals.

Signed Sealed in the presence of us.

The Sachems (Marks)
Weeayacombounes (Marks)

Benjamin Price
Jeremy Concolin
David Gardener


Be it knowne to all whom it may anyway concern, That I Lyon Gardener do give to John Cooper of Southhampton, all the right and priviledges of this Deed, too performme the Covenant, as I was to have done, with my hand in the presence of the underwritten witnesses.

Lyon Gardener

Robert Bond
Thomas Osborn Junior

June 8th 1659

Be it knowne unto all men by this present
writing, That Peogandaned Sachem of
Paumanieck on Long Island, and with my
Sonn Wabayacombowne have sold unto Lyon
Gardener, his heires Executo and Assignes,
I say I have sold all the Bodyes and Bones
of all the Whales that shall come upon the
Land, or come a Shoard from the Western end of
Southhampton Bounds, unto the place called
Kitchaminchoke, yet reserveing to our selves
and Indyans, all the Tailes and fins for
our selves, The terme of Yeares for my said
period, shall sold in force for the space of
twenty and one yeares, and for the better con-
tinuance of Love and Peace betweene us, I
say I shall God, that if any Whale shall bee
cast up in the Bounds above mentioned, whe-
ther it be found by English or Indyans, it shall
be declared by them both wheather it bee a whole
of Fale, or a haire, or a treakine, Now so soon
as the whale that shall come up the afore
said you Gardener or his Assignes, shall pay
or cause to be paid unto said Peogandaned, the
summe of five pounds Sterling, in any good pay
which wee shall accept of, But if it bee a halfe
or a third part, or otherwise, they shall pay

I say I have sold all the Bodyes and bones
of all the Whales that shall come upon the
Land, or come aShoard from the Easton end of
Southhampton bounds, unto the place called
Kitchaminchoke: yet according to ourselves
and Indyans, all the Tailes and fins for
ourselves: The terme of yeares in my date
hereof, shall hold in force for the space of
twenty and one yeares, and for the betten con=
=tinuance of Love and Peace betweene us, I
say it shall bee, that if any Whale shall bee
cast up in the bounds above mentioned, whe=
ther it be found by English or Indyans, it shall
bee judged by them both whether it bee a whole
Whale, or a halfe, or otherwise: Now for every
whole whale that shall come up, the afore=
said, Lyon Gardiner or his Assignes, shall pay
or cause to bee paid unto mee Wyandaned, the
Summe of five pounds Stenling, on any good pay
which wee shall accept of, but if it bee a halfe
whale, a third part, or otherwise, they shall pay
according to the persion, and this pay shall bee
within two Monethes after they have sett out
                                                        and

and carryed the Whale home to their Houses
but in case there shall not five whales come
up within the tound aboudsaid, then shall the
aforesaid Lyon Gardener, or his Assignes,
have the next five Whales, that shall come
up after the Terme, paying to med, my heirs
Executo's or Assignes, the Summe above
mentionede, and for the true performance of
the premisses, Wee have hereunto Sett our
hands and Seales.

Signed Sealed in the          The Sachems   Markes
presence of us                 Weeayacombouner   Markes

Benjamin Price,
Jeremy Concolin
David Gardener,

Bee it knowne to all whom it may any way
concernd, That I Lyon Gardent do sied to
John Cooper of Southhampton, all the rant
and priviledge of the Deed, he performe
the Covenant, as I was to have done with
my hand in the presence of the underwritten
witnesss
                              Lyon Gardener
Robert Boyd.
Thomas Osborn Junior

# Exhibit J

# THE SECOND

# Book of Records

OF THE

# Town of Southampton

## LONG ISLAND, N. Y.,

WITH OTHER

## ANCIENT DOCUMENTS

### OF HISTORIC VALUE,

Including the Records from 1660 to 1717; transcribed with notes and an Introduction by Wm. S. Pelletreau, and compiled by the undersigned Committee, appointed at Town Meeting, April 4th, 1876, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.

SAG-HARBOR:
**JOHN H. HUNT**, Printer.

1877.

the said agreement to have half the said land vpon a just devis-
ion for which hee is to pay me 25 pounds.    And whereas hee
the said Capt. Scott did lay claime to all the said tract of land
(I purchased as aforesaid) by vertue of bargaine with the said
Leift. Gardiner formerly, by meanes whereof hee the said Capt.
Scott became debtor vnto him the said Lyon [PAGE 46.] Gar
diner, I say I the forenamed Richard Smith doe hereby bind
myself my heirs that neither the said Lyon Gardiner nor any
in his right or name shall molest him ye said Capt. Scott or his
heyres, in respect of the said bargaine or covenant betweene
them concerning the said land.    And I further binde myself
my heirs, never to make any claime of Interest in the said pro-
portion of land made over as afore said, by the said covenant
witness my hand this 22 Nov. 1663.

RICHARD SMYTH.

Witness Henry Pierson Richard Howell Iohn Youngs.


Received this 21 day of November 1688 of Mr Isaac Halsey
the sum of one hundred twenty nine pounds, 13 shillings and
seven pence half penny, for the assessment of the county of
Suffolk.   I say received for the towne of Southampton New
York

MATH. PLOWMAN


This money above said was payed towards the Defraying of
the charge of the souldiers keeping at Albany the last year.
[Notes at bottom] (Thomas Lupton Nathaniel Halsey, Oba-
diah Rogers have stray cattle in charge)
[PAGE 47.] July 28 1659 Be it known vnto all men by
this present writing that I Wiandance Sachem of Pawmanack
or Long Island, and with my sone Weeayacombonn, have sold
vnto Lyon Gardiner, his heyres executors, or assigns, I say I
have sold all the bodys and bones of all the whales that shall
come vpon the land, or come ashore, from the place called
Kitchaminfchoke, vnto the place called Enoughquamuck, only
the fins and tayles, of all wee reserve for ourselves and Indians.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 41 of 75 PageID #: 1307

I say I have sold with the consent of Wannuggeasheum and
Tawbaughauz Sachems of the places aforesaid, I have sold all
the whales that shall come vp within the bounds aforesaid for
the space of 21 yeares ensueing the date hereof.  But if any
whales shall bee cast up they shall bee judged by ye English
and Indians whether it bee a whole whale or half or otherwise
but for every whole whale that shall be cast vp the aforesd
Lyon Gardiner or his assigns shall pay or cause to bee paid
vnto mee Wyandance my heyres executers and assignes the
sum of 5 pounds.  But if it bee not a whole whale then they
shall pay according to proportions and this pay shall bee paid
within two years after they have cut out and carried home the
whale to their houses.  But in case there shall not fowre or five
whales come vp within the terme above said then shall the
affore said Lyon Gardiner or his Assigns have the next 5
whales that shall come vp after the tearme.  And for the true
performance of the premises wee have herevnto set our hands
and seales

                The Sachems mark, WEEAYACAMBOUNES mark
                          BENJAMIN PRICE
Signed sealed & delivered In presence of vs
    Ieremy Concolin       David Gardiner.


    Whatsoever Wiandanch hath done or his successors may doe
with and besides this act of selling whales wee own is and was
his to make sayle of, and his heyres, and not ower nor our
heyres.
                          TOWBACKCOWZ his mark
                          WENAKCEASKAUM his mark.

    Witness  Richard Howell
             Iohn Smith.


    [PAGE 48.]   This subscription of the two Sachems under the
seales was their own act voluntary without any compulsion
    witness Zerobabel Phillips Ioseph Raynor Thomas Halsey
    This writeing with all the rite that is within the houle peaper

# Exhibit K

# THE FIRST





OF THE

# Town of Southampton

WITH OTHER

# ANCIENT DOCUMENTS

## OF HISTORIC VALUE,

Including all the writings in the Town Clerk's office from 1639 to 1660 ; transcribed with Notes and an Introduction by Wm. S. Pelletreau, and compiled by the undersigned Committee, chosen at Town Meeting, April 1st, 1873, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.

John H. Hunt, Book and Job Printer,
Sag-Harbor, N. Y.



