UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID T. SILVA,
GERROD T. SMITH, and
JONATHAN K. SMITH,
Members of the Shinnecock Indian Nation,

               Plaintiffs,                  CV 18-3648
                                                (SJF)(SIL)

   -against-

BRIAN FARRISH,
JAMIE GREENWOOD,
EVAN LACZI,
BASIL SEGGOS,
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
and SUFFOLK COUNTY DISTRICT ATTORNEY'S
OFFICE,

               Defendants.
------------------------------------------------------------x

# STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        200 Old Country Road, Suite 240
                                        Mineola, New York 11501
                                        (516) 248-3302
                                        Attorney for State Defendants


                                        RICHARD HUNTER YORKE
                                        Assistant Attorney General
                                        Of Counsel

# ARGUMENT

## Plaintiffs Have Abandoned the Deeds They Previously Relied On

Plaintiffs have until now relied upon isolated deeds, stripped of historical and legal context, for their claims to have Aboriginal fishing rights in the "usual and customary Shinnecock fishing waters." *See* Complaint at p. 7. Now, in their Memorandum in Opposition to State Defendants' Summary Judgment Motion ("Pl.'s Opp.), Plaintiffs have disavowed the documents they had relied upon as support for their claims to have Aboriginal title. In doing so, they expose both the paucity of their allegations, and the extreme nature of their claims. In their section entitled "The Dongan Patent," Plaintiffs, realizing that any alleged Aboriginal rights were extinguished by Colonial Patents, disown the very documents they previously claimed gave them these rights. Pls' Opp. at 20.

Plaintiffs now state that these documents are ineffectual beyond their land boundaries, because "[e]very single Shinnecock deed or treaty" is bounded by waters, and "*not inclusive of them.*" Pl.'s Opp. at p. 20 (emphasis in original). Plaintiffs now claim that Taylor Creek, where Defendant Silva was ticketed, is not within the boundaries of the deeds. In Plaintiffs' own words: "The Shinnecock lands purchased were bounded by great bodies of water, categorically not inclusive of them . . ." *Id.* at p. 23. How Plaintiffs' landlocked documents convey Aboriginal fishing rights in the "customary waters" of the Shinnecock tribe is beyond Defendants.

Plaintiffs' "changing of horses mid-creek" exposes the extreme nature of their claims: that they have Aboriginal title to the waters because they never sold the underwater lands. This gives lie to Plaintiffs' protestations that they seek mere "use" rights and reveals the extent of their claims—that they have exclusive control and jurisdiction of the waters. The true nature of

1

their claims is precisely the sort to which *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261 (1997) and *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18 (2d Cir. 2004) apply.

### ***Coeur D'Alene* and *W. Mohegan Tribe* Prevent the *Ex Parte Young* Exception to Soverign Immunity and the *Sherrill* Doctrine Bars Plaintiffs' Claims**

Plaintiffs now assert that the underwater lands were never sold by the Shinnecock tribe. Pl.'s Opp. at p. 21 ("Defendants have not produced any evidence that the submerged lands within these ceded areas were ever purchased . . ."). In determining that *ex Parte Young* was inapplicable under similar claims, the *W. Mohegan Tribe* Court stated, "To the extent that the complaint alleges that there has never been a lawful extinguishment of the Tribe's Indian title, it seeks a declaration from this court that New York's exercise of fee title remains 'subject to' the Tribe's rights, *i.e.*, a 'determination that the lands in question are not even within the regulatory jurisdiction of the State.'" 395 F.3d 18, 23 (quoting *Coeur d'Alene*, 521 U.S. at 282). The Second Circuit held this to be the equivalent of a quiet title action and held that this was barred by the Eleventh Amendment under *Coeur D'Alene*. *Id*. Plaintiffs' claims implicate the most basic issue of state sovereignty—jurisdiction over the land and waters. As stated by the Supreme Court, "lands underlying navigable waters have historically been considered sovereign lands. State ownership of them has been considered an essential attribute of sovereignty." *Idaho v. Coeur D'Alene*, 521 U.S. at 283 (internal quotations omitted). Plaintiffs' claims cannot be squared with the *ex Parte Young* Exception to the Eleventh Amendment. As the *Coeur D'Alene* concurrence stated: "The *Young* doctrine rests on the premise that a suit against a state official to enjoin an ongoing violation of federal law is not a suit against the State. Where a plaintiff seeks to divest the State of all regulatory power over submerged lands--in effect, to invoke a federal court's jurisdiction to quiet title to sovereign lands--it simply cannot be said that the suit is not a suit against the State." *Id*. at 296. (O'Connor concurring).

