UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

DAVID T. SILVA, GERROD T. SMITH, and
JONATHAN K. SMITH, Members of the
Shinnecock Indian Nation,

                              Plaintiffs,

     -against-

BRIAN FARRISH, JAMIE GREENWOOD,
EVAN LACZI, BASIL SEGGOS, NEW YORK
STATE        DEPARTMENT        OF
ENVIRONMENTAL   CONSERVATION,   and
SUFFOLK COUNTY DISTRICT ATTORNEY'S
OFFICE,

                             Defendants.
---------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18-cv-3648 (SJF)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated June 22, 2018, Plaintiffs David T. Silva ("Silva"),

Gerrod T. Smith ("Gerrod") and Jonathan K. Smith ("Jonathan") (Silva, Gerrod and

Jonathan collectively, "Plaintiffs"), Members of the Shinnecock Indian Nation (the

"Tribe"), commenced this action alleging violations of their aboriginal usufructuary

fishing rights under the Supremacy Clause of the United States Constitution, U.S.

Const. art. VI, cl. 2, and a continuing pattern of race discrimination in violation of

Sections 1981 and 1982 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§

1981, 1982, by Defendants Brian Farrish ("Farrish"), Jamie Greenwood

("Greenwood"), Evan Laczi ("Laczi"), Basil Seggos ("Seggos"), the New York State

Department of Environmental Conservation (the "NYDEC") and the Suffolk County

District Attorney's Office (the "SCDA") (Greenwood and the SCDA together, the

"County Defendants") (Farrish, Laczi, Seggos and the NYDEC collectively, the "State Defendants") (the County Defendants and the State Defendants together, "Defendants").  *See* Complaint ("Compl."), Docket Entry ("DE") [1].[1]  Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for Report and Recommendation, are:  (i) the County Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), DE [83]; (ii) the State Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, DE [84]; and (iii) Plaintiffs' motion for leave to file exhibits, DE [86].  For the reasons set forth herein, the Court respectfully recommends denying Plaintiffs' motion for leave to file exhibits and granting both motions for summary judgment in their entirety.

## I.   BACKGROUND

### A.   <u>Relevant Facts</u>

The following facts are taken from the pleadings, affidavits, exhibits and the parties' Local Civil Rule 56.1(a) statements.  Unless otherwise noted, these facts are not in dispute.  Plaintiffs are members of the Shinnecock Indian Nation, a federally-recognized Indian tribe,[2] who reside on the Shinnecock Indian Reservation (the "Reservation") located in Suffolk County, New York.  Compl. ¶¶ 2-4.  At all relevant

---

[1] Plaintiffs' claims are asserted against Farrish, Greenwood, Laczi and Seggos in both their individual and official capacities.  *See* Compl. ¶¶ 5-8.

[2] The Federally Recognized Indian Tribe List Act of 1994 (the "Act"), Pub. L. No. 103-454, 108 Stat. 4791, defines "Indian tribe" as "any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe."  25 U.S.C. § 5130(2).  Pursuant to the Act, the Secretary of the Interior "shall publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians."  *Id.* at § 5131(a).

times, Plaintiffs have fished in the waters of Shinnecock Bay and its estuary. *Id.* at ¶ 14. According to Plaintiffs, several "Colonial Deeds and related documents" support their aboriginal right to fish in such waters "without interference[.]" *Id.* at ¶ 15. Nevertheless, Plaintiffs have been ticketed and prosecuted for alleged violations of New York State (the "State") criminal laws pertaining to fishing and raising shellfish in Shinnecock Bay and its estuaries. *Id.* at ¶ 16.

Specifically, on or about October 2008, the State commenced a criminal action against Gerrod in the Southampton Town Justice Court (the "Justice Court") based upon his alleged possession of undersized flounder, blackfish and porgy in the Shinnecock Bay in violation of State fishing and environmental conservation laws. *Id.* at ¶ 18; *New York v. Smith*, No. 08-cv-4422, 2009 WL 2390809, at *1 (E.D.N.Y. July 31, 2009). This case was ultimately dismissed. Compl. ¶ 18. The State subsequently brought charges against Jonathan, also in the Justice Court, for possessing a shellfish farm in the Shinnecock Bay without a license. *Id.* at ¶ 19. That case was dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). *Id.*; *New York v. Smith*, No. 09-cv-571 (E.D.N.Y.), DEs [1], [5]. More recently, on April 20, 2017, while Silva was fishing for juvenile American eels, known as "elvers,"[3] in the Shinnecock Bay, Laczi and Farrish—both Conservation Officers with the NYDEC— issued Silva a criminal appearance ticket alleging unlawful possession of undersized eels in violation of the Official Compilation of Codes, Rules & Regulations of the State

---

[3] Juvenile American eels are known as "elvers" or "glass eels." *See* Affidavit of James Gilmore ("Gilmore Aff."), DE [84-7], ¶ 4.

of New York ("NYCRR"), title 6, Section 40-1(b)(ii).[4]  Compl. ¶¶ 5, 7, 20; *see also*
Suffolk County Defendants' Statement Pursuant to Local Rule 56.1 ("County Def.
56.1"), DE [83-3], ¶ 4; Plaintiffs' Local Rule 56(1)(b) Counter-Statement of Material
Facts as to County Defendants ("Pl. Opp. to County Def. 56.1"), DE [83-8], ¶ 4[5]; State
Defendants' Local Civil Rule 56.1 Statement ("State Def. 56.1"), DE [84-3], ¶¶ 12, 14;
Plaintiffs' Local Rule 56(1)(b) Counter-Statement of Material Facts as to State
Defendants ("Pl. Opp. to State Def. 56.1"), DE [84-10], ¶¶ 12, 14.  Silva's catch, net
and other fishing equipment were seized at that time.  Compl. ¶ 20.  The State,
through Suffolk County Assistant District Attorney Greenwood, then commenced a
criminal action against Silva in the Justice Court, charging him with fishing without
a license in violation of New York Environmental Conservation Law ("NYECL")
Section 13-0355, as well as unlawful possession of underage eels and eels over limit
in violation of NYCRR, title 6, Sections 40-1(b)(ii)-(iii).  *Id.* at ¶¶ 6, 20; County Def.
56.1, ¶¶ 4-5; Pl. Opp. to County Def. 56.1, ¶¶ 4-5.  On June 5, 2019, after a bench
trial, Silva was convicted by the Honorable Gary J. Weber for fishing without a license
and found not guilty of the remaining charges, namely possession of underage eels
and eels over limit.  County Def. 56.1, ¶ 6; Pl. Opp. to County Def. 56.1, ¶ 6; State
Def. 56.1, ¶ 25; Pl. Opp. to State Def. 56.1, ¶ 25.

---

[4] Plaintiffs do not allege that Seggos, Commissioner of the NYDEC, Compl. ¶ 8, was personally involved in the ticketing or prosecution of Silva.

[5] The Court notes that the May 20, 2017 date in the County Defendants' 56.1 Statement is a typographical error, as the parties do not dispute that the ticket was issued on April 20, 2017.

B.     **Procedural History**

On June 22, 2018, Plaintiffs filed their Complaint requesting preliminary and permanent injunctive relief, a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, as well as Fed. R. Civ. P. 65, and monetary damages against Defendants. *See generally* Compl.  In Count I of the Complaint, Plaintiffs assert that "Defendants' repeated interference, seizures and prosecution of the Plaintiffs by application of New York State fishing regulations violates Plaintiffs' fishing rights protected under the Supremacy Clause, was and is void, and was and is in excess of New York State jurisdiction." *Id.* at ¶ 23.  Plaintiffs further allege in Count II that Defendants' conduct amounts to "a continuing pattern and practice of purposeful acts of discrimination based on [Plaintiffs'] race as Native Americans in violation of [their] civil rights to equal security of the laws" and in violation of their federally-protected fishing and other related rights. *Id.* at ¶ 25.  Together with their Complaint, and based upon the conduct alleged therein, Plaintiffs filed a motion for a preliminary injunction. *See* DE [2].

