UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------x
DAVID T. SILVA,
GERROD T. SMITH, and
JONATHAN K. SMITH,
Members of the Shinnecock Indian Nation,

                Plaintiffs,               Case No.:   18-cv-3648 (SJF) (SIL)

     - against -               **PLAINTIFFS' OBJECTIONS
                                     TO  REPORT AND
                                     RECOMMENDATION**
 BRIAN FARRISH,
 JAMIE  GREENWOOD,
 EVAN LACZI,
 BASIL SEGGOS,
 NEW YORK STATE DEPARTMENT OF
 ENVIRONMENTAL CONSERVATION,
 and SUFFOLK COUNTY DISTRICT
 ATTORNEY'S OFFICE,

                Defendants.
----------------------------------------------------x


    I.     <u>Introduction</u>

    Plaintiffs, David T. Silva, ("Silva"), Gerrod T. Smith, ("Gerrod"), and Jonathan K. Smith,

("Jonathan"), (collectively, "Plaintiffs"),  pursuant to Fed. R. Civ. P. 72(b)(2), respectfully file

this their objections to each and every part of Magistrate Judge Steven I. Locke's Report and

Recommendation, filed on May 27, 2020, (ECF No. 89), ("the Report"). Respectfully, the Report

erroneously declines to reopen discovery and denied Plaintiffs' proposed new exhibits,

completely fails to present and analyze Plaintiffs' evidence of their aboriginal fishing rights

including as set forth by Plaintiffs' expert, Dr. John Strong, and is little more than a restatement

of Magistrate Judge Locke's previous terminated Report and Recommendation on Defendants'

prior motions to dismiss. The Supreme Court's recent decisions, favorable to Native American

rights, in *Herrera v. Wyoming*, Slip Op, No. 17-532 (2019)  and *Wash. State Dep't of Licensing*

*v. Cougar Den, Inc.*, Slip Op., No. 16–1498 (2019) are overlooked. There is also lack of application of a conflicting Eastern District case, being the favorable Decision and Order, April 23, 2019, (ECF No. 38), *Unkechaug Indian Nation and Henry B. Wallace v. New York State Department of Environmental Conservation and Basil Seggos*, 18-cv-1132 (EDNY), involving *Ex Parte Young* and standing in another fishing rights case involving the nearby Unkechaug Tribe.[1]

II.     Standard of review on a motion for summary judgment

Rule 56(a) provides "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). If the moving party meets its burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial' in order to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh

---

[1] Plaintiffs inform the Court that discovery is ongoing in *Unkechaug*, and Defendant Seggos and James Gilmore were deposed in that case on March 10, 2020 and February 18, 2020, respectively, which occurred after briefing in this case. Both parties were represented at their depositions by DEC attorney, Monica Kreshik, Esq., who figures prominently in the internal DEC email exchanges in this case. All three individuals would be deposed in this case if the case proceeds.

the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted).

III.     Standard of review of a magistrate judge's report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). With respect to a magistrate judge's recommendations on a dispositive motion, the Court reviews *de novo* those determinations as to which a party has objected. *Id*. ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72 (b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.") However, "[t]o accept the report and recommendation of a magistrate judge on a dispositive matter as to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the fact of the record." *Piroleau v. Caserta*, No. 10-cv-5670, 2012 WL 5389931, at *1 (E.D.N.Y. Oct. 29, 2012). "[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *E.E.O.C. v. First Wireless Grp., Inc*., 225 F.R.D. 404, 405 (E.D.N.Y. 2004).

IV.     Plaintiffs object to the denial of their proposed exhibits

The Report erroneously denied Plaintiffs' proposed exhibits. (PageID#1776)[2] Plaintiffs' request was "deemed a request to reopen discovery" by the District Court. See Order, Docket Text, 2/19/2020. The Report cites no law in support of its adverse determination. Under F.R.E.

---

[2] Page references in the Report will be made to PageID#__.

