UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID T. SILVA, GERROD T. SMITH, AND
JONATHAN K. SMITH, Members of the Shinnecock
Indian Nation,

                            Plaintiffs,

   -against-

BRIAN FARRISH, JAMIE GREENWOOD,
EVAN LACZI, BASIL SEGGOS, NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and SUFFOLK COUNTY
DISTRICT ATTORNEY'S OFFICE,

                            Defendants.
------------------------------------------------------------X

**FILED**
**CLERK**

10/3/2025 2:48 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF**
**DECISION AND ORDER**

Civil Action
No. 18-3648 (GRB) (SIL)

**GARY R. BROWN, United States District Judge**:

      Presently before this Court are cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 brought by plaintiffs David Silva, Gerrod Smith, and Jonathan Smith, who are members of the Shinnecock Indian Nation, and defendants Basil Seggos, Brian Farrish, and Evan Laczi, all of whom are officers with the New York State Department of Environmental Conservation. *See* Docket Entries ("DE") 161-11, 162-1. Plaintiffs seek (i) a declaratory judgment that as members of the Shinnecock Indian Nation they retain aboriginal rights to fish in New York waters and (ii) an injunction against New York state officials to prevent unreasonable interference with these supposed aboriginal fishing rights. DE 161-11 at 9. For the reasons set forth herein, defendants' summary judgment motion is GRANTED and plaintiffs' summary judgment motion is DENIED.

      ***Factual Background***

This case concerns whether members of the Shinnecock Indian Nation, a federally recognized Indian tribe, based on the Shinnecock Indian Reservation in Suffolk County, have a right to fish off-reservation free from state regulations that seek to preserve local fisheries.

In 2017, plaintiff Silva was convicted in New York state court for eel fishing without a commercial fishing license and for using a fyke net in Shinnecock Bay.[1]  DE 126-1 ¶ 37.  All of Silva's predicate conduct occurred outside the boundaries of the Shinnecock Reservation.  *Id.* ¶¶ 20, 32-35.  The state had prosecuted plaintiff Gerrod Smith in 2008 for illegal possession of flounder, porgy, and blackfish harvested from Shinnecock Bay.  And plaintiff Jonathan Smith had received a civil infraction ticket and a criminal summons for operating an unpermitted aquaculture facility in Shinnecock Bay and using improper shellfish tags.  These latter two cases were dismissed.  DE 89 at 3.

The State of New York has implemented a variety of regulations to protect aquatic species, including—and most relevant to this case—the American eel.  The Atlantic Coastal Fisheries Cooperative Management Act ("ACFCMA") requires states to implement measures that the Atlantic States Marine Fisheries Commission ("ASMFC") deems necessary for conservation of coastal fisheries.  DE 162-1 at 38.  New York, like every state that borders the Atlantic Ocean, is a member of the ASMFC.  *Id.*  Due to the decreasing American eel population, the ASMFC developed a fishery management plan (FMP) in 1999 "to ensure the long-term viability of the population for continued harvest and provide adequate quantities of juveniles and

---

[1] A fyke net is used for trapping fish in shallow waters and consists of several "cone-shaped netting bags."  *See* Fishing Gear Type: Fyke Nets, Food and Agriculture Organization of the United Nations, https://www.fao.org/fishery/en/geartype/226/en.

adults for use by other fish and wildlife resources." *Id.* New York implements its obligations under the American Eel FMP, in part, through the challenged regulations limiting eel fishing. *Id.*

New York's interest in maintaining the American eel population is straightforward. The American eel "is a protected resource, whose population is depleted and at historically low levels," in part due to overfishing. DE 126-1 ¶¶ 38, 53. Conservation of eel species is essential for maintaining food chains in aquatic ecosystems and protecting species for whom eel is an important food source, such as various fish, birds, and mammals. *Id.* ¶¶ 78-80. Maintaining an adequate American eel population supports recreational and commercial fisheries, which in turn provides direct and indirect employment opportunities in industries such as gear manufacturing, food processing, and shipping. DE 127-5 at 8.