1874.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 44 of 75 PageID #: 1310

the tax of tire money (as it hath been commonly called) and
the hon'bl Gobernor of New York having appointed the Com-
missioners for the Indian affaires in ye East Riding, namely
Capt Iohn Howell and Mr Thomas Baker to take cause for
satisfaction, I doe hereby appoint and constitute my frends ye
said Capt Iohn Howell and Henry Pierson my true and law-
full attorneys in my name & stead, but for my owne use to de-
mand and receive the said 40£ or any part thereof from any
person yt shall bee appointed to pay it upon the aforesaid ac-
cept, and vpon receipt thereof to give full discharge or to make
any composition or agreement concerning the premises,   And
whatever my said attorneys doe or causo to be done lawfully in
yo premises I do hereby ratify and confirme as if I had actually
done the same,   Witnes my hand this 7th of November 1667
allsoe I promise to defray ye charge my said attys are at in
and about the premisos.

Signed and delivered in presence of       IOHN OGDEN.
ws Iohn Richbell

Ionas Honldsworth,


## Papers in Relation to the Topping Purchase,
## Western part of the Town.

### INDIAN DEED TO CAPT. TOPPING,

This writing made the tenth ot Aprill 1662 between Weany
Sunk squaw, Anabackusand Iackanapes all of them residents
of Shinecock near Southampton on Long Island, on the one
partie and Thomas Topping of Southampton on the aforesaid
Island on the other partie, Witnesseth that we the said Weany
Anabackus and Iackanapes have given and granted and by
these presents do give and grant bargain sell assign and set
over unto Thomas Topping aforesaid his heirs and assigns for
ever all our right title and interest that we have or ought to
have in a certain tract of land lying and being westward of the
said Shinecock and the lawful bounds of Southampton above
said, that is to say to begin at the canoe place otherwise Niam-

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 45 of 75 PageID #: 1311

uck and soe to run westward te a place called and known by
the name of Seatuck, and from thence to run northward across
the said Island or neck of land unto a place called the head of
the bay with all the meadow and pasture, arable land, ease-
ments profits benefits emoluments as is or may he contained with-
in the limits and bounds before mentioned together with half
the profits and benefit, of the beach on the south side the said
Island in respect of fish whale or whales that shall by God's
providence be cast up from time to time, and at all times, with
all the herbage or feed that shall he, or grow thereon.

To Have and To Hold, all the forementioned demised prem-
ises with all and singular the appurtanances thereto belonging
or in any ways appertaining to him the said Thomas, his heirs
executors, administrators, or assigns forever, without the lett
trouble denial or molestation of us the said Weany, Anabaekus,
and Iackanapes our heirs or assigns or any o her person or per-
sons lawfully claiming from, by, or under us our heirs executors
Administrators or assigns, for and in consideration of the four
score fathoms. of wampum, or other pay, equivelent to be paid
unto the said Weany, Anabackns, and Inckanapes together
with those other Indians interested whose names are under
written, at or before the first day of December next ensueing
the date hereof, by the said Thomas Topping or his assigns
unto the true and faithful performance of all the premises we
have hereunto interchangeably set our hands.

| In presence of | THOMAS TOPPING, |
|---|---|
| Iames Herrick | WEANY X her marke |
| Iohn Topping | ANABACKUS X his marke |
| Elnathan Topping | IACKANAPES X his marke |
| | COBISH X his marke |
| | TOPOBIN X his marke |
| | WETAUGON X his marke |

# Exhibit L

# THE FIRST

# 𝕭𝖔𝖔𝖐 𝖔𝖋 𝕽𝖊𝖈𝖔𝖗𝖉𝖘

OF THE

# Town of Southampton

WITH OTHER

## ANCIENT DOCUMENTS

OF HISTORIC VALUE,

Including all the writings in the Town Clerk's office from 1639 to 1660 ; transcribed with Notes and an Introduction by Wm. S. Pelletreau, and compiled by the undersigned Committee, chosen at Town Meeting, April 1st, 1873, and published at the expense of the Town, by its authority.

HENRY P. HEDGES,
WM. S. PELLETREAU,
EDWARD H. FOSTER.

John H. Hunt, Book and Job Printer,
Sag-Harbor, N. Y.

1874.

### Indian Deed to the Town for Topping's Purchase.

Know all men by these presents, that whereas wee the underwritten whoe are of the Indians of Shinecock, and understanding that some of our Indians have, namely Wenny Annobacous Iackanapes & some others have sold unto Capt. Topping a tract of land westward from Southampton bounds, wee doe hereby make protest against the said sale, and doe affirme yt the said persons or Indians had noe right to make any such sale, but that ye interest and propriety vnto the said land belongeth totally or principally vnto us or some of us, And wee the true proprietors of the said lands, doe hereby assigne and make ouer, all our said Interest in the said tract of land, lying from a place called Niamuck or ye canoe place, westward to a place called Seatuck, and soe to run cross ye Island (namely Long Island) unto a place called the head of the bay, or Peaconnet, on the north, wee say wee doe impart and assigne all our said Interest in ye said lands, (whereof Qwagwanantuck is part) unto our ancient and loving ffriends the Townes men of Southampton to them and their successors for ever, with this proviso & consideration that if General Nicolls whom wee acknowledge the hon^ble & discreet Governer of this Island doth upon examination finde us or part of us to bee the true proprietors of ye said lands before mentioned, And that the said Southampton men doe receive and possess the same vpon our right or accompt, that then they shall pay unto us, as his said honor shall determine, Witness our hands this 17th of September, 1666.

                    The mark of X MANDUSH his daughter
                    The marke X of QUAQUASHAW
                    The marke of X ANOINEIS
                    The mark of X PUNCH,
                    The mark X of Mandush his sonne,
                    The mark X of WEETETOSEN,
                    The mark X of IONAQUID
                    The mark of X GOABES wife the relic of
                        mandush the chief Sachem,
                    The mark X of SAWGUM
                    The mark X of HOAQUEMES,
                    The mark of X APUCKHOWBATK
                    The mark of X SOMWESESEN
                    IOHN SMITH X his mark.

Know all men by these presents that whereas it is demonstrated by some special writings that a certain Annual payment was to be paid by the towns of Southampton unto Meantauk Indians, which payment seems to bee confirmed to them by the Court of Sessions held at Southold Iune the 7th 1665.

And whereas the said Indians have by the sunk squaw & chief of them, in behalfe of all, constituted me Thomas Iames their lawfull Attorney or agent to act for them respecting the premises, I say upon the grounds before mentioned, and upon the receipt now of eight trucking cloth coats for the said Indians doe resigne up unto the towne of Southampton, or for their use the two original deeds from the said Indians with ye order of ye said court and my letter of Attorney &c. And by vertue of my said power from ye said Indians doe in their names for ever wholly acquit the said Southampton their heyers & successors of all and every part of that foresaid, or any anuall payment that was to be paid, or might on any accompt whatsoever bee claimed from Southampton or any of the said town, by the said Indians of Meantuck, or any particular of them. In witnes whereof I have hereunto set my hand this 17th day of Ianuary An. Dom. 1670.         Witnes my hand

In presence of us                               THO. IAMES.
Iohn Stanton   Gershom Culver.

## The Governor's Determination.

Whereas Mr Ionn Howell, and Henry Pierson are deputed by the town of Southampton to prosecute or conclude a difference with Capt Thomas Topping, which difference hath also relation to Iohn Cooper, in respect of his claime of Interest, to which end all ye said parties shewed severall writings whereof were three deeds, one of these from Iohn Scott to Southampton men, another from some of Shinecock Indians to Capt Topping and the other from Lyon Gardiner to Iohn Cooper, Now know all persons by these presents that ye said parties namely Capt. Thomas Topping, the said deputies from Southampton

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 50 of 75 PageID #: 1316

and Iohn Cooper, have fully and absolutely reftered themselves
to my determination in the premises whereupon (with the con-
sent of ye said parties) I doe conclude and determine as follow-
eth, yt they they the said Capt. Topping and Iohn Cooper
shall fully and freely (upon demand) deliver unto the town of
Southampton all their deeds, writings and evidences that they
have of a certain tract of land now in contraversie betweeen
them, and which the said towne purchased of Iohn Scott as by
his deed aforesaid, appeareth, and all the right and interest that
ye said Capt Topping and Iohn Cooper have by the said deeds
or any other way or means obtained, in the said tract of land
meadows or beach meutioned in their said deeds is belonging,
doth and shall belong unto the towne of Southampton, (viz)
(that have and doe pay purchase) and their successors forever,
herein only profits of whales excepted, And they the said Capt.
Topping and Iohn Cooper and either of them shall hereafter
sign any instrument in writing that may be made for ye further
confirmation of their said Interest vnto the said Southampton,
And in consideration whereof the towne of Southampton shall
pay to him ye said Capt. Thomas Topping or his assignes the
sum of five pounds, and they shall alsoe pay unto ye Indians
(concerned to receive it) four score fathoms of wampum, the
wampum being accompted at six per penny, or soe much in
value in pay equivelent, the same to be distributed to all the
Indians (according to ye interest they had in ye premises pur-
chased) at ye best discretion of Mr Iohn Howell Henry Pier-
son and Richard Howell.  Also the said towne shall let him
the said Capt. Topping have 150£ allotment in ye said mead-
ows before mentioned more over I doe determine that ye said
Iohn Cooper shall pay unto him the said Capt Topping the
some of fifteen pounds besides and above what he oweth unto
yo said Capt. Toppingshall give up his interest in 150£ allot-
ment he hath in yo said meadows unto him the said Capt Top-
ping, all which is in consideration of the interest which he the
said Capt Topping claimeth in the whales, which may be cast
upon the beach within the compass of the formentioned pur-

chase and designed as above written the which interest in all
the profits of whales & fish shall belong unto him the said Iohn
Cooper his heirs and assignes for ever, and hee the said Capt.
Topping shall at any time hereafter upon Reasonable demand
signe any deed or writing that is or shall be made further to
confirm unto the said Iohn Cooper his heirs and assigns the said
Intrest in whales or fish &c and he the said Iohn Cooper in
content to accept of what ye town of Southampton shall freely
pay unto him for the herbage of the beach which he hath re-
signed up unto the said town as afore said, and this to be the
ultimate issue and final determination concerning the premises
and I doe allsoe confirme and assure unto the said town there
said tract of land with the herbage of the beach &c, and to ye
said Iohn Cooper his said Interest in the profits of whales or
fish, and defend them and their in ye peaceable enjoyment
thereof.   Against all other claims whatsoever,

Dated in Fort Iames in New York the 3d day of October
1666.

                          RICHARD NICOLLS.

Recorded in ye office of New York the 14th day of march,
1666 By mee Matthias Nicolls, Sec.


Wee underwritten doe testify that on or about the 20th of
ffeb, 1664, before Capt. Topping was chosen to goe to Hemp-
stead as deputy for this towne of Southampton,  At a towne
meeting endeavors were used to compose the difference that
was, or was like to bee, betweene the said town & him, but
tindeing the plurality of Inhabitants together did but spend
time in argueing to anp fro, and put not a period to the busi-
ness,   The towne by maior voat impowered three men, namely
Ioshua Barnes Richard Post, and Tho Halsey, Iun to make a
finall agreement with the said Capt. Topping, and after some
space of time that day the towne being met together with Capt.
Topping the said Three men, or some of them, in the name of

# Exhibit M

# DOCUMENTS

RELATING TO THE

# COLONIAL HISTORY

OF THE

# STATE OF NEW YORK.

Vol. XIV — Old Series.
Vol.    III — New Series.



ALBANY, N. Y.:
WEED, PARSONS AND COMPANY.
1883.

# DOCUMENTS

RELATING TO THE

# HISTORY OF THE EARLY COLONIAL SETTLEMENTS

PRINCIPALLY ON

# LONG ISLAND,

WITH A MAP OF ITS WESTERN PART, MADE IN 1666, *in back pocket*
*Map, cop. 2, in Map Case,*

Translated, Compiled and Edited from the Original Records in the Office of the
Secretary of State and the State Library, under direction of the
Honble JOSEPH B. CARR, Secretary of State,

BY

*1136150*

### B. FERNOW,

KEEPER OF THE HISTORICAL RECORDS.

HON. AND CORR. MEMBER OF THE PENNA, NEW YORK, VIRGINIA AND BUFFALO HISTORICAL SOCIETIES.



ALBANY, N. Y.
WEED, PARSONS AND COMPANY.
1883.

to sign another Letter of ye like nature wᵗʰ yᵉ former: The Governoʳ in Councell doth Order That he yᵉ said *John Burroughs* bee forthwith comitted into the Custody of yᵉ Sheriffe of this City, to remaine in prison until some time on Monday next, then to be brought to yᵉ whipping Post before yᵉ City Hall, and being fastened thereunto, to stand an hour, with a paper on his Breast, setting forth the cause thereof to be for signing sedicious Letters in yᵉ name of yᵉ Towne of *Newtowne*, against yᵉ Governᵐᵗ & Court of Assizes, and yᵗ he be rendred incapable of bearing any Office or Trust in the Governmᵗ for yᵉ future. He was by mittimus committed to prison.

The Sheriffs Warrᵗ to put yᵉ sentence in execution. Vizt.

Whereas *John Burroughs* of *Newtowne* now in yoʳ Custody, was yesterday sentenct to be comitted to prison, as by this mittimus to you doth appeare, & to be brought to yᵉ whipping Post, before yᵉ City Hall, & there fastened, to stand an hour, with a paper on his breast setting forth yᵉ cause thereof to be for writeing & signing sedicious Letters in yᵉ name of yᵉ Towne of *Newtowne* against yᵉ Governmᵗ and Court of Assizes: These are to require you to cause yᵉ said sentence to be put in Execution on Monday morning next at eleven of yᵉ clock, where yᵉ Mayor & Aldermen of yᵉ City are likewise desired to be present to see yᵉ same duly effected. For yᵉ which this shall be yoʳ sufficient Warrant; Given under my hand this 16ᵗʰ day of January 1674.

ANDROSS.

To Mʳ *Tho: Gibbs* Sheriffe
of yᵉ City of *New Yorke.*

January 22ᵈ, 1674-5.

The preserving of his Rⁿ Highnesse Interest in a proportion of yᵉ Drift as in yᵉ Law is set forth, the same being taken into Consideraçon. It is resolved, That there be some particular man comissionated to take care of drift whales in yᵉ middle & westermost part of *Long Island*, who is to be accomptable for his Royall Highnesse dues thereof, according to Law.

That if an Indyan find and give notice of any such drift whales, he shall have such reasonable satisfacçon as hath been usuall. If a christian shall find any such whale or great fish & secure it, or give due notice to yᵉ person empowered, where by the said Fish may be saued, hee shall be allowed a quartᵗ part for his share. Provided yᵗ no such whale being found, shall be cut up or embezeled, before notice be given to such Officᵉ or pʳsons empowered to take care therein.

That an Order be sent to the Sachems on the Southside of *Long Island*, to be here in the Fort upon yᵉ 9ᵗʰ day of ffebr. next, of which Mʳ *Nicolls* the Secrʸ is to take care to send to them & give them timely notice.

———

A WARRANT FOR Mʳ WILLIAM SHACKERLY TO LAY THE BOEUYES AT SANDY POINT.

By the Governoʳ.

You are hereby desired and required forthwith to take on board the *Hopewell* (yoʳ sonns small open sloop) the two bouys lying a float before the Towne Bridge, and to saile with them, to the coming into *Hudson* River, at *Sandy Point*; And without delay (winde and weather permitting) to lay the said Bouys, in the most proper places, without the said Point; one of them on the westermost Spit or Part of the East Banke; The other on the shouldings under (or of this side of) *Renslaer Hoeck* or *Portlands Point*, as is adjudged best, in not lesse then three fathome and a halfe at low water. At yoʳ going you are to call on Capt. *Griffin*, and (if hee please) to take with you his Master, and *Randall* his pilot, as also Mʳ *Thomˢ Young*, and to take their

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 56 of 75 PageID #: 1322

### AN ORD' ABOUT WHALES.

Whereas I am given to understand, That there hath been great Abuse by yᵉ neglect of yᵉ Offic'ˢ of severall Townes upon *Long-Island* in not makeing Enquiry into or securing his Royal, Highness his part of Drift Whales or Great ffish cast upon yᵉ Beach or Shoare according to yᵉ Directions in yᵉ Law, the wᶜʰ other persons p'sume to Engross without rendring any accᵗ; ffor yᵉ p'vention thereof for the future, and better securing yᵉ Dukes Interest therein, I have thought fitt to constitute and appoint, & by these Presents have hereby Constituted and appointed Mr. *Wm. Osborne*, & Mr. *Jno. Smyth* of *Hempstead* to make strict Enquiry either by Indyans or others, of all such Drift Whales or great ffish as shall bee cast up on the Beach or shore between yᵉ Bounds of yᵉ Towne of *Seatalcott* Eastward, & yᵉ utmost part of the Lymitts of *Gravesend* or *Coney-Island* Westward; and if any such Whale or Great ffish shall bee at any time found that they give an accoᵗ of and secure his Royˡˡ Highness his Interest and part of them as in yᵉ Law is sett forth; And yᵉ said *Wm. Osborne* & *John Smyth* shall bee solely employed herein for and dureing yᵒ space & terme of      yeares: They behaveing themselves therein according to yᵉ trust reposed in them, and for what they shall lawfully Act or Doe in the Premisses, This shall bee to them a sufficient Warrant.  Given under my Hand at *Forte James* in *New Yorke* this 2ᵈ day of May in yᵉ 24ᵗʰ yeare of his Maᵗⁱᵉˢ Reigne, Annoque Dın 1672.

---

### LIBERTY GIVEN TO Mʳ CORNHILL & Mʳ DOUGHTY TO SELL LIQUO'ˢ & POWDER TO Yᵉ INDYANS WHO ARE HELPPFULL IN Yᵉ WHALE FISHING DESIGNE.

Whereas Mr. *Richd Cornhill* one of yᵉ Justices of Peace, & Mr. *Elyas Doughty* being engaged wᵗʰ others in yᵉ Whale fishing Designe, upon yᵉ South-parts of *Long Island*, in the wᶜʰ they are of opinion the Indyans on those parts may bee very instrumentall unto them, if they might bee permitted to furnish them with some moderate proporçon of Strong Liquors, Powder, and Lead as they shall have occasion of, yᵉ wᶜʰ many persons p'sume to sell unto yᵉ said Indyans wᵗʰout Lycence, but the said Mr. *Cornhill* & Mr. *Doughty* Declare themselves to bee unwilling to break yᵉ Law therein.  At their request, I have thought fitt that for the space of one Whole yeare dureing yᵉ Whale-fishing Season, or in relaçon thereunto yᵒ said Mr. *Cornhill* & Mr. *Doughty* shall have Lycence to sell or truck wᵗʰ the Indyans of those parts such a moderate proporçon of Strong Liquors, Powder, or Shott as shall noe way occasion disturbance or abuse amongst yᵉ said Indyans or Christians, & shall bee usefull for their Whaleing Designe.  For yᵉ doeing whereof This shall bee their Warrant.  Given under my Hand & seale at *Forte James* in *New Yorke* this 4ᵗʰ day of May in yᵉ 24ᵗʰ yeare of his Maᵗⁱᵉˢ Reigne, Annoque Dni 1672.

---

### Lʳᴇ FROM Yᵉ GOVERNOʳ & COUNCILL OF Yᵉ MASSACHUSETTS TO HIS HONOʳ COLL : FFRANCIS LOVELACES. Sʳ.

Wee salute you kindely.  Our Allegiance to our Gracious Soveraigne, yours & our Safety, together with our just right to that part of yᵉ Countrey, to yᵉ Northward of his Highness the Duke *Yorkes* Territoryes beyound *New Yorke*, requires that wee endeavour Settlemᵗ on that side of the Colony nigh *Hudsons* River, least through our neglect thereof, the *ffrench* settling in our Liber-

REPRODUCTION BY PERMISSION OF
THE BUFFALO & ERIE COUNTY PUBLIC LIBRARY
BUFFALO, NEW YORK

tyes draw upon us his Ma^{ties} Displeasure, to our Loss & extreme p'judice, w^{ch} wee are carefull to avoid. S^r wee feare your not likeing well of our Endeavo^rs herein ; Wee doe therefore request that ffavour that you will bee pleased for our Accomodaçon in that behalfe to permitt that some person or persons whom yo^r selfe may thinke fitt for Mr. *Jn^o Payne* to make choice of, for their Travails & Knowledge of that part of y^e Countrey & Wilderness, w^{th}in our Libertyes, may for his reasonable satisfaction make Discovery to him of such Place w^{th}in our Rights as may bee most encouraging for settlem^t ; And that you will likewise bee pleased to signify to us yo^r kinde admittance, that wee as yo^r Neighbo^rs & Subjects of one Gracious Soveraigne may have free Egress, & Regress upon *Hudsons* River for Transportaçon of People and Goods ; w^{ch} will much ease our Charges therein, & yo^r kinde Returnes by our Messenger whom wee have trusted & employed in this Affayre shall engage all amicable and like assistance wherein wee may serve his R : Highness & yo^rselfe & remaine

S^r yo^r Hono^rs humble Serv^{ts}

Edw : Rawson Secr.

In y^e Name & by Ord^r of y^e Governo^r & Councell.

*Boston* in *N : England* y^e 12th Mar : 1672.

---

### Council Minutes and Orders relating to Whalefishing on Long Island ; Bushwick and Newtown Bounds.

Whereas I am given to understand that a Whale hath not long since been cast upon a parcell of Beach claymed to bee w^{th}in *Jno Coopers* Bounds or Precincts, of the w^{ch} severall Indyans have taken & carried away the Whale-Bone ; These are to authorize the said *Jno Cooper* to make Enquiry into and to make seizure of such Whale-Bone (if it bee found) of the w^{ch} hee is to give an acco^t to y^e next Justice of the Peace, & likewise unto my selfe, And for soe doing this shall be his Warrant.   Given &c : at *Seatalcott*, als *Brook Haven* y^e 10th day of May 1672.

At a Councell held at *Fort James* in *New Yorke* y^e 17th of May 1672.

Whereas it was rep^rsented unto his Hono^r y^e Governor that a certaine difference had arisen between *Jno ffinch* of *Huntington* & severall persons of *Oyster-Bay* concerned in the Whale-ffishing Design, touching three Drift Whales cast upon the Beach & cutt up and tryed by those of *Oyster Bay*, wherein his Royall Highness was concerned as to his particular Dues out of the Oyle of the said Whales ; All w^{ch} was referred by ye Governo^r to *Thomas Delavall* Esq^r one of y^e Councell to Examine & Endeavour a faire composure between ye Partyes, securing the Dukes Interest ; Hee having an Ord^r in the meane time to receive the Oyle, & bee accountable for ye same when the controversy should bee decided, to whom of Right it did belong ; and the said *Thomas Delavall* having Declared that to prevent further contest, hee had made a faire agreem^t between them or most of them concerned ; That is to say, That *Jno ffinch* should have for his Share or Proporçon fifteen Barrells of Oyle upon Acco^t of his Interest in y^e Beach where the Whales were cast up, out of w^{ch} hee is to pay his Royall Highness his Dues, & two Barrells more to beare the Necessary charges had hereupon ; And that y^e Remainder should be unto them of *Oyster Bay* that cutt up & tryed the Oyle of the said whales for their charge and paines therein, together with y^e cost of the Barrells, & Transportation ; Vpon consideraçon had hereof, the

84

678                           *Early Colonial Settlements.*

### ORDERS RELATING TO WHALING ON L. I.

Whereas comp$^{lt}$ hath been made unto mee by some of y$^e$ Inhabitants of *Brook-haven* als *Seatalcott* on behalfe of y$^e$ Company in their Townes engaged in ye Whaling Designe, That y$^e$ Indyans on the south-side of y$^e$ Island within y$^e$ Lymitts of their Patent, doe disturbe and discourage them in that Vndertaking, demanding a Barrell of Oyle out of every Whale w$^{ch}$ they shall take, although w$^{th}$ great hazard & hardship, requiring likewise payment for every stick of wood w$^{ch}$ they shall cutt thereabout for their needfull use of dressing their Dyet or the like; These are to require all such Indyans whither Sachems or others, That they surcease all such unlawfull actions, and that they noe way give molestation or hindrance unto any of the Persons or Company employed in the Designe afore mentioned, who upon their Request I have granted Liberty unto freely to make use of the Beach or Shore for their ffishing Designe from a certaine place called *Bluff Pointe* westward for the space of three miles, & likewise that they may cutt in y$^e$ common woods adjacent what wood they shall have occasion of for y$^e$ convenience of dressing their provisions, or other accommodation; In w$^{ch}$ if the said Indyans shall give the said Company of Whalers any further Disturbance, the Justices of peace, Magistrates, Constables or other Offic$^{rs}$ are hereby empowered to give Redresse unto y$^e$ said Company of the Whalers herein, ffor y$^e$ doeing whereof this shall be unto them a sufficient Warrant & Discharge.  Given &c: this 19th day of Aprill 1673.

Whereas I gave a Commission y$^e$ last yeare unto *Wm. Osborne* and *John Smith* of *Hempstead* for a certaine time to have the charge and care of looking after & securing all Drift Whales that Should happen to bee cast on the south parts of *Long Island* within the space in the said commission limited, It being ffor the p$^r$vention of abuses that had often been practiced, diverse persons finding such Drift Whales having cutt them up and kept all the proffitt to themselves, deceiving his Royall Highness of his dues, and at other times it being noe particular persons charge, such Drifts were neglected, soe both the Duke & Country had a Losse thereby; And being since given to understand that other Persons take upon them y$^e$ said charge of looking after Drift Whales, giving no acco$^t$ of the same, nor taking notice of my Commission; These are to require all persons whom this may concerne, that they bee ayding and assisting unto y$^e$ said *Wm. Osborne & Jno Smith* in prosecuting their commission; And if any person by accident doe heare of or finde such Whales within ye Lymitts in their commission specifyed, that they give notice to y$^e$ said persons thereof, who are obliged to take care about it, soe that the Duke bee not deceived of his Dues: w$^{ch}$ if every person take it upon them may too frequently bee done; And for what y$^e$ said *Wm. Osborne & John Smith* shall lawfully Act & Doe in prosecution of their Commission for the time & Terme afores$^d$ this shall bee to them a sufficient Warrant.   Given under my hand &c: Aprill y$^e$ 24th 1673.

To all Justices of y$^e$ Peace,                                 FRANC: LOVELACE.
Constables & other Offic$^{rs}$ to whom Applicaçon shall
bee made upon this Acc$^t$.

REPRODUCTION BY PERMISSION OF
THE BUFFALO & ERIE COUNTY PUBLIC LIBRARY
BUFFALO, NEW YORK

# Exhibit N

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 60 of 75 PageID #: 1326

# DOCUMENTS

RELATING TO THE

# COLONIAL HISTORY

OF THE

# STATE OF NEW YORK.

Vol. XIV — Old Series.
Vol.   III — New Series.



ALBANY, N. Y.:
WEED, PARSONS AND COMPANY.
1883.

# DOCUMENTS

·

RELATING TO THE

# HISTORY OF THE EARLY COLONIAL SETTLEMENTS

·

PRINCIPALLY ON

# LONG ISLAND,

WITH A MAP OF ITS WESTERN PART, MADE IN 1666, *in back pocket*
*Map, cop. 2, in Map Case,*

Translated, Compiled and Edited from the Original Records in the Office of the
Secretary of State and the State Library, under direction of the
Honble JOSEPH B. CARR, Secretary of State,

BY                          1136150

## B. FERNOW,

KEEPER OF THE HISTORICAL RECORDS.

HON. AND CORR. MEMBER OF THE PENNA, NEW YORK, VIRGINIA AND BUFFALO HISTORICAL SOCIETIES.



ALBANY, N. Y.
WEED, PARSONS AND COMPANY.
1883.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 62 of 75 PageID #: 1328

p^r^sent consideraçons, to Agree and Order such a Suitable Supply for yo^r^ Towne, as may bee proper for so an extraordinary occasion, and that it bee in the nature of a Rate, designing it to bee receiv'd in the same manner, and accompted for to the Countrey, at the Gen^all^ Court of Assizes; I am

Yo^r^ affectionate ffriend,

May 8^th^, 1676.                                                                          E. Andros.

This is by Capt. *William Dyre,* who is Order'd to receive and bring yo^r^ Result.

M. N. Secr.

May 17^th^ 1676.

Ordered, That y^e^ Towne of *Hempstead* do bring in each of them a particular Survey of their Lands at the next Court of Sessions, and deliver them to y^e^ Secretary if there, or to y^e^ Clarke of the Court to bee brought to the Office at *New Yorke* in order to their having patents for y^e^ same according to Law.

The *Matinicock* Indyans being sent for, The Governo^r^ proposes the buying of their Land, and particularly of three parcells of Land of a mile square each, about *Muskitoe Cove,* of which the Inhabitants have already the herbage and trees.

They aske an Extravagant Rate. Att length come to an Agreement for six hundred Guilders Seawant

May 23, 1676

At a meeting of the *Unchechaug* Indyans of *Long Island* before the Go at the Fort.

They give thanks for their peace & that they may live, eate & sleepe quiet, without feare on the Island.   They give some white strung seawant.

They desire they being free borne on the s^d^ Island that they may have leave to have a whale boat with all other materials to fish & dispose of what they shall take in & to whom they like best.

They complaine that fish being driven upon their beach &c the English have come & taken them away from them by force.   The Go: demands, if they made complainte to the Magistrates in the Townes who are appointed to redresse any Injuryes.

They say no but another time will doe it.

They desire liberty to have boats & ask materialls of their owne to goe a whaling and that they may dispose of their oyle & as they thinke goode.

The Gov will consider of it & give them Answer to-morrow.

May 24—1676.

The Indyans come againe to the Governor in presence of The Councell.

What they desire is granted them as to their free liberty of fishing, if they be not engaged to others; They say they are not engaged.

They are to have an order to shew further priviledge

At a Councell held in *N. Y.* the 24^th^ day off May 1676 Upon the Request of the Indyans of *Unchechaug* upon *Long Island* that they may have liberty to whale & fish upon their owne Acct

Resolved & ordered That they are at liberty & may freely whale or fish for or with Christians or by themselves & dispose of their effects as they thinke good according to law & Custom of y^e^ Governm^t^ of which all Magistrates offic^rs^ or others whom this may concerne are to take notice & sufer the s^d^ Indyans so to doe without any manner of lett hindrance or Molestation they comporting themselves civilly & as they ought.

By y^e^ Ord of y^e^ Go in Councell.

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 63 of 75 PageID #: 1329

New York                          Your very affectionate
May [blank] 1676.                    humble servant.
By Mr. Mayor.*                        M.N.
I pray give my best respects
to your honorable Governor.

[ENDORSED:]     Copie of a Letter to Mr. Rawson Secr. at Boston.
                By Mr. Mayor May 1676.

[25:118]

[MINUTES OF A MEETING WITH UNCHECHAUG INDIANS
CONCERNING FISHING RIGHTS]

May 23. 1676.

At a meeting of the Unchechaug Indyans of Long Island—before the Go:
at the Fort.

They give thankes for their peace, and that they may live, eate and sleepe
quiet, without feare on the Island, They give some white strung seawant.

They desire they being free borne on the said Island, that they may have
leave to have a whale boate with all other materiells to fish and dispose
of what they shall take, as and to whom they like best.

They complaine that fish being driven upon their beach etc. the English
have come and taken them away from them per force.

The Go: Demands if they made complainte of it to the Magistrates in the
Townes, who are appointed to redresse any Injuryes.

They say no, but another time will doe it.

The Go: will consider of it and give them Answer tomorrow.

May 24. 1676.

The Indyans come againe to the Governor in presence of The Councell.

What they desire is granted them as to their free liberty of fishing, if they

____
*   William Darvall

374     NEW YORK HISTORICAL MANUSCRIPTS

bee not engaged to others; They say they are not engaged.
They are to have an Order to shew for their priviledge.

[ENDORSED:]          May 23.24  1676.
                     Unchechaug Indyans.


**[25:119a]**

[ORDER GRANTING THE ABOVE FISHING RIGHTS]

At a Councell held in N.Y. the 24th day off May 1676.

Upon the request of the Ind[  ]s of Unchechauge upon Long Island

Resolved and ordered that they are at liberty and may freely whale or
fish for or with Christians or by themselves and dispose of their effects
as they thinke good according to law and Custome of the Government
of which all Magistrates officers or others whom these may concerne are
to take notice and suffer the said Indyans so to doe without any manner
of lett hindrance or molestacion they comporting themselves civilly and
as they ought.

                                        By Order of the Go: in Councell

[ENDORSED:]          Order of Councell may 24. 1676.
                     Unchechaug Indians.


**[25:119b]**

[LIST OF OWNERS OF VACANT LOTS IN NEW YORK]

Mr. Steenwyck                      The vacant Ground etc.
Mr. V: Brugge                         Mr. Allard Anthony
Mr. de Peyster                     X  Mr. Sam: Edsall
Mr. Hoogland                          Mr. Guylayne Verplanck
Mr. Ebbing                         X  Adolph Peterse.
Mr. Rombout                        X  Seuart Olferts.
Mr. Ver Plancke                    X  Mr. Thomas Lewis
Mr. Gerrit V: Tright               X  Peter Stoutenberg
Mr. Winder etc.                       Jan Vigné
                                      Mr. Ebbing
                                       Mr. Rombout
                                       Cor: V: Borsum
                                       Mr. Hoogelandt
                                       6 or 7

# Exhibit O

Case 2:18-cv-03648-SJF-SIL Document 84-6 Filed 11/18/19 Page 66 of 75 PageID #: 1332

# HISTORY

## OF THE

# TOWN OF SOUTHAMPTON

(East of Canoe Place)

BY
JAMES TRUSLOW ADAMS, M. A.

HAMPTON PRESS
BRIDGEHAMPTON, L. I.
1918

## APPENDIX X.

### GOV. ANDROSS' PATENT

Edmund Andros, Esqr., Seigneur of Sausmarez, Lieut and Governo Gen'all under his Royall Highness James Duke of Yorke and Albany &c. of all his Territorys in America To all to whom these presents shall come sendeth Greeting: Whereas there is a certaine Towne in the East Riding of Yorkshire upon Long Island commonly called and knowne by the name of South Hampton, scituate, lying and being on the South side of the said Island, toward the Maine Sea, having a certaine Tract of Land, thereunto belonging, The Eastward Bounds whereof extend to a certaine place or plaine, called Wainscott, where the bounds are settled betwixt their Neighbours of the Towne of East Hampton, and them: Their Southern bounds being the Sea and so runs westward to a place called Seatuck, where a Stake was sett as their farthest extent that way: Then Crossing over the Island to the Northward to Peaconock great River (not contradicting the Agreement made between their Towne and the Towne of South Hold after their Tryall at the Court of Assizes) and so to run Eastwards alongst the north bounds to the Eastermost point of Hogg-Neck, over against Shelter Island: Including all the Necks of Land and Islands, within the afore described Bounds and Limits: Now for a Confirmation unto the present Freeholder, Inhabitants of the said Towne and precincts: Know Yee, That by vertue of his Ma'ties Letters Patents, and the Commission and Authority unto mee given by his Royall Highness I have Ratifyed Confirmed and granted; and by these presents, do hereby Ratifie Confirme and grant, unto John Topping, Justice of the peace, Capt. John Howell, Thomas Halsey, Senior, Joseph Raynor, Constable, Edward Howell, John Jagger, John Foster and Francis Sayers Overseers; Lieut. Joseph ffordham, Henry Pierson, John Cooper, Ellis Cooke, Samuel Clarke, Richard Post and John Jennings, as Patentees, for and on the behalfe of themselves and their Associates, the ffreeholders and Inhabitants of the said Towne, their Heires, Successors and Assignes, All the aforementioned Tract of Land, with the Necks and Islands within the said Bounds sett forth and described as aforesaid, Together with all Rivers, Lakes, waters Quarrys Wood land Plaines Meadows, pastures, Marshes, ffishing, Hawking Hunting and ffowling, and all other Proffits, Commodities, Emoluments and Hereditaments, to the said Towne, Tract of Land and premises, within the limits and bounds aforementioned described, belonging, or in any wise appertaining: To Have And To Hold, all and singular their said lands, hereditaments, and premises,

with their and every of their Appurtenances, and of every part and
parcell thereof, to the said Patentees and their Associates, their
Heires Successors and Assignes to the proper use and behoofe of
the said Patentees and their Associates, their Heires Successors and
Assignes for ever, The Tenure of the said Land and premises, to bee
according to the Custome of the Mannor of East Greenwich in the
County of Kent in England, in free and Common Soccage and by
fealty only, Provided allways notwithstanding that the extent of
the Bounds before recited do in no way prejudice or infringe the
particular propriety of any person or persons who have right by
Patent or other Lawfull Clayme, to any part or parcell of Land or
Tenements within the Limits aforesaid: only that all the Lands and
Plantacons within the said Limits or  Bounds, shall have relation to
the Towne in Generall, for the well Government thereof: And if it
it shall so happen that any part or parcell of the Lande within the
bounds and Limits afore described be not already Purchased of the
Indyans It may bee purchased (as occasion) according to Law, I do
hereby likewise Confirme and graunt unto the said Patentees, and
their Associates, their Heires, Successors and Assignees, All the
privilidges and Immunityes belonging to a Towne within this Gov-
ernment: And that the place of their present Habitacon and abode
shall continue and retaine the name of South Hampton, by which
name and Stile, it shall bee distinguished and knowne, in all Bar-
gaines and Sales Deeds, Records and writings— They the said Pat-
entees and their Associates their Heires Successors and Assignes
making Improvement on the said Lands, and Conforming them-
selves according to Law, And yielding and paying therefore yearly
and every year, as an Acknowledgement, or Quit Rent, one fatt
Lamb, unto such officer, or officers, there in Authority as shall bee
Empowered to receive the same. Given under my hand and sealed
with the Seale of the Province in New Yorke, the first day of No-
vember, in the Eight and twentieth yeare of his Ma'ties Reigne
Annoq. Domini, one thousand, six hundred Seventy Six.

E. ANDROSS.

Examined by mee and Recorded
      Mathias Nicolls, Secr.
Southampton Town Records
      Vol. II. pp. 347-9.

## APPENDIX XI.

### PATENT OF GOV. DONGAN.

Thomas Dongan Capt. Generall Governor in Chiefe and Vice Admirall in and over the Province of New Yorke and Territoryes Depending thereon in America, &c, under his Majesty James the second By the grace of God King of England Scotland ffrance & Ireland Defender of the faith &c. To all whom this shall come sendeth Greet'ng Whereas the Right Honorable Edmund Andross Eequire Seigneur of Suzrainte Lievt, and Governr, Genll, under his Royall Highs James Duke of yorke and Albany &c: now his present Majesty of all his Territoryes in America did by a certaine writeing or Patent under the seale of the Province bearing date the first day of November One thousand six hundred and seventy six grant Ratifye and confirme unto John Toping, Justice of the peace, Capt. John Howell, Thomas Halsey Senior Joseph Raynor Constable Edward Howell John Jagger John Foster and Francis Sayres Overseers Lievt. Joseph Fordham, Henry Pierson, John Cooper, Ellice Cooke Samuell Clarke Richard Post and John Jenings as Patentees for and in behalfe of themselves and their Associates the ffreeholders and Inhabitants of the Towne of Southampton a certaine tract of Land lyeing and being scituate in the southside of Long Island in the Eastriding of Yorkshire towards the Maine sea the Eastward bounds where of extends to a certaine place or plaine called Wainscott where the bounds are settled betwixt their Ne'ghbors of the Towne of Easthampton and them their southern bounds being the sea and so runns Westward to a place called Seatuck where a stake was sett at their furthest extent that way then crossing over the Island to the northward to Peaconock great river not contradicting the agreement made betweene their towne and the towne of southold after their tryall at the Court of Assizes and so to runn Eastward alongst their north bounds to the Easternmost part of Hoggenock over against shelter Island includeing all the necks of Land and Islands within the aforesaid described bounds and limitts together with all Rivers Lakes waters quarries Woodland plaines meadowess pastures marshes fishing hawking hunting and fowling and all other profitts Comodityes and hereditaments to the said Towne tract of Land and premisses within the L'mitts and bounds aforemenconed described belonging or in any wise appertaineing To Have and To Hold all and singular the said Lands hereditaments and premisses with their and every of their appurtennces and of every part and parcell thereof to the said Patentees and their associates ther heires Successors and Assignes forever according to the tenure &

custome of the Manor of East Greenwich within the County of Kent in England in free an Comon Soccage and by fealty only Provided alwayes notwithstanding that the extent of the bounds before recited do nowayes prejudice or infringe the particular proprietyes of any person or persons who have right by Patent or other lawfull claime to any part or parcell of land or Tenements within the Limitts aforesaid only that all the Land and Plantacons within the said Limitts or bounds shall have relacon to the towne in Genll for the well government thereof And if it shall so happen that any part or parcell of the lands within the bounds and limitts aforedescribed be not already purchased of the Indyans it may be purchased (as occasion) according to law And moreover he the said Edmond An-dross Lievt and Governr Genll as aforesaid did further grant and confirme unto the said Pattentees and their Associates their heires Successors and Assignes all the priviledges and Imunityes belong-ing to a towne within this Government and that the place of theire present habitacon & abode shall continue and retaine the name of Southampton by which name and stile it shall be distinguished and Knowne in all bargaines & sales Deeds, Records and writeings they the said Patentees and their Associates their heires Successors and Assignes makeing improvement on the said land and confirmeing themselves according to law and yielding and paying therefore yearly & every yeare as an acknowledgement or Quittrent on fat lamb unto such officer or officers as shall be impowered to receive the same as by said Patent Recorded in the Secretaryes Office re-lacon being thereunto had may more fully and at large appeare. And Whereas of Late some difference hath happened betweene the Inhabitants of said towne of Southampton and the Indyans adjacent to said towne concerning the bounds above specifyed and also that the clauses above expressed for constituting them a towne and giv-ing them privileges and Immunityes are not sufficient in the law to convey to them such privileges & Imunityes as was designed to be given them And Whereas Major John Howell a ffreeholder and one of the Patentees of the aforesaid towne of Southampton by Order of the ffreeholders of the said towne hath made application unto me that I would confirm unto ye ffreeholders of said Town in a more full & ample manner all the abovecited tracts and parcells of land within the limitts and bounds aforesaid and finally determine the difference between the Indyans and the ffreeholders of the said towne of Southampton And also that I would Erect the said towne of Southampton within the Limitts and bounds aforesaid into one Township Now Know Yee That I the said Thomas Dongan By virtue of the power and authority to me derived from his most Sacred Majesty aforesaid and in pursuance of the same have examined the matter in variance between the ffreeholders of the said Towne of

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 71 of 75 PageID #: 1337

Southampton and the Indyans and do finde that the ffreeholders of
the Towne of Southampton aforesaid have lawfully purchased the
lands within the Limitts and bounds aforesaid of the Indyans and
have payd them therefore according to agreement so that all the
Indyan right by virtue of said purchase is invested into the ffree-
holders of the Towne of Southampton aforesaid and for and in con-
sideracon of the quittrent hereinafter reserved and other good and
lawfull consideracons me thereunto moveing Have Granted Ratifyed
Released and Confirmed and by these presents do grant Ratifye
Release and Confirme unto Major John Howell Thomas Hallsey
Senior Edward Howell John Jagger John Foster Francis Sayres
Joseph ffordham Henry Pearson Samuell Clarke Job Sayers Wil-
liam Barker Isaac Halsey ffreeholders & Inhabitants of Southamp-
ton heerin after erected and made one body Corporate and Poli-
tique and willed and determined to be called by the name of the
trustees of the ffreeholders and comonalty of the Towne of South-
ampton and their Successors all the afore recited tracts & necks
of land within the bounds and limitts aforesaid together with all
and singular the houses Messuages Tenements buildings millnes
millnedames fencings Inclosures gardens orchards fields pastures
woods underwoods trees timber Comon of pattue feedings mead-
ewes marshes swamps plaines Rivers Rivolets waters lakes ponds
Brookes streames beaches Quarris mines mineralls Creeks har-
bours highwayes and Easements fishing hawking hunting and fowl-
ing (silver and gold mines Excepted) and all other franchizes
profitts Comodityes and hereditaments whatsoever to the said tracts
& neckes of land and premises belonging or in any wise appurtane-
ing or therewith all used occupyed accepted reputed or taken to be-
long or in anywayes to appertaine to all intents purposes and con-
structions whatsoever as also all and singular the rents arrearages
of rents Issues and profitts of the said tract of land and premisses
heretofore due and payable To Have And To Hold all the aforere-
cited tract and parcell of land and premises with their and every
of their appurtenances unto the said Major John Howell Thomas
Hallsey Senior Edward Howell John Jagger John Foster Francis
Sayers Joseph Fordham Henry Pierson Samuell Clarke Job Sayers
William Barker Isaac Halsey ffreeholders and comonalty of the
towne of Southampton and their Successors forever to and for the
severall and Respective uses following and to no other use intent
and purpose whatsoever That is to say as for and concerning all
and singular the severall respective parcells of Land and meadow
part of the granted premises in any wayes taken up and appro-
priated before the day of the date hereof unto the several and re-
spective present ffreeholders and Inhabitants of the said towne of
Southampton by virtue of the aforerecited deed or Patent to the only

Case 2:18-cv-03648-SJF-SIL   Document 84-6   Filed 11/18/19   Page 72 of 75 PageID #: 1338

use benefite and behoofe of the said respective present ffreeholders
and Inhabitants and to their severall and respective heires and As-
signes forever And as for and concerning all and every such par-
cell or parcells tract or tracts of land Remainder of the Granted
premises not yet taken up or appropriated to any particular person
or persons by virtue of the aforerecited deed or Patent to the use
benefite and behoofe of such as have been purchasers thereof and
their heires and assigns forever in proporcon to their severall and
respective purchases thereof made as tenants in Comon without any
lett hindrance or molestation to be had or reserved upon pretence
of joynt tenancy or survivorship anything contained herein to the
contrary in any ways notwithstanding To Bee Holden of his said
Majesty his heires and Successors in ffree and Comon Soccage ac-
cording to the Mannor of East Greenwich in the County of Kent
within his Majesty's Realme of England Yeilding rendering and
paying therefore yearly and every yeare from henceforth unto our
Sovereigne Lord the King his heires and Successors or to such Officer
or Officers as shall be appointed to receive the same the sume of
one lamb or the value thereof upon the five and twentieth day of
march at New Yorke in full of all Rents or former reserved rents
services acknowledgements and demands whatsoever And further
By virtue of the power and authority to me the said Thomas Don-
gan as aforesaid given and in pursuance of the same and for the
reasons and consideracons above recited I have willed determined
declared and granted And by these presents do will determine de-
clare and grant that the said Inhabitants and ffreeholders the
ffreemen of Southampton aforesaid Comonly called by the name of
the ffreeholders and Inhabitants of the towne of Southampton or
by whatever name or names they are called or named & their heires
and Successors forever hence forward are and shall be one body
Corporate and Politique in Deed and name by the name of the trus-
teess of the ffreeholders & comonalty of the towne of Southampton
and them by the name of the Trustees of the ffreeholders and com-
onalty of the towne of Southampton one body corporate and Poli-
tique in Deed and name I have really and fully for his said Majesty
his heires and Successors erected made ordained const'tuted and
declared by these presents and that by the same name they have
succession forever And that they and their Successors by the name
of the Trustees of the ffreeholders and comonalty of the towne of
Southampton be and shall be forever in future times persons able
and Capable in law to have perceive receive and possesse not only
all and singular the premises but other messuages lands Tenements
Priviledges Jurisdictions franchizes and hereditaments of whatso-
ever kind or species they shall be to them and their Successors in
ffee forever or for the term of a yeare or yeares or otherwise what-

soever manner it be and also goods Chattells and all other things of
whatsoever name nature quality or species they shall be and also
to give grant release aliene assigne and dispose off lands Tene-
ments hereditaments and all and every other act and acts thing and
things to do and Execute by the name aforesaid and that by the
same name of the trustees of the ffreeholders and comonalty of the
towne of southampton to plead and be impleaded answer and be
answered unto defend and be defended they are and may be Cap-
able in whatsoever place and places and before whatsoever Judges
and Justices or other persons or officialls of his said Majesty his
heires and Successors in all & all manner of accons Plaints suites
Complaints causes matters and demands whatsoever of what kind
quality and species the same be and shall be in manner and forme
as any other of his majestyes Liedge people within this Province can
or are able to have require receive possesse Enjoy retaine give grant
release aliene assigne and dispose plead & be impleaded
answer and be answered unto defend and be defended do
permitt or execute And for the better enabling the Trus-
tees of the ffreeholders and comonalty of the towne of
Southampton aforesaid in doing and Executing all and singular
the premisses I have willed granted and determined and by these
presents do will grant and determine that from henceforward and
forever hereafter the said Trustees of the ffreeholders and Com-
onalty of the towne of Southampton doe and may have and use a
Common seale which shall serve to Execute the causes and affairs
whatsoever of them and their Sucessors   And further I will and
by these presents in behalfe of his said majesty his heires and Suc-
cessors that henceforward forevermore there be and shall be Trus-
tees of the ffreeholders and comonalty of the towne of Southampton
aforesaid to be chosen and elected as in these presents hereafter
is menconed who shall be and shall be called the Trustees of the
ffreeholders and Comonalty of the towne of Southampton and they
and their Successors shall and may at all convenient times hereafter
upon a publique sumons to be obtained at the request of any three
of the Trustees aforesaid from any of his Majesty's Justices of the
peace of the said towne or for default thereof from any of the
Justices of the County of Suffolk for the time being assemble and
meet together in the towne house of the said towne or in such other
publique place as shall be from time to time appointed to make such
acts and orders in writing for the more orderly Doeing of the prem-
isses as they the said Trustees of the ffreeholders and Comonalty of
the towne of Southampton aforesaid and their Successors from time
to time shall and may think Convenient so allwayes as the said acts
and orders be in no wayes repugnant to the laws of England and of
this Province which now are or hereafter may be Established and

that they be not in any wayes against the true intent and meaning
of these presents  And also I will ordaine and determine that all and
singular the aforesaid acts and orders from time to time shall be
made and ordered by the vote of the Major part of the said Trustees
of the ffreeholders and Comonalty of the towne of Southampton
aforesaid or at least by the vote of the Major part of such of them
as shall from time to time Assemble and meet together in manner
as aforesaid so allwayes there be not fewer in number than seaven
of the said Trustees present at such meetings so to be held as afore-
said and for the better execucon of this grant in this behalfe I have
assigned nominated Created Constituted and made and by these
presents do assigne nominate Create Constitute and make Major
John Howell Thomas Halsey Senior  Edward Howell John Jagger
John Foster Francis Sayres Joseph Fordham Henry Pearson Sam-
uell Clarke Job Sayres William Barker Isaac Halsey to stand and
be the first modern Trustees of the ffreeholders  and Comonalty of
the Towne of Southampton to continue in the aforesaid Office from
and after the date of these presents until the time that others be
elected and chosen in their stead According to the manner and forme
hereinafter expressed And moreover I do by these presents for
and on the behalfe of his Most Sacred Majesty aforesaid his heires
and Successors appoint that the Trustess of the ffreeholders and
Comonalty of the town of Southampton Constables and Assessors
within the towne of Southampton aforesaid be yearly chosen on
the first tuesday of Aprill forever viz: twelve Trustees of the ffree-
holders and Comonalty of the towne of Southampton two Constables
and two Assessors in such publique place as the trustees for the
time being shall appoint and direct and that the Trusteess Con-
stables and assessors be Chosen by the Majority of voices of the
ffreeholders and freemen of the towne of southampton aforesaid
And Lastly I give and grant for and on behalfe of his said Majesty
his heires and Successors by these presents to all and every person
and persons and to whatsoever person subject to his said Majesty
his heires and Successors free and lawfull power ability and author-
ity that they or any of them any messuages Tenements Lands
meadows feedings pastures woods underwoods rents revercons ser-
vices and other hereditaments whatsoever within the said County
of Suffolke (which they hold of his Sayd Majesty his heires and Suc-
cessors unto the aforesaid Trustees of the ffreeholders and Comonalty
of the towne of Southampton and their Successors shall and may
Give grant Bargaine sell and alienate to have hold and Enjoy unto
the said Trustees of the ffreeholders and Comonalty of the Towne of
Southampton and their Successors forever Yeilding and paying
therefore unto his said Majesty his heires and Successors on the
said twenty fifth day of march yearly and every yeare forever the

full and just sume of forty shillings Current money of this Province
at Newyorke  Wherefore by virtue of the power and authority afore-
said I do will and Command for and on behalfe of his said Majesty
his heires & Successors that the aforesaid ffreeholders and Com-
onalty of the towne of southampton and their Successors have hold
use and Enjoy And that they shall and may forever have hold use
and Enjoy all the Libertyes authorityes Customes orders ord'n-
ances franchizes acquittances lands Tenements and hereditaments
goods and Chattels aforesaid according to the tenure and effect of
these presents without the lett or hinderance of any person or per-
sons whatsoever  In Testimony Whereof I have caused the seale of
the said Province to be hereunto affixed and these presents to be
entered in the Secretaryes Office  Witness my hand at Fort James
the sixth day of December—One thousand six hundred Eighty six
& in the second yeare of his said Majestyes Reigne

Thomas Dongan.

## APPENDIX XII.

### WOOLWORTH AGREEMENT.

These presents Witnesseth an Agreement made and concluded
on Betweene Mr. Aaron Woolworth, Minister of the Gospel of the
One Part, And the Subscribers Hereunto, Inhabitants of the Parish
of Bridge Hampton of the other Part as follows (Viz):  That the
said Mr. Aaron Woolworth Doth hereby Covenant and promise to,
and Agree with them the Inhabitants Aforesaid to Settle with
them and carry on the Work of the Ministry Amongst them and
perform in all Points matters and things relating thereunto faith-
fully and Conscienciously According to his Ability from time to
time and at all times during life or so long as he shall be able; And
that the Subscribers hereunto of the Parish aforesaid do hereby
Promise and Bind themselves and Engage firmly by these Presents
unto him the said Mr. Aaron Woolworth that upon his performing
the Work of a Gospel Minister amongst them as above, That we
the Inhabitants of the Parish aforesaid do agree to give unto him,
the said Mr. Woolworth, the sum of One Hundred Pounds, New
York Currency, also, the House and Three acres of Land adjoining,
which this Parish purchased of Mr. James Brown as pr Deed Speci-
fied as A Settlement, And further we the Inhabitants of the Parish
aforesaid do promise to pay Each one and every one yearly and
every year during the time that the said Mr. Woolworth shall