Plaintiffs now expose their claims that Aboriginal title was never extinguished because the tribe never sold the underwater lands. This claim does not comport with their hollow protestations to seek a mere "use" right. Their claim that the Shinnecock never sold the underwater lands, and thus retain Aboriginal rights, can occur only where the Shinnecock tribe never relinquished Aboriginal title, and thus retain the exclusive right of use and occupancy to the lands. *See Seneca Nation of Indians v. New York*, 382 F.3d 245, 248 n. 4 (2d Cir. 2004); *Oneida Indian Nation v. New York*, 860 F.2d 1145, 1150 (2d Cir. 1988).

Plaintiffs' claims that the Shinnecock tribe has jurisdiction, ownership and control of the waters permeate their papers. "Q: In your experience in tribal government, did the tribe exercise the dominium [sic] and control over Shinnecock Bay? A: Yes." *See* Pl.'s Opp. at Ex. 7 ("Pl.'s Ex."), Transcript of Direct Examination of Bryan Polite by Scott Michael Moore p. 129, ll. 15-18. "Q: What is the position of the Shinnecock Indian Nation about ownership of Shinnecock Bay? A: The official position is the Shinnecock Nation has *never relinquished their rights to the bay*." *Id*. at p. 134, ll. 19-24 (emphasis added). "The Shinnecock have a significant, historic and contemporary exertion of *regulatory* and *jurisdictional* powers of the Shinnecock Indian Nation over the same *contested* waterways." "Federal acknowledgment of the Shinnecock Indian Nation's use and *regulatory authority* in the PF and over the *contested* waters include . . ." Pl.'s Opp. at p. 5 (emphasis added). "[W]hen the United States recognized the Shinnecock Indian Nation as an Indian Tribe, it also acknowledged its water resource jurisdiction and usage. Secondly, it proves that even when the Shinnecock Indian Nation has *absolute* and *uncontested control* of a resource, it shares it with non-Indian neighbors . . ." *Id*. at p. 7. "Alternatively, it must follow that Shinnecock inherently possesses water rights to have been considered for the program and the assertion is that the Shinnecock Indian *Nation must possess a high level of*

3

*water rights* to become the model tribe." *Id*. at 8 (emphasis in original). "[T]he testimony and two reports of Dr. Strong that the southern boundary of the Shinnecock Reservation has never been established . . ." *Id*. at 16. "The Defendants do not deny [the document] which cites significant examples of the historic and modern Shinnecock use, *dominion*, *jurisdiction*, *control* and the economic development of waterways through its water and fishing rights." *Id*. at pp. 17-18 (emphasis added). "Defendants have not produced any evidence that the submerged lands within these ceded areas were ever purchased, as was required by the Dongan Patent." *Id*. at 21. "This report also shows no evidence of even a single purchase made of underwater lands from the Shinnecock, as obviously required by the Dongan Patent. A mere interpretation *does not convey title or jurisdiction*." *Id*. at p. 23 (emphasis added).

    Plaintiffs further attach for the first time several emails, as well as an internal DEC Memorandum concerning the Unkechaug tribe, to support their claims that the Shinnecock tribe never sold the underwater lands. Plaintiffs have once again improperly submitted documents following their agreement with the Court that discovery was closed in the July 31, 2019 status conference. Plaintiffs have not shown these documents to be in the public record, nor of any other form of which the Court can take judicial notice. Regardless of Plaintiffs' numerous improper submissions of documents throughout the course of this litigation, they have submitted yet more non-material documents. The documents are allegedly from Dr. David Witt, of the NYS DEC. They contain language such as "my understanding is," "I personally feel," and "I get the gut feeling." Pls' Opp. at p. 21. These non-legal personal opinion documents neither provide evidence of Plaintiffs' claims, nor any controlling legal authority.

4

Plaintiffs do not seek an ill-defined "use" right. They explicitly claim that the Shinnecock Tribe never sold the underwater lands, that their Aboriginal title was thus never extinguished, and that the State does not possess jurisdiction over the "contested" waters.[1]

For the same reasons, Plaintiffs' claims that they seek a mere "use" right, in opposition to the *Sherrill* Doctrine, fall flat. Under the doctrine announced in *City of Sherill v. Oneida Indian Nation*, 544 U.S. 197 (2005), and applied in subsequent Second Circuit cases, Plaintiffs' claims are barred by the equitable principles of laches, acquiescence and impossibility. Plaintiffs have unveiled their overt argument that the Shinnecock tribe never sold the underwater lands, that the waters are "contested" and that the State thus does not have jurisdiction, control or regulatory authority over its own waters. Plaintiffs' claims to retain Aboriginal title, asserted hundreds of years after alleged dispossession, would be highly disruptive of the State's jurisdiction and regulatory power, implicating a complex system of conservation laws and regulations and law enforcement, to say nothing of private business, recreational use, and enforcement of other laws on the waters. They are the precise claims subject to the *Sherrill* Doctrine. Plaintiffs' claims are as inconsistent as they are self-defeating. *Compare,* Pls' Opp. at p. 23: "This report also shows no evidence of even a single purchase made of underwater lands from the Shinnecock, as obviously required by the Dongan Patent. A mere *interpretation* does not convey title or jurisdiction," *with* Pls' Opp. at p. 31: "This case involves assertion of a Shinnecock fishing <u>use</u> right; *Sherrill* involved land claims- <u>title</u> to land." (emphasis in original).

---

[1] Plaintiffs' opposition once again fails to address the application of principles of 11th Amendment and Sovereign Immunity to bar their claims for monetary damages under Sections 1981 and 1982 against DEC and the Defendants in their official capacities.

5

### **Plaintiffs Fail to Offer Any Material Opposition to the Colonial Patents**

Instead of offering a legal rebuttal of the Colonial Patents, Plaintiffs cite to irrelevant, non-legal, non-material documents. Plaintiffs attach snippets of a Bureau of Indian Affairs Report prepared in response to the Shinnecock Tribe's petition for Federal recognition. Its findings concern activities and governance on the Shinnecock Reservation itself and were prepared as evidence of the tribe's existence as an Indian Entity. *See* Pl.'s Ex. 18. These proposed findings do not concern Aboriginal rights and are not material to this lawsuit. Plaintiffs cite a Department of Interior press release for the argument that the State did not oppose the Federal acknowledgment of the Shinnecock Tribe as an Indian tribe. Pl.'s Ex. 27. This is not material to the legal existence of Aboriginal title. Plaintiffs also attach a 1977 United States Department of Commerce report on "Aquaculture, Fisheries, and Food Processing as a Combined Economic Development Option for Indian Communities." Pls' Ex. 19. This document is likewise irrelevant to the legal question of Aboriginal title and refers to water resources on the Shinnecock reservation.

Even within these irrelevant documents, Plaintiffs mischaracterize. Plaintiffs cite to a document awarding funding for a solar-energy shellfish hatchery. See Pl.'s Memo at p. 19, Ex. 38. Plaintiffs emphasize wording that states, "shall not be constrained by geographic limitations in its efforts to carry out work requirements for this project." *Id*. The full quote goes on to state, "Only travel outside the 48 contiguous states will require prior written authorization." Pl.'s Ex. 38. Presumably, Plaintiffs are not now claiming that their alleged Aboriginal rights extend to all 48 contiguous states.

Likewise, Plaintiffs misrepresent an alleged NOAA report (Pl.'s Ex. 32), yet another non-material document, which they attempt to use for the proposition that underwater rights on Long

6

Island are not established. The sections Plaintiffs rely on are not material, relating to the Great South Bay, and involving historical competing claims between the Town of Brookhaven and Colonel William Smith, by virtue of a competing Patent (Pl.'s Ex. 32, at pp. 16-18), as well as competing claims between the Towns of Brookhaven and Southampton for areas of the Peconic River and Flanders Bay. *Id*. at pp. 18-19. It is this dispute, between the Towns, that Plaintiffs mischaracterize to claim that the ownership of the waters is "unresolved." Pl.'s Memo. at p. 23. Instead of supporting their claims, Plaintiffs' argument reveals the extreme nature of their claims—that the Shinnecock tribe never sold the waters of the bays. Plaintiffs' own arguments again belie their vague claim of a "use" right.

Plaintiffs spend several pages engaging in a non-material discussion of the difference between fish and whales, to assert that the Shinnecock tribe owns the marine resources, based on a June 10, 1658 deed. Pls' Opp. at pp. 25-27. Plaintiffs seemingly fail to realize that a few pages earlier they circumscribed the effects of the June 10, 1658 Deed, stating that it too is "bounded by the waters and the sea and not inclusive of them. And again, this is relevant because Plaintiff Silva's fishing area is adjacent and north of the boundary, not inside." Pls' Opp. at pp. 20-21.

Plaintiffs fail to challenge the Colonial Patents, choosing instead to dig an aquatic moat around the very deeds they previously relied upon for their claims of Aboriginal rights, and to claim instead that the Shinnecock tribe never sold the waters, and thus retains Aboriginal title. The Colonial Patents explicitly extinguished any alleged Aboriginal title. Plaintiffs further continue to cite to case law involving treaty rights and interpretation, though they have provided no evidence of a treaty. Plaintiffs have failed to allege the existence of a treaty, or to explain how the body of federal treaty law applies to their non-treaty claims. The body of case law

7

involving treaty law and interpretation is irrelevant to their allegations; it should be disregarded by the Court.

### Plaintiffs Lack Standing to Seek Injunctive Relief

This Court has twice stated that Plaintiffs lack standing to seek injunctive relief. *See* Memorandum and Order dated July 31, 2018, D.E. 48; Report and Recommendation of Hon. Locke, dated Jan. 7, 2019, D.E. 63. Plaintiffs have failed to address Defendants' arguments regarding standing to seek prospective injunctive or declaratory relief—*see City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.")—or this Court's prior decision regarding standing. They have failed to show any concrete or particularized injury, only isolated dismissed prosecutions—now even more temporally remote since the last time the Court concluded they lacked standing. *See Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015). Therefore, Plaintiffs have no standing to seek injunctive or declaratory relief.

### Plaintiffs Have Not Demonstrated an Exception to *Younger* Abstention

Plaintiff Silva's claims for injunctive and declaratory relief are foreclosed by principles of *Younger* abstention, as previously held by this Court. Plaintiffs now put forth an argument of bad faith and harassment in an attempt to circumvent *Younger* abstention. The Complaint alleges no facts to support this argument.

Plaintiffs bear the burden of establishing an exception to *Younger* abstention. *See DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 354 (E.D.N.Y. 2016). This burden is heavy; in order for an exception to apply, the "party bringing the state action must have

8

no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994); *Jackson Hewitt Tax Serv. v. Kirkland*, 455 Fed. Appx. 16, 18 (2d Cir. 2012). "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution--even when the violations of constitutional rights are egregious--will not warrant the application of the bad faith exception." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002).

Plaintiffs have put forth no facts to support an exception to *Younger* abstention. Plaintiffs reiterate four prosecutions—three from a decade ago, including one against a non-Indian non-plaintiff—as proof of bad faith or harassment. These were all for generally-applicable regulations. Plaintiffs have failed to demonstrate that this was anything other than "a straightforward enforcement of the laws of New York." *Diamond "D"*, 282 F.3d at 199. They have not claimed that the eels were within the catch limits or of proper size. They have failed to demonstrate an impermissible subjective motivation—the most important factor in the bad faith inquiry. *Id.*

Plaintiffs allege that failure to consult with the Shinnecock Indian Nation indicates bad faith and harassment, referring to Executive Order No. 13175, and DEC Document CP-42. Pl.'s Opp. at pp. 10, 12. Plaintiffs put forth no evidence that any alleged failure to consult was motivated by bad faith. Plaintiffs engage in circular reasoning—simply asserting that they have unsupported aboriginal rights in a subsequent lawsuit does not equate with the bad faith of Defendants in enforcing neutral, generally-applicable fishing laws. *See 333 E. 60th St., Inc. v. New York State Liquor Auth.*, 2008 U.S. Dist. LEXIS 67441, *11, 2008 WL 4104012 (S.D.N.Y. Aug. 29, 2008) ("If the actions of [the] defendants were 'nothing more than a straightforward enforcement of the laws of New York, the case does not fall within the bad faith exception . . .

9

.'" (quoting *Diamond "D"*, 282 F.3d at 199)).  Plaintiffs put forth no evidence of a subjective bad faith motivation. They have put forth no evidence that the proceedings were animated by any "retaliatory, harassing, or other illegitimate motive." *Diamond "D",* 282 F.3d at 199.

The same is true for Plaintiffs' allegations of bad faith relating to the Gilmore Affidavit. Plaintiffs continue to misunderstand the meaning of specific conservation terms in both their allegations of bad faith and their opposition to the doctrine of conservation necessity.  They state that because the American Eel is not listed as endangered, protected, or of special concern, this shows that Defendants have acted with bad faith.  Pl.'s Opp. at p. 13.  The Affidavit of James Gilmore states that the American Eel is "depleted" and at "historically low levels"—the terms used by the Atlantic States Marine Fisheries Commission.  *See* Pl.'s Exs. 12, 14.  The description of the American Eel as a protected resource refers to the restrictions and limitations under law and regulations, *e.g.* the taking, or fishing, and possession of glass eels is prohibited by state law. *See* 6 N.Y.C.R.R. §§ 10.1(a) and (b), 40.1(f) and (i).  Despite Plaintiffs' failure to understand relevant terms, they once again put forth no evidence of bad faith.

Likewise, Plaintiffs' reference to internal DEC emails shows no evidence of a retaliatory purpose or intent to harass.  Plaintiffs have provided no evidence that Defendants did anything other than enforce generally-applicable fishing laws.  Plaintiff has failed to put forth any evidence that the "narrow" exception to Younger abstention applies; they have utterly failed to provide evidence that Defendants had "no reasonable expectation of obtaining a favorable outcome," in their enforcement of generally-applicable laws.  *Jackson Hewitt Tax Serv*., 455 Fed. Appx. at 18.

10

## Plaintiffs Cannot Show Discriminatory Intent

Plaintiffs have alleged no facts to support discriminatory intent as required under Sections 1981 and 1982. *See Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir. 1988)("Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory, and racially motivated.")(internal citations omitted). Plaintiffs have failed to put forth any evidence of purposeful discrimination or racial animus on the part of Defendants Farrish, Laczi or Seggos. Plaintiffs continue to misunderstand their burden and refer to non-material emails from non-defendants. They have entirely failed to offer evidence that Defendants Farrish, Laczi or Seggos were motivated by racial animus.

Plaintiffs have alleged no personal involvement of DEC Commissioner Seggos. Plaintiffs attempt to claim Defendant Seggos had personal involvement because he was notified *after* Plaintiff Silva was stopped with glass eels in his bucket. *See* Pl.'s Ex. 24, p. 45-46. This is non-material where Plaintiffs must prove intentional discrimination and racial animus in targeting Plaintiffs. Plaintiffs have alleged no facts regarding Defendant Seggos's personal involvement, as required under these intentional discrimination statutes. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d. Cir. 2004).

## The Individual-Capacity Defendants Enjoy Qualified Immunity

Plaintiffs have not addressed the relevant inquiry under qualified immunity. An official is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Crawford v. Cuomo*, 721 Fed. Appx. 57, 58 (2d Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Plaintiffs have advanced a convoluted theory of Aboriginal fishing rights based upon colonial deeds and orders, mostly

11

concerning dead whale carcasses washing up on shore. They cannot demonstrate that the contours of this alleged right were sufficiently clear that the Defendants would understand that they were violating such alleged right. *See Drimal v. Tai*, 786 F.3d 219, 225 (2d Cir. 2015). They have put forth no evidence that the Defendants did anything more than enforce generally-applicable laws.

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that this Court grant their Motion for Summary Judgment and dismiss the Complaint in its entirety, and grant such further relief as the Court sees fit.

Dated: Mineola, New York
November 18, 2019

    Letitia James
    Attorney General of the State of New York
    Attorney for State Defendants

By: /s/ Richard Yorke
    Richard Hunter Yorke
    Assistant Attorney General
    200 Old Country Road - Suite 240
    Mineola, New York 11501
    (516) 248-3302

To:    Scott Michael Moore, Esq.
       Moore International Law PLLC
       45 Rockefeller Plaza, 20th Floor
       New York, New York 10111
       smm@milopc.com

       Brian C. Mitchell, Esq.
       Suffolk County Attorney
       H. Lee Dennison Building
       100 Veterans Memorial Hwy.
       P.O. Box 6100
       Hauppauge, NY 11788
       brian.mitchell@suffolkcountyny.gov