On July 31, 2018, Judge Feuerstein denied Plaintiffs' motion for a preliminary injunction. *See* DE [48].  Shortly thereafter, the County Defendants and the State Defendants moved to dismiss the Complaint. *See* DEs [54], [56].  Judge Feuerstein referred both motions to this Court for Report and Recommendation, *see* Electronic Order dated August 24, 2018, and on January 7, 2019, this Court recommended dismissal of Plaintiffs' Complaint in its entirety and further recommended that Plaintiffs be granted leave to replead with respect to their statutory claims for

5

monetary damages against Farrish, Laczi and Seggos in their individual capacities. *See* DE [63].  Plaintiffs filed objections to the Report and Recommendation, which Defendants opposed.  *See* DEs [64]-[66].  On July 31, 2019, Judge Feuerstein terminated Defendants' motions to dismiss as well as this Court's Report and Recommendation and ordered a briefing schedule for Defendants' motions for summary judgment.  *See* DE [74].

Defendants filed their fully briefed motions for summary judgment on November 18, 2019, *see* DEs [83], [84], which Judge Feuerstein referred to this Court for a Report and Recommendation.  *See* Order Referring Motions dated November 19, 2019.  Subsequently, on February 4, 2020, Plaintiffs sought leave to file two proposed exhibits in opposition to the State Defendants' motion for summary judgment, *see* DE [86], which the State Defendants oppose.  *See* DE [87].  In light of the pending summary judgment motions, Judge Feuerstein referred Plaintiffs' motion to this Court for a Report and Recommendation.  *See* Order dated February 19, 2020.

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the

evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (internal quotation marks and citations omitted) (emphasis in original); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (citation omitted).  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citations omitted); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions

of the events are matters for the jury, not for the court on summary judgment.")
(internal quotation marks and citation omitted).

## III.   DISCUSSION

### A.   <u>Plaintiffs' Proposed Exhibits</u>

As a threshold matter, the Court must determine whether, in evaluating the
instant motions for summary judgment, it should consider Plaintiffs' proposed
exhibits that were filed nearly three months after Defendants filed their fully-briefed
motions for summary judgment.[6]  The proposed exhibits are:  (i) a January 22, 2020
press release by Defendant NYDEC, titled "DEC and Saint Regis Mohawk Tribe
Announce First Ever State-Tribal Partnership for Area of Concern on U.S. Side of
Great Lakes" (the "Press Release"); and (ii) a map attached to the Press Release,
which defines several areas in which the St. Regis Mohawk Tribe have water rights
(the "Map").  *See* DE [86].

The Press Release addresses efforts by the NYDEC and the St. Regis Mohawk
Tribe to remediate pollution in the St. Lawrence River.  *See* Plaintiffs' Exhibit ("Ex.")
43, [DE 86-1] at 2.[7]  According to Plaintiffs, the Press Release shows that the State
Defendants' claims that they are regulating the Tribe's fishing rights so as conserve
the elver eel is pretext.  DE [86] at 1.[8]  The Court disagrees.  The Press Release refers
only to the Saint Regis Mohawk Tribe and the St. Lawrence River, neither of which

---

[6] The Court notes that Plaintiffs have engaged in a pattern of filing supplemental documents
months after motions have been fully briefed.  *See* DEs [57], [59], [60].

[7] The Court refers to the page numbers generated by electronic filing in the top right-hand
corner of Plaintiffs' Exhibit 43.

[8] The Court refers to the page numbers generated by electronic filing in the top right-hand
corner of DE [86].

are at issue in this case.  Further, while the Press Release notes the State's recognition of the St. Regis Mohawk Tribe's "jurisdictions and shared interests[,]" Ex. 43 at 2, it makes no mention of the elver eel or even, more broadly, of fishing regulations.  Although Plaintiffs quote extensively from the Press Release, they fail to draw any connection between its contents and their opposition to the State Defendants' motion for summary judgment.  Similarly, Plaintiffs fail to explain how the Map, which encompasses an area of the State and a body of water that are not at issue in this case would inform the Court's decision on the pending motions for summary judgment.  Accordingly, the Court does not consider Plaintiffs' proposed exhibits and respectfully recommends that Plaintiffs' motion for leave to file these exhibits, DE [86], be denied.

### B.  The State Defendants' Motion for Summary Judgment

Initially, with respect to Plaintiffs' claims for declaratory and injunctive relief against the State Defendants and for monetary damages against the NYDEC and Farrish, Laczi and Seggos in their official capacities, the State Defendants move for summary judgment on the grounds that:  (i) all claims against the NYDEC, as well as those against Farrish, Laczi and Seggos in their official capacities, are barred by the Eleventh Amendment and principles of sovereign immunity; (ii) Silva's claims for injunctive and declaratory relief are precluded under the *Younger* abstention doctrine; and (iii) Gerrod and Jonathan lack standing to assert their claims for injunctive and declaratory relief.  *See* State Defendants' Memorandum of Law in

Support of Motion for Summary Judgment ("State Def. Memo"), DE [84-8], 3-9.[9]

Regarding Plaintiffs' claims for monetary damages under 42 U.S.C. §§ 1981 and 1982

against Farrish, Laczi and Seggos in their individual capacities, the State Defendants

move for summary judgment on the grounds that Plaintiffs have failed to provide

evidence of racial discrimination. *Id.* at 31-33.[10]

---

[9] To the extent that Plaintiffs' claims are not precluded on these grounds, the State Defendants further argue that: (i) Plaintiffs are barred from litigating whether the Tribe has fishing rights under the doctrine of collateral estoppel; (ii) Plaintiffs lack aboriginal title or treaty-based fishing rights; and (iii) even if Plaintiffs did possess fishing rights, the State's regulation of such would be proper under the doctrine of conservation necessity and moreover, Plaintiffs' claims would be barred under the *Sherrill* Doctrine. *Id.* at 10-31.

Initially, the Court rejects the State Defendants' argument that because the Justice Court convicted Silva of violating New York fishing laws, Plaintiffs are now barred from litigating the issue of the Tribe's fishing rights under the doctrine of collateral estoppel. *See id.* at 10-12. "Collateral estoppel attaches where (*i*) an identical issue was raised in a previous proceeding against the party; (*ii*) the issue was actually litigated and decided in the previous proceeding; (*iii*) the party had a full and fair opportunity to litigate the issue; and (*iv*) resolution of the issue was necessary to support a valid and final judgment on the merits." *Ferring B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265, 282 (S.D.N.Y. 2019) (citation omitted). Although arguments regarding the Tribe's fishing rights were raised before the Justice Court by Silva and Assistant District Attorney Greenwood, the Justice Court did not assess the merits of such arguments. *See* DE [84-6], Ex. D (Memorandum Decision by Judge Gary J. Weber, dated June 5, 2019). Thus, contrary to the State Defendants' argument, in finding Silva guilty of violating New York fishing laws, the Justice Court did not "necessarily reject[] Silva's argument that as a Shinnecock he had unrelinquished [sic] aboriginal fishing rights[.]" State Def. Memo, 12. Accordingly, collateral estoppel does not bar Plaintiffs from litigating the Tribe's fishing rights before this Court.

Nevertheless, the Court does not reach the merits of the State Defendants' arguments regarding the Tribe's fishing rights. As discussed further below, the Court finds Plaintiffs' claims to be barred on jurisdictional grounds and, as such, may not consider the underlying merits of this case. *See Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) ("Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter.") (citation omitted); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("The absence of subject matter jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction . . . . This principle is reinforced when it comes to sovereign immunity[.]") (internal quotation marks and citations omitted).

[10] The State Defendants further argue that Farrish, Laczi and Seggos are entitled to qualified immunity with respect to the claims against them in their individual capacities. State Def. Memo, 34-35. However, as discussed further below, the Court finds that Plaintiffs fail to raise a genuine dispute as to racial discrimination by Farrish, Laczi and Seggos and therefore need not address whether Farrish, Laczi and Seggos are entitled to qualified immunity. *See Kerman v. City of New York*, 261 F.3d 229, 235 (2d Cir. 2001) ("When determining whether qualified immunity protects an official, we must first determine whether the plaintiff has presented facts which, if proven, demonstrate that the defendant violated a constitutional right.") (internal quotation marks and citation omitted).

i.   *Plaintiffs' Claims Against the NYDEC and Farrish, Laczi and Seggos in their Official Capacities*

a.  Eleventh Amendment Sovereign Immunity

The Eleventh Amendment precludes private citizens from maintaining an action in federal court against a State, unless the State has waived its sovereign immunity or consented to suit. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 962 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.") (citation omitted).[11]  This immunity extends not only to the state itself, but also to entities considered "arms of the state." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 (2d Cir. 2004) (internal quotation marks and citation omitted); *see DeFranco v. Dep't of Envtl. Conservation of the State of N.Y.*, No. 16-cv-2014, 2017 WL 1497977, at *5 (E.D.N.Y. Apr. 26, 2017) (noting that the NYDEC is a "state entity" entitled to Eleventh Amendment sovereign immunity) (citations omitted); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390-91 (E.D.N.Y. 2013) (dismissing claims against the NYDEC on Eleventh Amendment immunity grounds).  Similarly, "the Eleventh Amendment bars suits for monetary damages against a state official acting in his or her official capacity." *LoSardo v. Ribaudo*, No. 14-cv-6710, 2015 WL 502077, at *2 (E.D.N.Y. Feb. 5, 2015) (citation omitted).  Thus, defendants are entitled to summary judgment where they have sovereign immunity pursuant to the Eleventh Amendment. *Ford v. Reynolds*, 316 F.3d 351, 354-56 (2d Cir. 2003) (affirming district

---

[11] It is well established that federally-recognized Indian tribes and their members are subject to the Eleventh Amendment.  *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268, 117 S.Ct. 2028, 2033 (1997).

court's finding that defendants were entitled to summary judgment on the basis of Eleventh Amendment sovereign immunity); *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006) ("[T]he Supreme Court has, on more than one occasion, described the Eleventh Amendment as a jurisdictional bar[.]") (internal quotation marks and citation omitted).

Notwithstanding the Eleventh Amendment, under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908), there exists "a limited exception to the general principle of sovereign immunity that allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law[.]" *Ford*, 316 F.3d at 354-55 (internal quotation marks, citation and alteration omitted). Pursuant to *Ex parte Young*, "a plaintiff may sue a state official acting in his official capacity . . . for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks and citation omitted).[12]

To determine whether the doctrine of *Ex parte Young* applies to a suit that would otherwise be barred by the Eleventh Amendment, a court "'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ford*, 316 F.3d at 355 (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S.

---

[12] Courts have recognized two additional exceptions to Eleventh Amendment immunity, neither of which applies here. First, "a State may waive its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 2223 (1999) (citation omitted). Second, "Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority." *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80, 120 S.Ct. 631, 644 (2000)).

635, 645, 122 S.Ct. 1753, 1760 (2002)).  The inquiry concerning whether the relief sought is "properly characterized as prospective" should focus not merely on how the requested relief is captioned in the pleading, but also on its substance.  *See Verizon Maryland, Inc.*, 645-46, 122 S.Ct. at 1760.  This inquiry, "does not include an analysis of the merits of the claim."  *Id.* at 646, 122 S.Ct. at 1761; *see also Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 67 (E.D.N.Y. 2018).

Here, Plaintiffs do not dispute that the Eleventh Amendment precludes jurisdiction over their claims for monetary damages under 42 U.S.C. §§ 1981 and 1982 against the NYDEC and against Farrish, Laczi and Seggos in their official capacities.[13]  Plaintiffs maintain, however, that the *Ex parte Young* exception to sovereign immunity applies to their claims for injunctive and declaratory relief against Farrish, Laczi and Seggos in their official capacities.  Plaintiffs' Memorandum of Law in Opposition to State Defendants' Motion for Summary Judgment ("Pl. Opp. to State Def. Mtn."), DE [84-13], 2-8.  Specifically, Plaintiffs assert that they have provided evidence showing a continuing violation of the Supremacy Clause and that they are seeking only prospective relief to protect their fishing rights.  *Id.* at 3-7.  The Court disagrees.

---

[13] "Congress has not abrogated sovereign immunity from claims brought under 42 U.S.C. § 1981 [or §] 1983 . . . , nor has New York waived immunity with respect to such claims." *Allah v. City of New York*, No. 15-cv-6852, 2016 WL 676394, at *3 (E.D.N.Y. Feb. 17, 2016) (citations omitted). Similarly, although the Court has found no cases in the Second Circuit addressing this issue with respect to § 1982 claims, the weight of authority in other circuits suggests that Congress did not intend to abrogate state sovereign immunity from such claims, *see Tariq-Shuaib v. City of Camden*, No. 09-4760, 2011 WL 383857, at *3 (D.N.J. Feb. 3, 2011) (collecting cases), and further, there is no indication that the State has waived its immunity by way of "clear declaration." *See McGinty v. New York*, 251 F.3d 84, 93 (2d Cir. 2001).

Initially, the Court acknowledges that Plaintiffs' claims for declaratory and injunctive relief, as pled in the Complaint, facially satisfy both components of the "straightforward inquiry" under *Verizon* for determining whether *Ex parte Young* should apply. Count I, entitled "Continuing Supremacy Clause Violations of Un-relinquished Aboriginal Usufructuary Fishing Rights Retained in Ceded Territory[,]" alleges that "Defendants' repeated interference, seizures, and prosecution of the Plaintiffs by application of New York State fishing regulations violates Plaintiffs' fishing rights protected under the Supremacy Clause . . . ." Compl. ¶ 23. Further, the Complaint asserts that Plaintiffs "are deterred and chilled from exercising their rights to fish" in the waters adjacent to their communities. *Id.* at ¶ 14. Accepting as true Plaintiffs' claims that Defendants have previously interfered with Plaintiffs' rights under the Supremacy Clause and that they continue to do so, even if only by way of threats, the Court deems the continuing violation requirement satisfied. *See KM Enters., Inc. v. McDonald*, No. 11-cv-5098, 2012 WL 4472010, at *10 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) ("[W]here there is a threat of [a] future [violation] that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.") (internal quotation marks and citation omitted). The Complaint likewise seeks injunctive relief that appears to be prospective in nature. *See* Compl., WHEREFORE ¶ 1 ("Plaintiffs request the Court to issue . . . preliminary and permanent injunctive relief . . . enjoining the Defendants from enforcing the laws of the State of New York against . . . Silva in [the] . . . Justice

Court in Case No. 17-7008, and from otherwise interfering with Plaintiffs' [fishing rights].").

Nevertheless, this Court must assess whether the relief sought is *properly* characterized as prospective with reference to the underlying substance of the claims at issue. *See Verizon Maryland*, 535 U.S. at 645, 122 S.Ct. at 1760. An analysis of relevant case law and the arguments that Plaintiffs raise in their opposition to the State Defendants' motion for summary judgment leads the Court to conclude that it is not.

In *Idaho v. Coeur d'Alene Tribe of Idaho*, the Supreme Court held that the Eleventh Amendment barred suit by an Indian tribe seeking prospective injunctive relief against state officials, where the suit sought a declaration of the tribe's entitlement to the exclusive use, occupancy and right to quiet enjoyment of certain lands claimed by the state of Idaho. *See* 521 U.S. at 265, 287-88, 117 S.Ct. at 2032, 2043. There, the Court considered the declaratory and injunctive relief that the tribe sought to be "close to the functional equivalent of quiet title" because it would shift "substantially all benefits of ownership and control" from the state of Idaho to the tribe. *Id.* at 282, 117 S.Ct. at 2040. The Court noted that the tribe sought a "determination that the lands in question are not even within the regulatory jurisdiction of the [s]tate," which "would bar the [s]tate's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Id.* Accordingly, the Court concluded that "under these particular and special circumstances," *Ex parte Young* did not apply, explaining that "if the [t]ribe

were to prevail, [the state's] sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury."  *Id.* at 287-88, 117 S.Ct. at 2043.  In reaching this outcome, the Court emphasized that "lands underlying navigable waters have historically been considered sovereign lands," and that "[s]tate ownership of them has been considered an essential attribute of sovereignty."  *Id.* at 283, 117 S.Ct. at 2041 (internal quotation marks and citation omitted).

In *Western Mohegan Tribe & Nation v. Orange County*, the Second Circuit relied on *Coeur D'Alene* in determining that the Eleventh Amendment barred a suit brought by the Western Mohegan Tribe against the New York State Governor.  *See* 395 F.3d 18, 23 (2d Cir. 2004).  There, the tribe asserted that its claims were more limited in nature than those in *Coeur d'Alene*—namely, the tribe sought "only Indian title, which it describe[d] as the right to camp, to hunt, to fish, [and] to use the waters and timbers' in the contested lands and waterways."  *Id.* at 22 (internal quotation marks omitted).  The Court, nevertheless, found that "the action [was] squarely governed by *Coeur d'Alene.*"  *Id.* at 23.  The court found that, like the tribe in *Coeur D'Alene*, the Western Mohegan Tribe was seeking a "determination that the lands in question are not even within the regulatory jurisdiction of the [s]tate[.]"  *Id.* (internal quotation marks and citation omitted).  Specifically, the court noted that the tribe's allegations that it held aboriginal title over the contested areas rendered the tribe's claim "fundamentally inconsistent with the State of New York's exercise of fee title over the contested areas."  *Id.*

16

*Coeur d'Alene*, *Western Mohegan* and the instant case are distinguishable from one another, and this case lacks some of the factual parallels to *Coeur d'Alene* that *Western Mohegan* possesses.  Most significantly, unlike the tribes in both *Coeur d'Alene* and *Western Mohegan*, Plaintiffs seek a declaration of an even more limited right "to use . . . the waters, fish[], tak[e] fish, and hold[] fish and shellfish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters[.]"  Compl., WHEREFORE ¶ 1.  Further, Plaintiffs assert that the Tribe does not intend to exclude its non-Indian neighbors.  Pl. Opp. to State Def. Mtn., 7.  The Court, however, finds these distinctions inconsequential.

The attributes common to all three cases dictate that each should receive the same treatment for Eleventh Amendment purposes.  To begin with, this case, like *Coeur d'Alene* and *Western Mohegan*, involves "core issues of land, state regulatory authority, and sovereignty[.]"  *W. Mohegan*, 395 F.3d at 23.  At issue here, as in *Coeur d'Alene*, are "lands underlying navigable waters[,]" which "have historically been considered sovereign lands" that "uniquely implicate sovereign interests."  *Coeur d'Alene*, 283-84, 117 S.Ct. at 2041 (internal quotation marks and citation omitted).[14]  Perhaps most importantly, just as the tribes did in *Coeur d'Alene* and *Western*

---

[14] As the Supreme Court observed in *Coeur d'Alene*:

The importance of [submerged] lands to state sovereignty explains our longstanding commitment to the principle that the United States is presumed to have held navigable waters in acquired territory for the ultimate benefit of future [s]tates and that disposals by the United States during the territorial period are not lightly to be inferred, and should not be regarded as intended unless the intention was definitely declared or otherwise made very plain.

521 U.S. 261, 283-84, 117 S.Ct. at 2041 (internal quotation marks and citations omitted).

*Mohegan*, Plaintiffs here are essentially seeking a declaration "that the [areas] in question are not even within the regulatory jurisdiction of the State[.]" *See Coeur d'Alene*, 521 U.S. at 282, 117 S.Ct. at 2040. Plaintiffs argue that the Tribe has a "significant, historic and contemporary exertion of regulatory and jurisdictional powers . . . over . . . contested waterways[]" and that "[w]hen the United States recognized the [Tribe] as an Indian Tribe, it also acknowledged its water resource jurisdiction and usage." Pl. Opp. to State Def. Mtn., 5, 7. Indeed, Plaintiffs assert that the Tribe has aboriginal title in the Shinnecock Bay, which has not been extinguished.[15] *See, e.g.*, *id.* at 19 (noting that evidence "discredits the [State Defendants'] notion that Shinnecock aboriginal water rights are somehow extinguished[]"); *id.* at 21 ("Defendants have not produced any evidence that the submerged lands within these ceded areas were ever purchased . . ."); *see also* DE [84-12], Ex. 7 at 134 (testimony of Bryan Polite, Tribe member, offered in *People of the State of New York v. Silva*, February 21, 2019 trial before Judge Weber: "The official position [of the Tribe] is [that] the Shinnecock Nation has never relinquished their rights to the [Shinnecock] [B]ay."). It was this same argument—that there had never

---

[15] Indians have aboriginal title—meaning "the exclusive right to use and occupy lands they have inhabited from time immemorial"—until such title is "extinguished by the sovereign discoverer . . . through a taking by war or physical dispossession, or by contract or treaty[.]" *Seneca Nation of Indians v. New York*, 382 F.3d 245, 248, n.4 (2d Cir. 2004) (quoting *County of Oneida v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 233-34, 105 S.Ct. 1245 (1985)). Aboriginal title is extinguished only where the intent to extinguish is "plain and unambiguous, either expressed on the face of the [instrument] or . . . clear from the surrounding circumstances." *Seneca*, 382 F.3d at 260 (quoting *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 276, 105 S.Ct. 2587, (1985)); *Oneida I*, 470 U.S. at 247-48, 105 S.Ct. at 1258 ("[C]ongressional intent to extinguish Indian Title must be plain and unambiguous . . . and will not be lightly implied[.]") (internal quotation marks and citation omitted). "[W]hen an Indian tribe conveys ownership of its tribal lands to non-Indians, it loses any former right of absolute and exclusive use and occupation of the conveyed lands." *South Dakota v. Bourland*, 508 U.S. 679, 689, 113 S.Ct. 2309 (1993); *New York v. Smith*, 952 F. Supp. 2d 426, 431 (E.D.N.Y. 2013).

been a lawful extinguishment of the tribe's title—with which the *Western Mohegan* Court took issue, explaining that if the tribe was operating under the belief that it had aboriginal title, it was really seeking a declaration that New York's exercise of fee title remain "subject to" the tribe's rights. *See W. Mohegan*, 395 F. 3d at 23. The Court similarly finds that, despite Plaintiffs' insistence that they are seeking only "protection of a use right of the waters[,]" Pl. Opp. to State Def. Mtn., 8, they are, in reality, seeking the equivalent of ownership rights. Accordingly, the *Ex parte Young* exception to Eleventh Amendment sovereign immunity does not apply to Plaintiffs' claims against the NYDEC or Farrish, Laczi and Seggos in their official capacities, and the Court respectfully recommends granting the State Defendants' motion for summary judgment as to all of Plaintiffs' claims against the NYDEC and Plaintiffs' claims for monetary damages against Farrish, Laczi and Seggos in their official capacities.[16]

b.  *Younger* Abstention Bars Silva's Claim for Injunctive Relief

The Court recommends granting the State Defendants' motion for summary judgment with respect to Silva's claim for injunctive or declaratory relief for the additional reason that it is barred under the principles first set forth by the Supreme

---

[16] The cases relied upon by Plaintiffs in support of their preemption argument are inapposite. *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 88 S.Ct. 1705 (1968), and *United States v. State of Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975), were decided well before *Coeur d'Alene*, did not address the issue of sovereign immunity, and, unlike this case, involved fishing rights expressly granted to or preserved by the tribes through treaty. Further, the court in *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1205-06 (10th Cir. 2002) held only that the *Ex parte Young* exception applied to the tribe's claim seeking to enjoin the state from prosecuting tribe members for actions taken within reservation boundaries. Here, however, there are no allegations that the conduct giving rise to Plaintiffs' claims occurred on the Reservation. Finally, *Herrera v. Wyoming*, 139 S.Ct. 1686 (2019) does not address sovereign immunity under the Eleventh Amendment.

Court in *Younger v. Harris*.  *See* 401 U.S. 37, 91 S.Ct. 746 (1971).  Pursuant to the *Younger* abstention doctrine, federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44, 91 S.Ct. at 755).  *Younger* abstention is required when:  "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims."  *Id.* (citation omitted).  A state action is "ongoing" "through the completion of the state appeals process, even if the federal plaintiff has failed to exercise his state appellate rights."  *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 559 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).

Notwithstanding *Younger*, a federal court may intervene in a state court proceeding "upon a showing of 'bad faith, harassment, or any other unusual circumstance that would call for equitable relief.'"  *Diamond "D"*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54, 91 S.Ct. at 755).  To establish the "bad faith exception to *Younger*," a plaintiff must show "that the party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome, . . . but rather brought the proceeding with a retaliatory, harassing, or other illegitimate motive."  *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16, 18 (2d Cir. 2012) (Summary Order) (internal quotation marks and citations omitted) (alteration in original).  In evaluating an assertion of bad faith, "the subjective motivation of the

state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond "D"*, 282 F.3d at 199 (citations omitted).  Therefore, the bad faith exception will not be warranted where a state proceeding is "unconstitutional in its execution—even when the violations of constitutional rights are egregious—[,]" so long as the proceeding is "legitimate in its purposes[.]"  *Id.* (citation omitted).

Here, the three requirements for *Younger* abstention are satisfied.  Silva's criminal proceeding in the Justice Court is ongoing, as appellate remedies of his June 5, 2019 conviction have not been exhausted.  *See* Pl. Opp. to State Def. Mtn., 15 (noting that Plaintiffs are "now seeking" to appeal the Justice Court's conviction); *see also* State Def. 56.1, ¶ 37; Pl. Opp. to State Def. 56.1, ¶ 37.  Further, Plaintiffs do not contest Judge Feuerstein's July 2018 holding that:  (i) the Justice Court proceeding "implicat[ed] an important state interest"; and (ii) there was no indication that Silva had been, or would be, deprived of "an adequate opportunity for judicial review of his constitutional claim."  *See* DE [48] at 9.  Rather, Plaintiffs assert that the Court is not required to abstain because the bad faith exception to *Younger* applies.  *See* Pl. Opp. to State Def. Mtn., 8-14.

According to Plaintiffs, the State Defendants acted in bad faith by:  (i) prosecuting them for exercising their aboriginal fishing rights; (ii) failing to consult with the Tribe on matters involving Plaintiffs' fishing rights in contravention of both a Presidential Executive Order and a NYDEC policy; and (iii) misrepresenting the State's need to conserve the elver eels.  *Id.* at 9-13.

With respect to their first argument, Plaintiffs identify the State Defendants' "failed prosecutions, seiz[ure] [of] property, and a continuing pattern of interference with [Plaintiffs'] aboriginal and retained Shinnecock fishing rights[.]"   *Id.* at 9. Plaintiffs submit two internal NYDEC e-mails, which they claim show "blatant discriminatory language . . . indicating the racial profiling of Shinnecock people[.]" *Id.* at 11.  Viewing these e-mails in the light most favorable to Plaintiffs, the Court nonetheless finds that they do not create a genuine issue for trial with respect to the State Defendants' motivations for prosecuting Plaintiffs.

The first e-mail, dated March 28, 2017, is from Captain Dallas Bengel ("Bengel"), to numerous NYDEC employees, including Farrish and Laczi.  *See* DE [84-12], Ex. 20.  Seggos, however, is not a recipient of this e-mail.  The e-mail provides, in relevant part:

> Word is out that the Shinnecocks are actively seeking a shipper for glass eels.[17] Apparently[,] they have been in contact with the Unkachaugs [sic] and the Passamaquoddys (Maine).  Although my guess is that much of any shipment would be elvers from other states, I'm sure that there will be local harvests going on also.  I'm not sure of their ability to harvest any real quantities of elvers on their reservation lands so we will have to work the off-reservation areas diligently to prevent illegal harvest.

Plaintiffs claim that this e-mail is "documented evidence of racial profiling," arguing: "[T]he adage 'Where there is smoke, there is fire' applies here.  Hypothetically, consider if another race such as 'Black' is substituted for the word 'Shinnecock' above. Would there be any question of racial profiling?"  Pl. Opp. to State Def. Mtn., 11. Bengel's reference to the "Shinnecocks" is used to identify a group who is engaging in

---

[17] "Glass eels" is another term for the elver eels at issue in this case.  *See* Gilmore Aff. ¶ 4.

potentially illegal conduct—namely "actively seeking a shipper for glass eels."  There

is no indication that Bengel—who is not a named Defendant in this case—sought to

harass the Tribe on the basis of their race.  On the contrary, Bengel's instructions are

to "diligently [] prevent illegal harvest[,]" without qualification that such prevention

efforts should be directed only at the Tribe.  Enforcement of generally-applicable

State laws "does not fall within the bad faith exception[.]"  *See 333 E. 60th St., Inc. v.*

*N.Y. State Liquor Auth.*, No. 08-cv-4147, 2008 WL 4104012, at *4 (S.D.N.Y. Aug. 29,

2008) (internal quotation marks and citation omitted).

The second e-mail on which Plaintiffs rely is dated April 25, 2017 and was sent

by NYDEC employee[18] Monica Kreshik ("Kreshik") in response to an e-mail from

Bengel sent on the same date.  *See* DE [84-12], Ex. 21.  In this e-mail, Kreshik notes:

"The Shinnecock assert that they have a treaty right to exercise their aboriginal

fishing practices.  This may be true."  *Id.*  According to Plaintiffs, this e-mail "is

obviously part of the same racial profiling e-mail [set forth above], but [it] shows a

factual, plain and pointed internal [NYDEC] recognition of precisely the fishing

rights Plaintiffs are asserting in this case."  Pl. Opp. to State Def. Mtn., 11.  Yet,

Plaintiffs ignore the very next sentence of this e-mail:  "State law or regulation may

impair an off-reservation treaty fishing right when (1) It represents a reasonable and

necessary conservation measure and (2) does not discriminate against the Native

American treaty right[-]holders."  *See* DE [84-12], Ex. 21.  Kreshik's acknowledgment

that the Tribe *may* have fishing rights, followed by an explanation that such rights

---

[18] Neither Plaintiffs nor State Defendants identify Kreshik's role within the NYDEC.

could be regulated, so long as such regulation "does not discriminate against" the Tribe only bolsters the State Defendants' position that they did not enforce State fishing laws against Plaintiffs to harass or retaliate against them on the basis of their race.

Next, Plaintiffs argue that the State Defendants acted in bad faith by failing to consult with the Tribe on matters involving Plaintiffs' fishing rights in accordance with Presidential Executive Order No. 13175, titled "Consultation and Coordination With Indian Tribal Governments," which provides, in relevant part, that agencies "shall have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications." Executive Order No. 13175, 65 Fed. Reg. 67249, 2000 WL 34508356 (November 6, 2000). In the alternative, they contend that "[e]ven if the . . . Executive Order No. 13175 does not apply," the State Defendants failed to follow their own "similar mandated consultation requirement[]" set forth in a NYDEC document titled "Commissioner's Policy 42/Contact, Cooperation, and Consultation with Indian Nations," which provides, among other things, that the NYDEC "will consult with appropriate representatives of Indian Nations on a government-to-government basis on environmental and cultural resource issues of mutual concern[]" and "will seek to develop cooperative agreements with Indian Nations on such issues[]" where doing so is "appropriate and productive[.]" Pl. Opp. to State Def. Mtn., 11-12; *see also* DE [84-12], Ex. 22. According to Plaintiffs, when the State Defendants learned that the Tribe was fishing for elver eels, they should have "*immediately*" consulted with the

Tribe.  Pl. Opp. to State Def. Mtn., 13 (emphasis in original).  Plaintiffs fail to offer any evidence, however, that the State Defendants' failure to consult the Tribe was motivated by bad faith.  Nor do Plaintiffs offer any support for the proposition that a state government official's contravention of a federal Executive Order or state government policy amounts to bad faith for *Younger* purposes.

Finally, Plaintiffs argue that to justify their prosecution of Silva, the State Defendants relied on false information regarding the need to conserve elver eels because of their depletion from overfishing.  *Id.*  This purportedly false information was provided in an affidavit prepared by James Gilmore, the NYDEC Director of the Division of Marine Resources, which the State Defendants submitted in opposition to Plaintiffs' motion for preliminary injunction in the instant litigation (the "Gilmore Affidavit").  *See* Gilmore Aff., ¶ 1.  Even assuming, *arguendo*, that the Gilmore Affidavit contains false statements regarding the depletion of elver eels and the State's need to conserve them, Plaintiffs fail to offer any evidence that the Gilmore Affidavit itself or the statements contained therein were used in Silva's prosecution. Absent evidence that the State Defendants' reliance on the Gilmore Affidavit is related to Silva's prosecution, the Gilmore Affidavit does not create a genuine issue as to whether the State Defendants prosecuted Silva with "no reasonable expectation of obtaining a favorable outcome, . . . but rather . . . with a retaliatory, harassing, or other illegitimate motive."  *Cf. Jackson Hewitt Tax Serv. Inc.*, 455 F. App'x at 18. Moreover, Plaintiffs fail to offer any evidence that the State Defendants had any knowledge regarding the veracity of the statements contained in the Gilmore

Affidavit. Thus, Plaintiffs fail to raise an issue of fact as to the "determinative" inquiry of the State Defendants' subjective motivations. *Cf. Diamond "D"*, 282 F.3d at 199.

Neither the internal NYDEC e-mails, nor the Executive Order and NYDEC polices nor the Gilmore Affidavit raise a triable issue of fact with respect to the bad faith exception to the *Younger* doctrine. Accordingly, the Court recommends granting the State Defendants' motion for summary judgment with respect to Plaintiffs' claims seeking to enjoin Silva's criminal prosecution in the Justice Court on the basis that this Court lacks subject matter jurisdiction under *Younger*.

### c.  Gerrod and Jonathan Lack Standing

As with Silva, there is an additional basis for granting the State Defendants' motion with respect to Gerrod's and Jonathan's claims for declaratory and injunctive relief—lack of standing.  To establish standing, a plaintiff must satisfy three requirements: "(1) injury-in-fact—an injury that is 'concrete and particularized' and is 'actual or imminent, not conjectural or hypothetical'; (2) an injury that is fairly traceable to the challenged action; and (3) an injury that will likely be redressed by a favorable ruling of the court." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 405 (E.D.N.Y. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992)). The "injury-in-fact" requirement is a "low threshold[.]" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks and citation omitted). Nonetheless, a plaintiff must establish that the injury is "real and immediate[.]" *An v. City of New York*, No. 16-cv-5381, 2017 WL 2376576, at *5

(S.D.N.Y. June 1, 2017) (internal quotation marks and citation omitted).  "'[P]ast exposure to illegal conduct'" does not in itself satisfy  the injury-in-fact requirement absent a showing that there exists a "'sufficient likelihood that [the plaintiff] will again be wronged in a similar way.'"  *Id.*  (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983) and *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012)) (first alteration in original).  Redressability is the "non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citation omitted).

Judge Feuerstein previously determined, in her Memorandum and Order dated July 31, 2018, that Gerrod and Jonathan lacked standing because, according to the allegations in the Complaint, their prior prosecutions for violating State fishing laws were dismissed years ago and they are not currently facing criminal charges. *See* DE [48] at 10-11.  In reaching that conclusion, Judge Feuerstein noted that their request for injunctive relief was "entirely speculative and remote, [and thus] insufficient to carry their burden of establishing that they have 'sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Id.* at 11 (quoting *Lyons*, 461 U.S. at 101-02, 103 S.Ct. at 1665).

Plaintiffs have offered no new evidence which would lead the Court to reach a conclusion different from that reached by Judge Feuerstein.  Instead, Plaintiffs cite to a 2019 case in which the Court found that the Unkechaug Tribe had standing to challenge the NYDEC's regulation of their fishing rights.  Pl. Opp. to State Def. Mtn.,

15 (citing *Unkechaug Indian Nation v. New York State Dep't of Envtl. Conservation*, No. 18-cv-1132, 2019 WL 1872952, at *1 (E.D.N.Y. Apr. 23, 2019)).  There, the court found that because the Unkechaug Tribe had "articulated a concrete plan," rather than "mere some[-]day intentions" to fish in violation of the State's regulations, they had sufficiently shown that they could "reasonably expect to encounter a genuine threat of criminal prosecution in the future to confer standing."  2019 WL 1872952 at *6 (internal quotation marks and citation omitted).  This case is inapposite, however. Plaintiffs' Complaint does not similarly articulate a concrete plan to violate the State's fishing regulations.   Rather, Plaintiffs allege that they "are in fear of exercising those same usual and customary aboriginal fishing rights secured and retained for them by their ancestors when Shinnecock territory was ceded to the English."  Compl. ¶ 16.  Moreover, in their prayer for relief, Plaintiffs seek "punitive damages to deter and punish the Defendants for blocking Plaintiffs' participation in the elver eel market during the 2017 and 2018 seasons, plus any future seasons during the pendency of this action[,]" thereby indicting that they do not intend to continue violating the State's regulations and thus will not face future prosecutions. *Id.* at WHEREFORE ¶ 2.  Plaintiffs do not offer any other evidence that they have continued fishing for elver eels or intend to do so, such that the holding in *Unkechaug Indian Nation* would inform this Court's decision.   Accordingly, as Gerrod and Jonathan have failed to establish a concrete and particularized injury that can be redressed by a decision in their favor, the Court respectfully recommends that the State Defendants' motion for summary judgment with respect to their claims be

granted for lack of standing, in addition to the bar under the Eleventh Amendment
discussed above.[19]

ii.  *Plaintiffs' Claim Under 42 U.S.C. §§ 1981 and 1982 Against Farrish, Laczi and Seggos in their Individual Capacities*

The Court now turns to Plaintiffs' claims under 42 U.S.C. §§ 1981 and 1982
against Farrish, Laczi and Seggos in their individual capacities.[20]  Section 1981
provides that "all persons have equal right to make and enforce contracts," and § 1982
"establishes that all persons have equal right to purchase, lease, sell, hold, and convey
real and personal property." *Costello v. Town of Huntington*, No. 14-cv-2061, 2015
WL 1396448, at *12 (E.D.N.Y. Mar. 25, 2015) (citing 42 U.S.C. §§ 1981, 1982).  The
two statutes are generally construed together. *Id.* (citation omitted).  To state a *prima
facie* claim under either provision, plaintiffs must allege:  "(1) they are members of a

---

[19] For the same reasons that Gerrod and Jonathan lack standing, Silva's attempt to enjoin Defendants from interfering with his future use of the waters in question must fail.  Accordingly, to the extent that this component of Silva's claim for injunctive relief is not barred under *Younger*, the Court also recommends that it be deemed precluded based on his lack of standing.

[20] The Court acknowledges that "§ 1981 does not provide a separate private right of action against state actors[]" and that, instead, "§ 1983 provides the sole cause of action available against state actors alleged to have violated § 1981." *Duplan v. City of New York*, 888 F.3d 612, 616, 621 (2d Cir. 2018); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731, 109 S.Ct. 2702, 2721 (1989). Consequently, Plaintiffs' claims under § 1981 against Farrish, Laczi and Seggos in their individual capacities should, as a technical matter, be summarily dismissed.  But in the interest of judicial efficiency, this Court recommends construing the § 1981 claims as having been properly asserted under § 1983, as this approach does not materially impact the remaining recommendations herein.  42 U.S.C. § 1983 provides, in relevant part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

Although § 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  To prevail on a claim arising under § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F.Supp.2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).  Thus, because Plaintiffs seek to vindicate rights provided by § 1981, the Court must analyze their claims in the same manner irrespective of whether they are interpreted as independent § 1981 claims or as claims under § 1983.

racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned one or more activities enumerated in §§ 1981 or 1982, *e.g.*, making contracts or the purchase of personal property." *Id.* (internal quotation marks and citation omitted).

Plaintiffs asserting claims under both § 1981 and § 1982 "must allege facts supporting the [defendant's] intent to discriminate against [them] on the basis of [their] race." *Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014) (citation omitted). Further, "[c]onclusory allegations of . . . illicit motives are insufficient to defeat a summary judgment motion." *Mark Taylor v. Dollar Tree Stores,* No. 18-cv-1306, 2020 WL 2478663, at *12 (E.D.N.Y. May 13, 2020) (internal quotation marks and citation omitted).

Here, the actions giving rise to Plaintiffs' § 1981 and § 1982 claims are the prosecutions of Gerrod, Jonathan and Silva.  Compl. ¶¶ 18-20.  Initially, the Court notes that Gerrod's and Jonathan's claims under § 1981 and § 1982 are time-barred. The allegedly unlawful conduct giving rise to their claims occurred in or around 2008 and 2009. *Id.* at ¶¶ 18-19; *see also Smith*, 2009 WL 2390809, at *1; *Smith*, No. 09-cv-571 (E.D.N.Y.), DE [1].  Whether the Court applies a three- or four-year statute of limitations, *see Bacon v. Suffolk Legislature*, No. 05-cv-4307, 2007 WL 2288044, at *5-*6 (E.D.N.Y. Aug. 8, 2007) (discussing statute of limitations periods for claims under §§ 1981, 1982 and 1983), the time to commence an action predicated on such conduct expired at the latest in 2013—five years before this case was commenced. Accordingly, the Court respectfully recommends granting the State Defendants'

motion for summary judgment with respect to Gerrod's and Jonathan's § 1981 and § 1982 claims.

As to Silva's claim for his 2017 prosecution, which is not time-barred, the Court engages in a burden-shifting analysis, under which Plaintiffs must first make out a *prima facie* case of discrimination, the burden then shifts to the State Defendants to provide a "legitimate non-discriminatory reason" that motivated the challenged action, and finally Plaintiffs must "carry [the] ultimate burden of persuading the trier of fact that the [State Defendants] intentionally discriminated against [them.]"  *See Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 402-03 (N.D.N.Y. 2008) (internal quotation marks and citation omitted) (applying burden-shifting framework to § 1981 claim); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 438 (E.D.N.Y.), *aff'd*, 45 F. App'x 59 (2d Cir. 2002) (applying burden shifting framework to §§ 1981 and 1982 claims).   Under this burden-shifting framework, the State Defendants will "be entitled to summary judgment unless [Plaintiffs] can point to evidence that reasonably supports a finding of prohibited discrimination."  *See Feacher*, 563 F. Supp. 2d at 403 (internal quotation marks, citation and alteration omitted).

Here, Plaintiffs have failed to make out a *prima facie* case of discrimination. In support of their claim, Plaintiffs rely on the same e-mails and internal NYDEC "Commissioner's Policy 42/Contact, Cooperation, and Consultation with Indian Nations" discussed above with respect to Plaintiffs' arguments regarding the bad faith exception to *Younger* abstention.  Pl. Opp. to State Def. Mtn., 32-33.   As

31

discussed above, the Court finds that neither the e-mails nor the NYDEC policy raise a genuine dispute regarding any illicit motivations on behalf of the State Defendants.

Plaintiffs further rely on an additional e-mail, dated April 20, 2017 and sent by NYDEC Lieutenant Thomas Gadomski ("Gadomski") to numerous NYDEC employees, including Farrish and Laczi. *Id.* at 33; DE [84-12], Ex. 39. In this e-mail, Gadomski describes how Farrish and Laczi apprehended Silva for being in possession of elver eels and sets out a plan for conducting an "Elver Patrol Detail" to apprehend anyone else who might be fishing for elver eels. DE [84-12], Ex. 39. According to Plaintiffs, this e-mail demonstrates that the State Defendants were "specifically targeting Shinnecock Indian Nation tribal members for enforcement as a racial group." Pl. Opp. to State Def. Mtn., 33. The Court disagrees. This e-mail, like the other two e-mails discussed above, focuses on the Tribe's conduct. Initially, this e-mail shows that Farrish and Laczi conducted the overnight surveillance, which led them to Silva, because they had received information regarding a "suspicious net" which they discovered to be a "fyke net set for elvers." DE [84-12], Ex. 39. There is no indication that Farrish and Laczi were motivated by racial animus in conducting the surveillance, but rather that they conducted the surveillance because they discovered evidence of potentially illegal activity. Further, once Farrish and Laczi apprehended Silva, he informed them that "members of the [Tribe] will continue to fish for elvers at nearby locations." *Id.* There is no indication that the NYDEC set up an Elver Patrol Detail to target the Tribe based on their race, but rather that they were acting on information, from Silva, that illegal conduct would continue. Thus,

rather than showing that the State Defendants targeted Silva because he was a member of the Tribe, this e-mail only underscores the State Defendants' argument that they ticketed Silva in an effort to enforce State fishing laws.

The e-mails are not the only evidence provided by Plaintiffs which support the State Defendants' claims that they did not discriminate against Plaintiffs. Plaintiffs also allege that around 2009, the State prosecuted Salvatore Ruggiero ("Ruggiero"), a non-Indian who was fishing with Gerrod, for possession of undersized flounder, undersized blackfish and undersized porgy in violation of New York law. *See* Compl. ¶ 17. Thus, by Plaintiffs' own admissions, they were not treated less favorably than non-Indian citizens with respect to any contractual or property right.

Accordingly, Plaintiffs' evidence does not create a genuine issue of fact that Farrish, Laczi or Seggos were motivated by racial animus. The Court therefore respectfully recommends granting the State Defendants' motion for summary judgment as to Silva's § 1981 and §1982 claims against Farrish, Laczi and Seggos in their individual capacities.

### C.   The County Defendants' Motion for Summary Judgment

The Court next turns to the County Defendants' motion for summary judgment. Initially, the County Defendants argue that Plaintiffs' claims against Greenwood in her individual capacity are barred by absolute prosecutorial immunity and claims against Greenwood in her official capacity must be construed as against the State and are therefore barred by the doctrine of sovereign immunity. Suffolk County Defendants' Memorandum of Law in Support of Motion Pursuant to Local

Rule 56.1 ("County Def. Memo"), DE [83-6], 2.  With respect to Plaintiffs' claims against the SCDA, the County Defendants contend that the SCDA is not an entity susceptible to suit.[21]  *Id.*

i.    *Claims Against Greenwood*

As noted above, Greenwood is the Assistant District Attorney handling the State's prosecution of Silva in the Justice Court for his alleged violations of State fishing and environmental conservation laws.  Compl. ¶ 20.  It is well settled that a prosecutor enjoys absolute immunity from a civil suit premised on the "initiation and pursuit of a criminal prosecution[]" and for any acts taken in "present[ing] . . . the [s]tate's case at trial."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613 (1993); *see also Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 995 (1976).  In other words, a state prosecutor enjoys absolute immunity when engaged in activities that are "intimately associated with the judicial phase of the criminal process."  *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995).  The purpose of the immunity doctrine is "to preserve the integrity of the judicial process and to enable zealous performance of prosecutorial duties without the constant threat of legal reprisals."  *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (internal quotation marks, citation and alterations omitted).

---

[21] Because, as discussed below, the Court recommends granting the County Defendants' motion for summary judgment on these grounds, the Court does not address their remaining arguments regarding the applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Id.* at 10-11.

In determining whether prosecutorial immunity is available, courts employ a "functional approach, . . . which looks to the nature of the function performed, not the identity of the actor who performed it[.]"  *Buckley*, 509 U.S. at 269, 113 S.Ct. at 2613 (internal quotation marks and citation omitted); *see also Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) ("The actions of a prosecutor are not covered by absolute immunity merely because they were performed by a prosecutor; rather, the question is whether the actions are part of a prosecutor's traditional functions.") (internal quotation marks and citation omitted).  Whether a prosecutor may be sheltered from liability turns on whether she was acting as an "advocate" when she "engaged in the challenged conduct." *See Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (internal quotation marks and citation omitted).  A prosecutor acts as an advocate when she "prepares to initiate and pursues a prosecution . . . or when [she] engages in administrative duties that are directly connected with the conduct of a trial." *Jackson v. Cnty. of Nassau*, No. 15-cv-7218, 2016 WL 1452394, at *6 (E.D.N.Y. Apr. 13, 2016), *adhered to on reconsideration*, 2016 WL 3093897 (E.D.N.Y. June 1, 2016) (citations omitted).  When a prosecutor acts "in the clear absence of all jurisdiction," however, she loses absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (internal quotation marks and citation omitted).  In determining whether a prosecutor acted in the absence of jurisdiction, courts look to statutes which may have authorized prosecution. *Id.* (citations omitted).

Initially, the Court notes that only one paragraph of the Complaint contains allegations pertaining to Greenwood specifically:

> [The criminal case against Silva] is presently lodged and pending in the
> . . . Justice Court as Case No. 17-7008 and is being prosecuted by
> Greenwood.   Silva's attempt to obtain a voluntary dismissal by
> Greenwood was unsuccessful, and Silva's motion to dismiss for lack of
> jurisdiction was denied by that court.   Over Silva's objection, that case
> is presently scheduled for trial on August 30, 2018 at 9:00 am.

Compl. ¶ 20.  More generally, the Complaint asserts that Plaintiffs "have been . . . prosecuted in New York State courts by the Defendants[] and are deterred and chilled from exercising their rights to fish by the acts of the Defendants."  *Id.* at ¶ 14; *see also id.* at ¶ 16 ("Over the last decade, the Defendants have . . . prosecuted the Plaintiffs for alleged criminal offenses in alleged violation of New York State law involving fishing and raising shellfish in Shinnecock Bay and its estuary waters . . . . Each of the prosecutions failed[;] [y]et, the Defendants persist and continue to . . . threaten prosecution.").  These allegations against Greenwood are related solely to her role in the prosecution of Silva, and Plaintiffs have offered no evidence that Greenwood's actions were undertaken in the capacity of an administrator or investigative officer. Pl. Opp. to County Def. 56.1 ¶¶ 8-9, 11 (conceding that "Plaintiffs have not had an opportunity to engage in any discovery on" Greenwood's conduct).[22]

Plaintiffs argue, however, that Greenwood's "continuing prosecution of . . . Plaintiffs [was] in excess of state jurisdiction."  Plaintiffs' Memorandum of Law in Opposition to County Defendants' Motion for Summary Judgment ("Pl. Opp. to County Def. Mtn."), DE [83-10], 3.  Plaintiffs rely on the same internal NYDEC e-

---

[22] Plaintiffs' lack of discovery on this issue does not affect the Court's conclusion.  Because "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity[,]" "courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery[.]"  *Flores v. Levy*, 07-cv-3753, 2008 WL 4394681 at *12 (E.D.N.Y. Sept. 23, 2008).

mails discussed above to argue that Greenwood participated in a "scheme" to single Plaintiffs out based on their race, which was "outside the scope of legitimate official duties because this illegal scheme could not work without her participation." *Id.* Greenwood is not, however, a party to any of these e-mails. *See* DE [84-12], Exs. 20-21, 39. Plaintiffs fail to explain, and the Court cannot imagine how, internal NYDEC e-mails to which Greenwood is not a party raise a genuine issue as to whether Greenwood acted "in the clear absence of all jurisdiction." On the contrary, Greenwood is authorized by Article 18 of the New York County Law to commence prosecutions. *See* N.Y. County Law § 700 ("[I]t shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed[.]" To that end, Greenwood, in exercising that mandate on behalf of the State, brought criminal charges under various State laws applicable to Silva's conduct, namely, NYECL § 13-0355 and NYCRR, title 6, §§ 40-1(b)(ii)-(iii). Accordingly, Plaintiffs' claims for monetary damages against Greenwood in her individual capacity—namely, those asserted under 42 U.S.C. §§ 1981[23] and 1982—are foreclosed by the doctrine of absolute prosecutorial immunity.[24]

---

[23] For the reasons explained above, Plaintiffs' claims under § 1981 against Greenwood in her individual capacity are improper under *Duplan*. Yet, as with those § 1981 claims asserted against Farrish, Laczi and Seggos in their individual capacities, the Court recommends, in the interest of judicial economy, that such claims against Greenwood be construed as having been brought under § 1983 so that the Court may address their merits, and because doing so does not impact any other recommendation herein.

[24] It is well settled that prosecutors are not entitled to absolute immunity from claims for injunctive and declaratory relief. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736-37, 100 S.Ct. 1967, 1977 (1980).

Moreover, the Court agrees with the County Defendants that, because Greenwood was acting in her role as a prosecutor, the official capacity claims against her must be construed as against the State. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.") (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014, 109 S.Ct. 805 (1989)); *see also Greene v. City of New York*, No. 08-cv-00243, 2017 WL 1030707, at *29 (E.D.N.Y. Mar. 15, 2017), *aff'd*, 742 F. App'x 532 (2d Cir. 2018) (internal quotation marks and citation omitted). For the reasons set forth above with respect to Plaintiffs' claims against Farrish, Laczi and Seggos in their official capacities, those claims are barred by the Eleventh Amendment. *See D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (Summary Order) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity.") (citations omitted). Finally, Plaintiffs' claims for declaratory and injunctive relief against Greenwood in her official capacity are, as explained above with respect to Plaintiffs' claims against the State Defendants independently precluded under *Younger* and for lack of standing.[25]

---

[25] The Court notes that Plaintiffs do not raise any new arguments with respect to *Younger* abstention and *Ex parte Young* in opposition to the County Defendants' Motion for Summary Judgment. *See* Pl. Opp. to County Def. Mtn., 3-16.

ii.     *Claims Against the SCDA*

Plaintiffs' claims against the SCDA fare no better.  "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and[,] therefore, cannot sue or be sued."  *Leshore v. Comm'r of Long Beach P.D.*, No. 10-cv-6067, 2012 WL 1032643, at *7 (E.D.N.Y. Mar. 21, 2012) (alteration in original) (internal quotation marks and citation omitted).  It is therefore well-settled that district attorneys' offices in New York lack the capacity to be sued.  *See, e.g.*, *Bristol v. Prob. Dep't of Nassau Cnty.*, No. 14-cv-6647, 2016 WL 873336, at *1 n.1 (E.D.N.Y. Mar. 8, 2016) (collecting cases); *see also Boley v. DeVito*, No. 12-cv-4090, 2012 WL 3764493, at *2 (E.D.N.Y. Aug. 27, 2012) ("The Kings County District Attorney's Office is not a suable entity.") (citation omitted).

Plaintiffs assert that the SCDA is a legal entity separate from the County and capable of being sued because the County provides the SCDA with a "prosecution fund" and the SCDA holds itself out to the public on its website as "a legal entity capable of holding intellectual property rights[.]"  Pl. Opp. to County Def. Mtn., 16-17.  But Plaintiffs identify no legal support for their theory that these characteristics have any bearing on the SCDA's status as an "administrative arm" of the County.  Absent authority suggesting otherwise, this Court will apply the uniformly-recognized principle that district attorneys' offices in New York are not subject to suit.  Accordingly, the Court respectfully recommends that the County Defendants'

motion for summary judgment be granted with respect to Plaintiffs' claims against the SCDA.[26]

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends denying Plaintiffs' motion for leave to file exhibits, DE [86], and granting both the State Defendants' motion for summary judgment, DE [84], and the County Defendants' motion for summary judgment, DE [83].

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:        Central Islip, New York        /s/ Steven I. Locke
              May 27, 2020                     STEVEN I. LOCKE
                                               United States Magistrate Judge

---

[26] The Court does not consider Plaintiffs' fleeting argument that "[t]o the extent the Defendant DA is not a legal entity, which it is, that part of the action should be construed as brought against the DA in his personal and official capacities under *ex parte Young* [sic]." *Id.* at 17.  The SCDA District Attorney is not a named defendant in this action, and, aside from this remark, Plaintiffs offer no indication that they seek to amend their Complaint to add him as a defendant at this juncture.