401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Report appears to decide the documents are not relevant. Magistrate Judge Locke appeared swayed by his observation, but incorrect inference, "that Plaintiffs have engaged in a pattern of filing supplemental documents months after motions have been fully briefed" but did not observe that all such submissions by Plaintiffs were subsequently decided Supreme Court legal authority or important subsequent actions by the State Defendant. (PageID#1775, fn. 6)

Plaintiffs' letter motion to supplement the record shows the State Defendants are not practicing here what they preach north of Albany in the press release: "The State recognizing unique state/tribal jurisdictions and shared interests in the waterways in this press release and map corroborates Plaintiffs' repeated statement about its use rights, 'even when the Shinnecock Indian Nation has absolute and uncontested control of a resource, it shares it with non-Indian neighbors.'" These documents rebut the State Defendants' and Report's incorrect view that the complaint seeks an ownership right in contrast to a use right.

Moreover, The Report fails to note the context of the Press Release. The Press Release does not merely address environmental degradation, in fact it begins by stating, "a historic cooperative agreement that will help accelerate restoration of natural resources and *traditional Native American uses* [emphasis added] within the St. Lawrence River Area of Concern…". Plaintiffs contend that as the State Defendants' feign ignorance as to the definition and implementation of "ill defined use-rights" in this matter, they actively promote aboriginal, off Reservation, use-rights in the Press Release.

4

Further, the Report does not deduce that the elver eel are implicit in the aboriginal use-rights subject matter of the Press Release. To list every species impacted by the Press Release would be superfluous. The St. Lawrence River Area of Concern is unquestionably part of the historic range of the American eel and its offspring, the elver and/or glass eel.

Moreover, the accompanying Map demonstrates, in no uncertain terms, the Saint Regis Mohawk Tribe (SRMT) territory and the SRMT historic use areas are distinct from each other. The influence of the SRMT through aboriginal use-rights and jurisdiction extends beyond its territorial borders, which effectively reverberates Plaintiffs' use-rights positions.

V.    Objections to the recitation of Relevant Facts

Plaintiffs object that the Relevant Facts section of the Report (a little over 2 pages) omits and does not review, present, or discuss any facts or evidentiary details of Plaintiffs' asserted aboriginal rights to fish the waters of Shinnecock Bay and its estuaries from their Local Rule 56 counterstatement of material facts or exhibits.[3] ((PageID#1769 to PageID#1771) The Report simply concludes "these facts are not in dispute" (PageID#1769) then recounts only the procedural history of prosecution of the Plaintiffs in the state courts.

The Report fails to present any of the many factual conflicts pointed out in Plaintiffs' counterstatement. By way of example, 1) The parties disagree on even the characterization of the complaint. 2) There are no facts or opinions in the Report from Dr. John Strong's Reports of May 27, 2018, November 3, 2018, or his state trial testimony of April 11, 2019. These facts and opinions include the use right of Shinnecock to fish the waters adjacent to their community, the lack of establishment of the southern boundary of the Shinnecock Indian Reservation, and that Silva was fishing in protected customary Shinnecock waters of the Shinnecock Bay estuary

---

[3] ECF No. 84-10, referred to as "Plaintiffs' counterstatement".

historically known to Shinnecock as "Turtle Creek." 3) There is no discussion in the Report of errors in the State court trial, including that no decision was ever rendered on Silva's assertion of Shinnecock fishing rights, and after the closing of proofs, the presiding judge had to ask the prosecutor where on the map Silva was fishing. 4) There is no discussion in the Report of Colonial documents raised by Dr. Strong. 5) There is only passing reference to U.S. District Judge Kuntz's favorable ruling in *Unkechaug*. 6) There is otherwise little discussion in the Report of the detailed disputed material facts specifically set forth in paragraphs 1-111 of Plaintiffs' counterstatement, labeled as such, and of Plaintiffs' Exhibits 1-42.

The Report errs in stating, "Plaintiffs do not allege that Seggos, Commissioner of the NYDEC, Compl. ¶ 8, was personally involved in the ticketing or prosecution of Silva." (PageID#1771, fn. 4) The Report disregards facts quite plainly articulated by Plaintiffs. Not only was Defendant Seggos personally involved with the Silva ticket, he was instrumental to the action. Plaintiffs' Memorandum of Law in Opposition to State Defendants' Motion for Summary Judgement[4] pointed out evidence of specific involvement of Seggos shown by testimony of DEC Lt. Reilly at the state trial of Silva, and the February 11, 2016 "dicey history" email found at Exhibit 25. (PageID#1739 to PageID#1740) Armed with the information that consultation with tribes *prior to action* is a NYSDEC department-wide mandate, being effectively briefed by Executive Deputy Commissioner Lynch that, "[the Shinnecock Nation has] a stronger case for fishing rights than the other (Native American) nations in New York", combined with NYSDEC Lt. Sean Reilly's testimony in Silva's state trial that at the time of Silva's ticket, "any time we have interaction with a Native American, we notify through our chains of command up to Albany *where our commissioner and our legal people know that this is occurring...*", it is clear

---

[4] ECF No. 84-13, referred to as "Plaintiffs' MOL".

that these factors demonstrate a bastion of institutionalized, systemic, discrimination by all State Defendants. Every single guardrail for nondiscriminatory good judgement was obliterated.

VI.     Plaintiffs object to the granting of State Defendants' motion

a.     Plaintiffs object that *Ex parte Young* does not apply

The Report erroneously determined that *Ex Parte Young* does not apply to the state defendant or its employees in their official capacities. (PageID#1786) The Report erred in wrongly determining Plaintiffs are, really, not seeking protection of a "use right." In its *Ex parte Young* analysis, the Report initially and correctly determined that "[t]he Complaint likewise seeks injunctive relief that appears to be prospective in nature". (PageID#1781) However, the Report took an erroneous turn by then wrongly determining that the relief sought really wasn't that at all. "Nevertheless, this Court must assess whether the relief sought is *properly* characterized as prospective with reference to the underlying substance of the claims at issue… it is not." [emphasis in original] (PageID#1782) In other words, the Report unhinged the plain and explicit language of the relief sought in Plaintiffs' complaint, which clearly pleads protection of a use right, without drawing on any supporting facts from Dr. Strong's reports other otherwise in Plaintiffs' counterstatement of facts and exhibits, and then mis-applied the law. The missing "relevant facts" as pointed out above support Plaintiff's use right relief as plead. The Report cites no language from the complaint to support its about-face turn.

Plaintiffs' fishing use right case is supported by language in Colonial Deeds and other documents cited by Dr. Strong. The Report erroneously did not apply *Herrera v. Wyoming*, Slip Op, No. 17–532, p. 14 (Sotomayor, J.) (Holding in favor of the Crow Tribe's hunting rights. "Congress 'must clearly express' any intent to abrogate Indian treaty rights", p. 14), and dismissed the case as inapplicable to a footnote. (PageID#1786, fn. 16) The Report does not

mention *Wash. State Dep't of Licensing v. Cougar Den, Inc*., Slip Op., No. 16–1498, 139 S. Ct. 1000 (2019)("the language of [an Indian] treaty should be understood as bearing the meaning that the [Indian tribe] understood it to have" at the time in was entered.) See, *Unkechaug*, at 14.

Lastly, the Report glosses over U.S. District Judge Kuntz's favorable Eleventh Amendment ruling in *Unkechaug.*

> Defendant Seggos is a proper party to this action under *Ex Parte Young*. Plaintiffs have plausibly alleged there are threats of violations of federal law given a past practice of threats of criminal prosecution and recent statements suggesting this practice will continue in the future. *Unkechaug*, at 8.
> …
> The Court also concludes defendant NYSDEC is a proper party to this action at this stage in the litigation. *Unkechaug*, at 9.

### b.   Plaintiffs object that *Younger* bars Silva's claim for injunctive relief

The Report erroneously determines that Silva's claim for injunctive relief is barred by the *Younger* Doctrine. (PageID#1786) First, *Younger* is not implicated because at the time of the filing of the Report, there was no ongoing state proceeding. Silva's state appeal, taken to Appellate Division, was involuntarily dismissed by Appellate Term on October 15, 2019. Then the dismissal was vacated by Appellate Term on December 13, 2019, and abandoned at that time.[5] Although moot at this point, even if there was a pending state proceeding, the Report erred in failing to find the bad faith exception was not met by the Defendants by evidence of the pattern of prosecution of Plaintiffs in violation of its own policy CP-42, misrepresenting the conservation status of glass eels, and internal emails showing racial profiling of Shinnecock

---

[5] Silva's state appeal was frustrated due to a jurisdictional and rule conflict within and between Appellate Division and Appellate Term. Silva's appeal was taken to Appellate Division, but *Appellate Term* dismissed the appeal for lack of perfecting under its rules after the Southampton Justice Court's record was rejected and it failed to correct. The remedy provided by Appellate Term in an order dated December 13, 2019, ie. move in Appellate Division to transfer the appeal to Appellate Term or move to amend the notice of appeal in Southampton Justice Court was an apparent impossibility and fruitless, as Appellate Division represented to counsel that it had no record of the appeal and it lacked jurisdiction, and the Southampton Justice Court record was the impetus of the dismissal.

people. The Report failed to resolve all ambiguities and draw all permissible factual inferences in favor of Plaintiffs, the party against whom summary judgment is sought. *Johnson*, 680 F.3d at 236.

For example, in the Report's determination of no bad faith on the part by the State Defendants, (PageID#1788 to PageID#1793), the Report fails to note the systemic nature of the bad faith actors and actions. CP-42 is a department-wide mandate, affecting *all* NYSDEC players. Not only was Plaintiff Silva personally advised by Defendant NYSDEC's own Indian Affairs Coordinator Dr. David Witt in his email that non-Indian ownership and jurisdiction of submerged lands and waters was either highly dubious or flatly non-existent, (Exhibit 29), Dr. Witt also advised his superiors of the same by email, (Exhibits 30, 31). See, Plaintiffs' MOL. (PageID#1727 to PageID#1729)

Moreover, the Report misses the mark when it attempts to analyze Mr. James Gilmore role in this case. "Plaintiffs fail to offer any evidence that the State Defendants had any knowledge regarding the veracity of the statements contained in the Gilmore Affidavit." (PageID#1793) Defendants do not merely rely upon Mr. Gilmore for fact testimony, but on guidance, pre-enforcement action. through prosecution. See, the timing of internal DEC email to Gilmore, among others, of March 28, 2017 in Exhibit 20, which predated Silva's ticket by about 1 week, then the subsequent emails involving Gilmore of April 24, 2017 and April 25, 2017. Plaintiffs MOL. (PageID#1717) These emails show Mr. Gilmore is a highly placed person within State Defendant NYSDEC's agency, he is consulted before, during and after many official actions, including actions against Native Americans, as repeated evidence demonstrates.

c.    <u>Plaintiffs object that Gerrod and Jonathan lack standing</u>

The Report erroneously found Plaintiffs Gerrod and Jonathan lack standing.

(PageID#1793) The Report again failed to resolve all ambiguities and draw all permissible

factual inferences in favor of Plaintiffs, the party against whom summary judgment is sought.

*Johnson*, 680 F.3d at 236. The Defendants' pattern of prosecution of Plaintiffs in violation of its

own policy CP-42, misrepresenting the conservation status of glass eels, and internal emails

showing racial profiling of Shinnecock people. If the evidence was viewed in a light favorable to

Plaintiffs, the Report would have been consistent with *Unkechaug* on the standing issue as well

as immunity.

The Report overlooks vital evidence regarding Defendants unmistakable intent to injure

Plaintiffs. See the statement by DEC Major Scott Florence in a January 25, 2018 email to the

New York Times: "… the state's fishing regulations … apply to anyone who fishes in the waters

of New York State." Exhibit 23. As cited below, Judge Kuntz ruled on this very article in the

*Unkechaug* case, "… Plaintiffs also cite in their Complaint a 2018 article discussing defendant

NYSDEC's position that the fishing regulations apply to any water outside reservation

boundaries--therefore including Plaintiffs' customary fishing waters. See Compl. 1 20. As such,

Plaintiffs have alleged sufficient facts to show they can "reasonably expect to encounter" a

genuine threat of criminal prosecution in the future to confer standing."

Major Florence's threats are aimed at Plaintiffs Silva and Jonathan in particular, as they

are the subject matter of that article. It is reasonable to assume, given Judge Kuntz's opinion on

the matter, that Major Florence's threats of criminal prosecution encompass all individuals

seeking to fish in customary waters under aboriginal use-rights within the region.

Judge Kuntz held in *Unkechaug*,

> The Court agrees Plaintiffs have established standing to bring their preenforcement challenges against Defendants. Plaintiffs' intent to fish in Reservation and customary fishing waters is evident from their Complaint, such that they possess "concrete plans" that could be subject to criminal prosecution by Defendants, taking the allegations of the Complaint as true at this stage. Plaintiffs do not aver "mere some day intentions to commit an act," but instead have articulated a concrete plan, including fishing in waters they consider customary under their treaty rights, which would violate the regulations in question. *Jones v. Schneiderman*, 101 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) (Wood, J.) (internal quotation marks omitted) (citing *Wolfson*, 616 F.3d at 1058); *see also Nat 'I Org. for Marriage*, 714 F.3d at 687; *Skokomish Indian Tribe*, 994 F. Supp. 2d 1168, 1182 (W.D. Wash. 2014) ("[T]he fact that Skokomish Indian Tribe members have been prosecuted while exercising their Treaty hunting rights in the past supports their claim that the alleged threat of prosecution today is genuine.")). Moreover, in addition to citing past criminal summonses and seizure of property from 2014 and 2016, Plaintiffs also cite in their Complaint a 2018 article discussing defendant NYSDEC's position that the fishing regulations apply to any water outside reservation boundaries-therefore including Plaintiffs' customary fishing waters. See Compl. ¶ 20. As such, Plaintiffs have alleged sufficient facts to show they can "reasonably expect to encounter" a genuine threat of criminal prosecution in the future to confer standing. *See Cayuga Nation*, 824 F .3d at 331. *Unkechaug*, at pp. 12-13.

The Report errs in its statement that "Plaintiffs do not offer any other evidence that they have continued fishing for elver eels or intend to do so, such that the holding in Unkechaug Indian Nation would inform this Court's decision." (PageID#1795) The Report contradicts this statement later in the Report, "[f]urther, once Farrish and Laczi apprehended Silva, he informed them that "members of the [Tribe] will continue to fish for elvers at nearby locations. There is no indication that the NYDEC set up an Elver Patrol Detail to target the Tribe based on their race, but rather that they were acting on information, from Silva, that illegal conduct would continue". (PageID#1799) The Report inconsistently accepts as fact that the Shinnecock had a concrete and particularized plan that they would continue to fish for elver eels, while simultaneously opining that no evidence was offered in that regard.

The Report disregards relevant contextual information to arrive at its conclusion. See Exhibit 39. "Using the above information…", Mr. Gadomski begins his orders. The "above information" in relevant part included, "member of the Shinnecock *Reservation* [emphasis added]" and, "the Shinnecock Nation believe they have the right to fish off the reservation". The geographic scope of the Elver Patrol Detail effectively made the Shinnecock Reservation the epicenter and it spread outward. Areas not near the Reservation were not included, such as the many freshwater streams and rivers on the North Shore of Long Island. Additionally, no other race besides Shinnecock Indians were mentioned as a target for enforcement. And once again, NYSDEC failed to act on the obvious information that members of the Shinnecock Nation are fishing, and this issue fits *squarely* within the NYSDEC pre-action consultation mandates of CP-42, as it issued a five-night enforcement detail.

        d.      <u>Plaintiffs object that Plaintiffs fail in their 1981 and 1982 claims</u>

The Report erroneously held that Plaintiffs fail in their 1981 and 1982 claims against the defendants in their personal capacities. (PageID#1800) The Report again failed to resolve all ambiguities and draw all permissible factual inferences in favor of Plaintiffs, the party against whom summary judgment is sought. *Johnson*, 680 F.3d at 236. As above, the Report erroneously draws all permissible factual inferences in favor of the Defendants and determined "Plaintiffs' evidence does not create a genuine issue of fact that Farrish, Laczi or Seggos were motivated by racial animus." (PageID#1800) But viewed in favor of Plaintiffs, the pattern of prosecution of Plaintiffs in violation of its own policy CP-42, misrepresenting the conservation status of glass eels, and internal emails showing racial profiling of Shinnecock people, show racial animus against Plaintiffs.

Plaintiffs' further object to the Report's continued rewriting of the complaint. Plaintiffs did not plead a 1983 claim. (PageID#1796, fn. 20)

VII.   Plaintiffs object to the granting of County Defendants' motion

    a.   Plaintiffs object that their claims are barred against Greenwood by absolute prosecutorial immunity, *Younger*, and lack of standing

Plaintiffs object to the Report's determinations that "Plaintiffs' claims for monetary damages against Greenwood in her individual capacity—namely, those asserted under 42 U.S.C. §§ 198123 and 1982—are foreclosed by the doctrine of absolute prosecutorial immunity". (PageID#1804). Plaintiffs further object that "Plaintiffs' claims for declaratory and injunctive relief against Greenwood in her official capacity are, as explained above with respect to Plaintiffs' claims against the State Defendants independently precluded under *Younger* and for lack of standing". (PageID#1805)

The factual underpinning of the Report's factual analysis is flawed in favor of the County Defendants for the same reason it is flawed in favor of the State Defendants as pointed out above, namely that the Report failed to present and discuss the facts presented to the Court in Plaintiffs' counterstatement, and what facts the Report did present, are erroneously viewed in a light most favorable to the County Defendants. *Johnson*, 680 F.3d at 236. See (PageID#1800-PageID#1807)

The Report's legal analysis is flawed by the failure to correctly apply the law under *Ex Parte Young, Younger,* and the law on standing, for the same reasons as set forth above in the State Defendants section. (PageID#1805)

    b.   Plaintiffs object that claims against Greenwood are construed as against the state and fail under *Younger* and standing

Plaintiffs object that the Report determined that "the official capacity claims against her must be construed as against the State" and "Plaintiffs' claims for declaratory and injunctive relief against Greenwood in her official capacity are… precluded under *Younger* and for lack of

standing." (PageID#1805) The Report errs here in its *Younger* and standing analysis for the same reasons in the State Defendants section above.

In addition, the Report errs in stating, "Plaintiffs rely on the same internal NYDEC e-mails discussed above to argue that Greenwood participated in a 'scheme' to single Plaintiffs out based on their race, which was 'outside the scope of legitimate official duties because this illegal scheme could not work without her participation.' Id. Greenwood is not, however, a party to any of these e-mails." (PageID#1803 to PageID#1804) But the Report fails to note that it is Greenwood's knowledge of the email evidence and prosecution that matters, not that this email evidence itself directly implicates Greenwood. Greenwood was in possession of these emails, as she personally handed them to the defense during Silva's trial proceedings. Her simply reviewing them should cast doubt in her mind on state jurisdiction over aboriginal reserved fishing rights, specifically when her prosecution conflicted with the opinion in the email of Associate Counsel Monica Kreshik from the DEC Bureau of Enforcement, that she believed the Shinnecock may have the right to do so. The Kreshik email itself on lack of jurisdiction defeats criminal burden of proof. Additionally, offering fact testimony on the issue of the fishing location of Silva to Judge Weber after the People rested in the state trial is clearly out-of-bounds.

       c.     <u>Plaintiffs object that the County Defendant lacks capacity to be sued</u>

Plaintiffs object that the Report determined that the County Defendant cannot be sued. (PageID#1806) The Report errs by disregarding the facts, and law, cited by Plaintiffs that the County Defendant is justiciable. For example, the Report does not mention *Smith v. Gribitz*, 758 F.Supp. 145 155 (S.D.N.Y. Mar. 6, 1997), CNT § 705, and *Igoe v. Apple*, NY Slip Op 28170, May 31, 2018 (Supreme Court, Albany County), or view favorably to Plaintiffs the fact that the office specifically holds itself out to the public on its website that it owns intellectual property rights. Disregarding the above, the Report simply states, "Plaintiffs identify no legal support for

their theory that these characteristics have any bearing on the SCDA's status as an "administrative arm" of the County." (PageID#1806)

VIII.    Conclusion

For the above reasons, Plaintiffs respectfully request the Court to reject the Report's recommendation that summary judgment be granted in favor of the Defendants. In the event summary judgment is granted, Plaintiffs respectfully request an opportunity to amend the complaint.


Dated: June 10, 2020
       New York, New York


                                    Respectfully submitted,

                                    MOORE INTERNATIONAL LAW PLLC.

                                            /s/ Scott M. Moore
                                    By: _____
                                            Scott Michael Moore, Esq.
                                            *Attorneys for Plaintiffs*
                                            45 Rockefeller Plaza, 20th Floor
                                            New York, New York 10111
                                            T. (212) 332-3474
                                            F. (212) 332-3475
                                            E. smm@milopc.com