Plaintiffs filed suit in 2018, arguing that they—as members of the Shinnecock Nation—have aboriginal rights to fish in Shinnecock Bay. *See* DE 1. Then-Judge Feuerstein granted summary judgment to defendants, finding that Silva's claims were precluded under *Younger* abstention, sovereign immunity barred this suit, and Gerrod Smith and Jonathan Smith lacked standing. *See* DE 96. The Second Circuit reversed, holding that *Younger* did not apply, the *Ex Parte Young* doctrine provided an exception to sovereign immunity, and the threat of enforcement of fishing regulations gave Gerrod Smith and Jonathan Smith standing. *See Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022).

***Discussion***

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F.

3

Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Discussion*

Despite the lengthy filings, request for extending page limits in the briefs even after the Court granted the parties additional pages, DE 135, and submissions by numerous amici, *see* DE 152; DE 154; DE 159; DE 160, this case remains straightforward. The main question is whether, regardless of any aboriginal title, the state fishing regulations at issue are reasonable and non-discriminatory.

Under the doctrine of conservation necessity, "[s]tates can impose reasonable and nondiscriminatory regulations on an Indian tribe's treaty-based hunting, fishing, and gathering rights on state land when necessary for conservation." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1695 (2019). The conservation necessity doctrine requires a state to show that "the regulation meets appropriate standards and does not discriminate against the Indians," and that "its regulation is a reasonable and necessary conservation measure, and that its application to the Indians is necessary in the interest of conservation." *Antoine v. Washington*, 420 U.S. 194, 207 (1975). With regard to fishing rights, the Supreme Court has held that "the manner of fishing, the size of the take, the restriction of commercial fishing, and the like may be regulated by the State in the interest of conservation, provided the regulation meets appropriate standards and does not discriminate against the Indians." *Puyallup Tribe v. Dep't of Game of Wash.*, 391 U.S. 392, 398 (1968). In a case that the Second Circuit upheld earlier this year, in which members of the Unkechaug Tribe challenged these same American eel regulations, Judge William Kuntz granted summary judgment for the state, finding that New York "has a clear interest in conserving the American eel population, and it has imposed reasonable, non-discriminatory

4

regulations in furtherance of this interest." *Unkechaug Indian Nation v. New York State Dep't of Env't Conservation*, 677 F.Supp.3d 137, 160 (E.D.N.Y. 2023*), aff'd sub nom. Unkechaug Indian Nation v. Seggos*, 2025 WL 310163 (2d Cir. Jan. 28, 2025).

Judge Kuntz's opinion confirms what is evident. The state developed its American eel fishing regulations pursuant to its obligations under a compact with other states. The regulations were implemented to ensure biodiversity and maintain food chains, which help other organisms in those ecosystems survive. Maintaining the eel population—and by extension ensuring the survival of other fish, mammals, and birds—benefits recreational and commercial fisheries, which provide employment opportunities and play a vital role in numerous industries. DE 127-5 at 8. Plaintiffs do not dispute that the state applies these regulations in a nondiscriminatory manner. Accordingly, the conservation necessity doctrine requires that the Court grant summary judgment for defendants.

While the Court need not reach the question of aboriginal rights, the Court finds then-District Judge Joseph Bianco's opinion in *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185 (E.D.N.Y. 2007), *vacated on other grounds*, 686 F. 3d 133 (2d Cir. 2012) to be highly persuasive. Judge Bianco found that 17th century land purchases by British colonists and subsequent royal proclamations demonstrate an "extinguishment of aboriginal title" in present-day South Hampton (which is where Shinnecock Bay is located) because "[n]either the language nor the context of the colonial era documents is ambiguous in any way; rather, the documents reflect a clear and compelling historical record establishing the sale of the land by the Shinnecock Nation and the repeated approval and confirmation of this conveyance of title to Southampton by various New York Provincial Governors, acting under the authority of the

5

British Crown." *Id.* at 265-66. Judge Bianco's well-reasoned determination undermines plaintiffs' arguments that they have aboriginal title to fish in Shinnecock Bay.

Based on the extensive record, the Court finds it undisputed that the eel fishing regulations at issue have a valid and non-discriminatory purpose. The Court also finds it undisputed that plaintiffs lack aboriginal fishing rights in Shinnecock Bay.

*Conclusion*

For the reasons set forth herein, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment.

**SO ORDERED.**

Dated: Central Islip, New York
October 3, 2025

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge